1  **GUTRIDE SAFIER LLP**
MARIE A. MCCRARY (Bar No. 262670)
2  marie@gutridesafier.com
SETH A. SAFIER (Bar No. 197427)
3  seth@gutridesafier.com
100 Pine Street, Suite 1250
4  San Francisco, CA 94111
Telephone: (415) 639-9090
5  Facsimile: (415) 449-6469

6  Attorneys for Plaintiffs

7
UNITED STATES DISTRICT COURT
8
NORTHERN DISTRICT OF CALIFORNIA
9

10

11  DAVID SWARTZ, CRISTINA SALGADO,    |  Case No.: _____
and, MARCELO MUTO on behalf of
12  themselves and those similarly situated,    |  **CLASS ACTION COMPLAINT FOR
VIOLATION OF THE CALIFORNIA**
13             Plaintiffs,    |  **CONSUMERS LEGAL REMEDIES ACT;
FALSE ADVERTISING; FRAUD,**
14        v.    |  **DECEIT, AND/OR
MISREPRESENTATION; NEGLIGENT**
15  THE COCA-COLA COMPANY,    |  **MISREPRESENTATION; VIOLATION
OF THE ENVIRONMENTAL**
BLUETRITON BRANDS, INC., and
16  NIAGARA BOTTLING, LLC,    |  **MARKETING CLAIMS ACT; AND
UNFAIR BUSINESS PRACTICES**
17             Defendants.    |  JURY TRIAL DEMANDED

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Marcelo Muto, Cristina Salgado, and David Swartz by and through their counsel, bring this Class Action Complaint against Defendants The Coca-Cola Company, BlueTriton Brands, Inc. (formerly known as Nestle Waters North America, Inc.), and Niagara Bottling, LLC on behalf of themselves and similarly situated persons. The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

## INTRODUCTION

1.     This Complaint seeks to remedy Defendants' unlawful, unfair, and deceptive business practices with respect to the advertising, marketing, and sale of water bottled in single-use plastic bottles labeled as "100% Recyclable."

2.     Americans consume water from disposable plastic bottles at a rate of more than 70 million bottles each day.[1] Defendants produce more than 100 billion single-use plastic bottles every year – or 3,400 a second.[2] Over 60 million plastic bottles end up in landfills or incinerators each day.[3] Incineration of plastic releases large quantities of greenhouse gases and toxic air emissions. Over 12 million tons of plastic enters the ocean each year.[4] As consumers have become increasingly aware of the problems associated with plastic pollution, many consumers actively seek to purchase products that are either compostable or recyclable to divert such waste from waterways, oceans, their communities, landfills, and incinerators.

3.     The plastic waste problem was exacerbated in 2018 when China implemented a plastic recycling import ban on most plastic waste exported from the United States, which it deemed the "National Sword" policy. The National Sword policy has permanently changed how the United States processes recycling. Up until 2018, China was the primary export market for

---

[1] Pat Franklin, *Down the Drain*, https://www.container-recycling.org/assets/pdfs/media/2006-5-WMW-DownDrain.pdf (last accessed January 20, 2021).

[2] Sandra Laville and Matthew Taylor, *A million bottles a minute: world's plastic binge 'as dangerous as climate change'* (June 28, 2017), https://www.theguardian.com/environment/2017/jun/28/a-million-a-minute-worlds-plastic-bottle-binge-as-dangerous-as-climate-change (last accessed January 20, 2021)

[3] *Id.*

[4] Nick Young, *How does plastic end up the ocean?*, https://www.greenpeace.org/new-zealand/story/how-does-plastic-end-up-in-the-ocean/ (last accessed January 20, 2021).

plastic waste. In the wake of National Sword, municipalities have been forced to find new ways to manage plastic recycling. In most cases, they have been forced to burn or incinerate plastics because there is no longer a foreign market for the overwhelming majority of plastic sent for recycling.

4.      In the wake of National Sword, environmental organizations such as the Sierra Club and Greenpeace sought to inform the public that reusable bottles are the only truly sustainable choice. Concerned about the growing salience of this message and seeking to reassure the public about the sustainability of single-use plastics—Defendants and other plastic bottlers countered with the "Every Bottle Back" initiative. Central to this marketing campaign is the claim "100% Recyclable," which Defendants affix to their single-use plastic water bottles. However, the plastic bottles are not "100% Recyclable" because: (i) the polypropylene ("PP") bottle caps and the biaxially oriented polypropylene ("BOPP") plastic labels on the bottles are not recyclable and cannot be processed into usable material; (ii) at least 28% of the polyethylene terephthalate ("PET") bottles and high-density polyethylene ("HDPE") bottle caps sent to recycling centers are lost in processing or are contaminated and thus end up in landfills or are burned; and (iii) domestic recycling facilities only have the capacity to process approximately 22.5% of the PET and HDPE consumed in the United States.

5.      Defendants' continued use of misleading and deceptive recyclability claims on their products serves to defraud the public about plastic water bottles. It falsely informs consumers that they are making an environmentally responsible choice when they purchase and dispose of Defendants' plastic water bottles in a municipal recycling bin. In truth, Defendants' single-use plastics are damaging the environment even when consumers properly dispose of the bottles in a recycling bin. If consumers knew the truth, they could make more informed decisions about consuming products that are truly sustainable. Defendants' representations that the Products are recyclable are material, false, misleading, and likely to deceive members of the public. These representations also violate California's legislatively declared policy against misrepresenting the environmental attributes of products.

6.      This action seeks: (i) an injunction precluding the sale of the plastic bottled water

within a reasonable time after entry of judgment, unless the products' packaging and marketing are modified to remove the "100% Recyclable" misrepresentation and to disclose the omitted facts about their true recyclability; and (ii) to require Defendants to pay restitution to purchasers of the products, namely the price premium they paid for them, i.e., the difference between the price consumers paid for the products and the price that they would have paid but for Defendants' misrepresentations, in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

## PARTIES

7.    Plaintiff Marcelo Muto is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Indio, California.

8.    Plaintiff Cristina Salgado is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Los Angeles, California.

9.    Plaintiff David Swartz is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Oakland, California.

10.    Plaintiffs Muto, Salgado, and Swartz are referred to collectively herein as the "Plaintiffs."

11.    Defendant The Coca-Cola Company ("Coca-Cola") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Atlanta, Georgia.

12.    Defendant BlueTriton Brands, Inc. ("Nestle") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Stamford, Connecticut. BlueTriton Brands, Inc. is the successor entity to Nestle Waters North America, Inc.

13.    Defendant Niagara Bottling, LLC ("Niagara") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Ontario, California.

14.    The Parties identified in paragraphs 11-13 of this Class Action Complaint are collectively referred to hereafter as "Defendants."

1

## JURISDICTION AND VENUE

2   15.   This Court has jurisdiction over the subject matter of this action pursuant to 28

3   U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of

4   interest and costs; and at least one Plaintiff is a citizen of a different state than at least one

5   Defendant.

6   16.   This action is brought by Plaintiffs pursuant, *inter alia*, to the California Business

7   and Professions Code, section 17200, *et seq.* Plaintiffs and Defendants are "persons" within the

8   meaning of the California Business and Professions Code, section 17201.

9   17.   The injuries, damages and/or harm upon which this action is based occurred in or

10   arose out of activities engaged in by Defendants within, affecting, and emanating from, the State

11   of California. Defendants regularly conduct and/or solicit business in, engage in other persistent

12   courses of conduct in, and/or derive substantial revenue from products provided to persons in the

13   State of California. Defendants have engaged, and continue to engage, in substantial and

14   continuous business practices in the State of California, including within this District.

15   18.   The claims in this case arise out of Defendants' California-related activities.

16   Defendants market and sell the Products in California to California consumers. While the

17   Products are marketed and sold in California by Defendants, the Products are not 100%

18   recyclable in California.

19   19.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

20   substantial part of the events or omissions giving rise to the claims occurred in the state of

21   California, including within this District.

22   20.   In accordance with California Civil Code Section 1780(c), Plaintiffs concurrently

23   file herewith declarations establishing that, on many occasions since November 2020, they

24   purchased the Products in Merced County, Riverside County, and Los Angeles County.

25   (Plaintiffs' declarations are attached hereto as Exhibit A.)

26   21.   Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

27   ## SUBSTANTIVE ALLEGATIONS

28   ### (1) Defendants and the Products at Issue

22.     Coca-Cola manufacturers, markets, and sells beverages, including bottled water, in the United States under several brand names, including Dasani.

23.     Nestle manufacturers, markets, and sells beverages, including bottled water, in the United States under several brand names, including Arrowhead, Poland Springs, Ozarka, and Deer Park.

24.     Niagara manufacturers, markets, and sells beverages, including bottled water, in the United States under several brand names, including Niagara, Costco Kirkland, Save Mart Sunny Select, and Save Mart Market Essentials.

25.     The following brands of bottled water are referred to herein as the "Products": Dasani, Arrowhead, Poland Springs, Ozarka, Deer Park, Niagara, Costco Kirkland, Save Mart Sunny Select, and Save Mart Market Essentials.

26.     Each of the Products have three basic plastic components: the bottle, the bottle cap, and the label that is wrapped around the bottle. The bottles are made of polyethylene terephthalate (PET, #1 plastic). The Products' bottle caps are made of polypropylene (PP, # 5 plastic) or high-density polyethylene (HDPE, #2 plastic). The Products' labels are made from biaxially oriented polypropylene (BOPP), a form of PP.

27.     Throughout the class period, Defendants have consistently marketed on the Products' packages that they are "100% Recyclable" as shown in the following images.

28.     Dasani:



29.     Arrowhead:



30.     Poland Springs:



1

2   31.   Ozarka:

3

4

5

6

7

8

9

10

11    

12

13

14

15

16

17

18   32.   Deer Park:

19

20

21

22

23    

24

25

26

27

28

1
2
3
4
33.     Niagara:
5
6
7
8
9
10
11
12
13
14
15
16
17



34.     Costco Kirkland:
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

1

2      35.      Save Mart Sunny Select:

3

4

5

6

7

8      

9

10

11

12

13

14

15

16

17

18     36.      Save Mart Market Essentials:

19

20

21

22     

23

24

25

26

27

28     **(2) Defendants' Representations that the Products Are "100% Recyclable" Are**

**False**

37.     Recycling is "the process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise become solid waste, and returning them to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace." Cal. Pub. Res. Code § 40180. Thus, "recyclable" products must, if discarded into a recycling bin, be: (i) accepted for collection by a recycling facility; and (ii) processed for reuse or use in manufacturing another item.

38.     In California, after plastic bottles, such as the Products, are discarded into a recycling bin, the bottles are sent to a Materials Recovery Facility ("MRF"). There are approximately 365 MRFs in the United States (75 of which operate in California). A typical MRF first sorts the plastic bottles based on color and, sometimes, size. At this point, the plastic bottles, bottle caps and labels are comingled. Once sorted, the comingled plastic is typically next shredded into smaller pieces and sent to a wash station. During the washing phase, the comingled shredded plastic is separated via a sink float separation tank, where the PET plastic, which is denser than water, sinks and the HDPE and PP plastics, which are less dense than water, float. Finally, the separated shredded plastic is then processed into "clean flake" material or plastic resin for use in manufacturing or assembling another item.

39.     PET and HDPE are widely considered to be the "most recyclable" forms of plastic. However, the most recent available data, which was published in a study by Greenpeace, indicates that as of 2017, United States domestic MRFs only have the capacity to process into plastic resin approximately: (i) 22.5% of the total post-consumer PET plastic waste generated; and (ii) 12% of the total post-consumer HDPE plastic waste generated.[5] Additionally, due to contamination and processing losses, not all PET and HDPE material that is processed by MRFs

---

[5] Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability*, https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf (last accessed December 18, 2020); at Section 7.2.2.

is actually converted into "clean flake" for reuse.[6] About a third of the collected PET and HDPE material processed by MRFs is not converted into "clean flake," and is instead, landfilled or incinerated.[7] Accordingly, the Products' PET bottles and HDPE bottle caps are not "100% Recyclable" because: (i) the United States lacks the capacity to process 77.5% of all PET and 88% of all HDPE plastic waste generated; and (ii) of the plastic that is processed by MRFs, only about 70% of the PET and HDPE is converted into clean flakes for reuse.

40.     PP and BOPP plastics, which are the material used to make the Products' bottle caps and film labels, respectively, are widely considered to be the least recyclable plastics. These plastics are typically collected by MRFs for #3-7 mixed bails which require further processing. However, "the economics [of processing those bails] have proven insurmountable."[8] Prior to 2018, MRFs in the United States exported #3-7 mixed bails, primarily, to China. However, on January 1, 2018, China enacted the National Sword policy which limits plastic waste imports. There is, however, minimal demand, value, and processing capacity for them in the United States. Thus, mixed plastic #3-7 bales which were "previously exported to China now have negligible to negative value across the country and 'cannot be effectively or efficiently recycled in the US.'"[9] As a result, the majority of PP and BOPP sent to recycling facilities is incinerated, which releases large quantities of greenhouse gases and toxic air emissions. This is especially true of the Products' BOPP labels which are completely unrecyclable because they are made of plastic film, which is difficult to sort and process and is typically treated as trash.

41.     Further, due to the availability of cheap raw materials to make "virgin plastic," there is very little market demand for recycled PP and BOPP plastic. Using virgin plastic to package and make products is cheaper than other materials because virgin plastic is derived from oil and natural gas. Indeed, recognizing the market potential from plastic production, major oil

---

[6] Jan Dell, *Six Times More Plastic Waste is Burned in U.S. than is Recycled* (April 30, 2020), https://www.plasticpollutioncoalition.org/blog/2019/4/29/six-times-more-plastic-waste-is-burned-in-us-than-is-recycled (last accessed June 10, 2021).
[7] *Id.*
[8] *Supra*, note 5, at Section 4.
[9] *Id.*

and natural gas companies are increasingly integrating their operations to include production of plastic resins and products, which further drives down the price of "virgin plastic." As a result, recycling facilities cannot afford the cost of breaking down and reconstituting recycled PP and BOPP plastic because there are almost no buyers of the resulting plastic, pellets, or scrap materials. Thus, the Products' PP bottle caps and BOPP labels are not "100% Recyclable" because those materials are not processed into reusable material, and are instead, sent to incinerators or landfills.

42.     Even when plastic bottle lids are made of HDPE (#2) plastic instead of PP (#5), a significant portion of them are lost during the sorting process because they fall through disk screens during the initial sorting process at the MRF. As a result, most caps are not recyclable regardless of whether they are made from No. 2 or No. 5 plastic because they are too small to be efficiently sorted and processed.

**(3) Defendants' Marketing of the Products Violates California Public Policy and the Federal Trade Commission Green Guides**

43.     The State of California has declared that "it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products." Cal. Pub. Res. Code § 42355.5. The policy is based on the Legislature's finding that "littered plastic products have caused and continue to cause significant environmental harm and have burdened local governments with significant environmental cleanup costs." *Id.* § 42355.

44.     Additionally, the California Business and Professions Code § 17580.5 makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied." Pursuant to that section, the term "environmental marketing claim" includes any claim contained in the Guides for Use of Environmental Marketing Claims published by the Federal Trade Commission (the "Green Guides"). *Id.*; *see also* 16 C.F.R. § 260.1, *et seq.* As detailed below, Defendants' marketing of the Products as "100% Recyclable" violates several provisions of the FTC's Green Guides.

45.     First, Defendants' marketing of the Products as "100% Recyclable" violates the Green Guides provisions prohibiting the labeling of products as recyclable unless the products can actually be converted into reusable material. Section 260.12(a) of the Green Guides provides that it is "deceptive to misrepresent, directly or by implication, that a product or package is recyclable. A product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." The Green Guides further explain that "[m]arketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers." 16 C.F.R. § 260.12(b). "If recycling facilities are available to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims."16 C.F.R. § 260.12(b)(1). Further "[i]f any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive." 16 C.F.R. § 260.12(d). And in promulgating the current recycling definition, the FTC clarified that "[f]or a product to be called recyclable, there must be an established recycling program, municipal or private, through which the product will be converted into, or used in, another product or package." *See* 63 Fed. Reg. 84, 11 24247 (May 1, 1998) (emphasis added). As the FTC has stated, "while a product may be technically recyclable, if a program is not available allowing consumers to recycle the product, there is no real value to consumers." *Id.* at 24243.

46.     In promulgating the most recent version of the Green Guides, the FTC stated (under the heading "Packages Collected for Public Policy Reasons but Not Recycled"), "[t]he Commission agrees that unqualified recyclable claims for categories of products that municipal recycling programs collect, but do not actually recycle, may be deceptive. To make a non-deceptive unqualified claim, a marketer should substantiate that a substantial majority of consumers or communities have access to facilities that will actually recycle, not accept and ultimately discard, the product. As part of this analysis, a marketer should not assume that consumers or communities have access to a particular recycling program merely because the program will accept a product." The California Public Resources Code similarly defines

recycling as "the process of collecting, sorting, cleansing, treating, and reconstituting materials that would otherwise become solid waste, and returning them to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace." *Id.* § 40180.

47.     Defendants' marketing of the Products as "100% Recyclable" violates these provisions of the Green Guides because it is false that 100% of the Products can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item. Although the Products may be accepted for recycling by some curbside programs, MRFs do not have the capacity to: (i) process the Products' PP bottle caps and BOPP labels into reusable material because there is no end market to do so; (ii) convert all plastic bottle material processed into reusable material because 28% of the material is contaminated or lost during processing and must be landfilled or incinerated; and (iii) process all plastic bottles used in the United States into reusable material such that over 75% of PET and HDPE plastics consumed must be landfilled or incinerated;

48.     Defendants' marketing of the Products as "100% Recyclable" also violates the Green Guide provisions regarding products that cannot be recycled in their entirety. Section 260.12(c) of the Green Guides provides that "Marketers can make unqualified recyclable claims for a product or package if the entire product or package, excluding minor incidental components, is recyclable. For items that are partially made of recyclable components, marketers should clearly and prominently qualify the recyclable claim to avoid deception about which portions are recyclable." Similarly, Section 260.3(b) of the Green Guides requires an environmental marketing claim to "specify whether it refers to the product, the product's packaging, a service, or just to a portion of the product, package, or service." 16 C.F.R. § 260.3(b). Defendants' "100% Recyclable" representation violates this standard of the Green Guides because it fails to specify whether it refers to the bottles, the bottle caps, or the label. The caps and the labels are not an incidental component, and even if they were, the fact that they are not recyclable makes the claim "100% Recyclable" false and misleading.

49.     Further, the Green Guides require marketers to support their claim with a

reasonable basis before they make the claims. 16 CFR § 260.2 ("Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims."). "[A] firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act." *See* FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984) (cited by 16 CFR § 260.2). Defendants do not possess information sufficient to support their claims that the Products are "100% Recyclable."

### (4) Consumer Demand for "100% Recyclable" Products and Defendants' Use of Coordinated Marketing Campaigns, including the "Every Bottle Back Initiative," to Defraud the Public

50.    Recent investigations into the proliferation of plastic pollution have revealed that for decades the plastic industry sold the public on the myth "that the majority of plastic could be, and would be, recycled – all while making billions of dollars selling the world new plastic." On September 11, 2020, National Public Radio ("NPR") published an investigation illustrating the plastic industry's decades-long awareness that recycling would not keep plastic products or packaging out of landfills, incinerators, communities, or the natural environment.[10] In a 1974 speech, one industry insider stated "there is serious doubt that [recycling plastic] can ever be made viable on an economic basis."[11] Larry Thomas, former president of the Society of the Plastic Industry (known today as the Plastics Industry Association), told NPR that "if the public thinks that recycling is working, then they are not going to be as concerned about the environment."[12] The NPR investigative report details the length and expense that the plastics industry went to deceive consumers that plastic was easily recyclable, despite knowledge that the cost of recycling would never be economical.

---

[10] Lara Sullivan, *How Big Oil Misled The Public Into Believing Plastic Would be Recycled*, NPR.ORG (Sep. 11, 2020, 5:00 a.m.), https://www.npr.org/2020/09/11/897692090/how-big-oilmisled-the-public-into-believing-plastic-would-be-recycled (last accessed Dec. 7, 2020).
[11] *Id.*
[12] *Id.*

51.     Beverage manufacturers, including Defendants, have supported these efforts for years. For example, until recently, Coca-Cola was a major financial supporter of the Plastics Industry Association (PLASTICS). PLASTICS is a trade association that has lobbied against bans on single-use plastic, arguing that the problem of plastic waste is "behavioral rather than [a] material issue" because single-use plastics are 100% Recyclable. Though PLASTICS keeps its membership rolls secret, major companies have been outed over the years for their support of the organization.

52.     In 2018, after the implementation of National Sword, environmental organizations such as the Sierra Club and Greenpeace began applying greater pressure to the plastics industry through public information campaigns. The central message was that the recycling system is broken and that reuse was the only truly sustainable option. For example, a January 19, 2018 press release on the Greenpeace website titled *Greenpeace slams Coca-Cola plastic announcement as 'dodging the main issue'* stated:

> Greenpeace is urging Coca Cola to make firm commitments to cut its plastic production by investing in alternatives to single-use plastic bottles, including committing to expand its use of new delivery methods such as Freestyle dispensers and self-serve water stations with reusable containers.[13]

53.     On July 23, 2019, in response to pressure from the Sierra Club and similar organizations, Coca-Cola started a marketing counter-offensive. It began by announcing its "plan to end their memberships with the Plastics Industry Association."[14]

54.     On October 29, 2019—three months after breaking ties with the PLASTICS lobby—Coca-Cola, and the American Beverage Association launched the "Every Bottle Back" initiative to once again attempt to convince the public that single-use plastics are not bad for the environment. The stated purpose of this initiative is to support what the members call the

---

[13] Perry Wheeler, *Greenpeace slams Coca-Cola plastic announcement as 'dodging the main issue'*, Greenpeace (Jan. 19, 2018), https://www.greenpeace.org/usa/news/greenpeace-slams-coca-cola-plastic-announcement-as-dodging-the-main-issue/ (last visited Apr. 7, 2021).
[14] Perry Wheeler, *Industry giants Coca-Cola and PepsiCo ditching pro-plastics lobbying association,* Greenpeace (Jul. 23, 2019), https://www.greenpeace.org/usa/news/industry-giants-coca-cola-and-pepsico-ditching-pro-plastics-lobbying-association/#:~:text=Washington%2C%20DC%20%E2%80%93%20As%20pressure%20mounts,advocated%20against%20plastic%20bans%20nationwide (last visited Apr. 7, 2021).

"circular plastics economy," which perpetuates the fiction that plastic bottles are "100% Recyclable" and are part of a sustainable, circular plastics economy. However, this media strategy is nothing but a retooled version of their original media strategy. Instead of supporting plastic trade groups, Defendants have found a more palatable way to achieve the same goal of deceiving the public about the sustainability of single-use plastics. The "Every Bottle Back" campaign uses same rhetoric championed by PLASTIC trade groups—i.e. that the problem of plastic waste is largely behavioral and can be solved through public education that plastic bottles are 100% Recyclable.

55.     Defendants' strategy has remained unchanged: to convince the public that plastic bottles are 100% Recyclable, all while increasing profits selling the world new plastic. This is confirmed by a recent brand audit by Break Free From Plastic, a non-governmental organization that advocates against the use of single-use plastics. For the past three years, Break Free From Plastic has ranked PepsiCo, Coca-Cola, and Nestle as the top plastic polluters in the world. In its 2020 audit, Break Free From Plastic reported "[d]espite clever marketing tactics and lofty 'sustainability' goals, the same companies continue to make our list of Top Global Polluters year after year."

56.     To make matters worse, during the COVID-19 crisis, as the demand for petroleum-derived fuels has dramatically decreased, the petrochemical industry has tried to make up for lost revenue by increasing sales of plastic. Environmental organizations have recognized that "the struggling fossil fuel industry sees plastic production as a lifeline for maintaining its profits as demand in the electric and transportation sector drops."[15] In turn, the plastic industry began a public relations campaign claiming that using reusable products would increase the risk of contracting the virus and that consumers should instead use single-use plastics.

---

[15] Hillary Larson, *The Deep Injustice of Plastic Pollution* (July 30, 2020), https://www.sierraclub.org/articles/2020/07/deep-injustice-plastic-pollution (last accessed June 10, 2021).

57.     Defendants have been more than willing to oblige in perpetuating the falsehood that their single-use plastic bottles are 100% Recyclable. The "Every Bottle Back" website includes the following representation:

**OUR NEW INITIATIVE:**
**TOGETHER, WE'RE COMMITTED TO GETTING *EVERY BOTTLE BACK***

Our plastic bottles are made to be remade. We are carefully designing them to be 100% recyclable – even the caps. Our goal is for every bottle to become a new bottle, and not end up in oceans, rivers, beaches and landfills. And that means we are using less new plastic.

We are making

**100%**

recyclable plastic bottles.
And we want them back.

https://www.innovationnaturally.org/plastic/

# MORE EFFICIENT RECYCLING MEANS LESS NEW PLASTIC IN OUR ENVIRONMENT.

We're making 100% recyclable plastic bottles, and that's a critical first step. But it only helps the environment if we get them back so they don't end up in oceans, rivers and beaches. So we're working hard to support strong recovery and recycling systems across the country.

https://www.innovationnaturally.org/recycling/

58.     The misrepresentation that plastic bottles are "100% Recyclable" is repeated throughout the website with language such as "[w]e've made our plastic bottles to be 100% recyclable, including the caps."

-19-

59.     To lend credibility to the initiative, the ABA and its partners provided over a 100 million dollars in funding to The Recycling Partnership and Closed Loop Partners. The website also references support from the World Wildlife Fund's corporation activation hub, Resource: Plastic.

60.     The most important part of the "Every Bottle Back" initiative is the coordinated use of the "100% Recyclable" claim. As the website explains, the major feature of the campaign is a "public awareness campaign to help consumers understand the value of 100% recyclable bottles" and the use of "a new voluntary on-pack message to promote the recyclability of our plastic bottles and caps." The American Beverage Association website further elaborates that the beverage makers are "[w]ork[ing] together to leverage our packaging to remind consumers that our bottles are 100% recyclable and can be remade into new bottles. Beverage companies will begin introducing voluntary messaging on packages in late 2020."

61.     All Defendants have adopted the voluntary "100% Recyclable" language as a part of a coordinated scheme to defraud the public and have benefited from the "Every Bottle Back" public awareness campaign designed to do the same.

62.     Defendants market the Products as "100% Recyclable" to capitalize on consumer demand for "green" products. In particular, Defendants intend for reasonable consumers to believe, and reasonable consumers do believe, that the Products will be recycled in their entirety if the consumer disposes of the empty bottles in a recycling bin. Further, Defendants intend for consumers to believe, and reasonable consumers do believe, that because the Products are "100% Recyclable," the bottles are specially designed to be environmentally superior to competitors' products that do not contain the same representation. Finally, Defendants intend for consumers to believe, and reasonable consumers do believe, that because the Products are part of a circular plastics economy in which all bottles are recycled into new bottles to be used again.

63.     Defendants' coordinated and illegal marketing campaign has been extremely successful. Defendants collectively sell a large percentage of the bottled water sold in the United States. The Products are sold in grocery stores, gas stations, and big box stores throughout California and the country. Because of the big potential for sales, Defendants have no incentive

1  to stop claiming that the Products are "100% Recyclable" or change their disclaimers to

2  discourage sales.

3      64.    Because consumers are led to believe the bottles are "100% Recyclable," and

4  therefore purchase them because they are a "green" product, Defendants are able to charge a

5  premium for the Products. If consumers knew that the Products were not "100% Recyclable," the

6  product would not command a premium price based on that representation, fewer consumers

7  would purchase them, and Plaintiffs would not pay the premium attributable to that

8  representation.

9                        **PLAINTIFFS' EXPERIENCES**

10      65.    Plaintiff Muto purchased three 24-packs of Dasani water bottles from Costco in

11  La Quinta, CA on or around April 15, 2021. He saw the claim "100% Recyclable" on the

12  Products and he purchased them, in part, because he believed that the entirety of the bottles,

13  including the labels and caps, could and would be recycled if he disposed of them in a recycling

14  bin. He did in fact dispose of the bottles in a recycling bin. Had he known that the Products were

15  not "100% Recyclable," he would not have purchased them, or at a minimum, he would have

16  paid less for them.

17      66.    Plaintiff Salgado purchased a 24-pack of 16.9-ounce Niagara water bottles from

18  Numero Uno Market in Los Angeles, CA in or around April 15, 2020. Plaintiff Salgado also

19  purchased an 8-pack of 12-ounce Dasani water bottles from the Target store near her home on or

20  around April 20, 2021.  Plaintiff Salgado saw the claim "100% Recyclable" on the Products and

21  purchased them, in part, because she believed that the entirety of the bottles, including the labels

22  and caps, could and would be recycled if she disposed of them in a recycling bin. She did in fact

23  dispose of the bottles in a recycling bin. Had she known that the Products were not "100%

24  Recyclable," she would not have purchased them, or at a minimum, she would have paid less for

25  them.

26      67.    Plaintiff Swartz purchased a bottle of Arrowhead water from a gas station in

27  Merced County in or around November 2020. Plaintiff Swartz saw the claim "100% Recyclable"

28  on the Product and purchased it, in part, because he believed that the claim meant that the

entirety of the bottle, including the label and cap, could and would be recycled if he disposed of it in a recycling bin. He did in fact dispose of the bottle in a recycling bin. Had he known that the Product was not "100% Recyclable," he would not have purchased it, or at a minimum, he would have paid less for it.

68.     Plaintiffs are unaware of the composition of each of the parts of the plastic bottles they purchased, and rely on the label that states that the products are "100% Recyclable" when analyzing the Products' recyclability. Because Plaintiffs do not know the composition of bottles now or in the future, and cannot determine whether the Products will ultimately be recycled, Plaintiffs will be unable to rely on Defendants' labels when shopping for bottled water in the future absent an injunction that prohibits Defendants from falsely labeling their products as "100% Recyclable."

69.     Plaintiffs continue to desire to purchase water in bottles that are "100% Recyclable" from Defendants. Plaintiffs are unable to determine if the Products are "100% Recyclable" prior to their purchase. Plaintiffs understand that the design and composition of the Products may change over time. But as long as Defendants may use the phrase "100% Recyclable" to describe plastic water bottles that are not "100% Recyclable," then when presented with Defendants' packaging, Plaintiffs continue to have no way of determining whether the representation "100% Recyclable" is in fact true. Thus, Plaintiffs are likely to be repeatedly presented with false or misleading information when shopping and they will be unable to make informed decisions about whether to purchase Defendants' Products and will be unable to evaluate the different prices between Defendants' bottled water and their competitors' bottled water. Plaintiffs are further likely to be repeatedly misled by Defendants' conduct, unless and until Defendants are compelled to ensure that their bottled water marketed as "100% Recyclable" is in fact 100% recyclable.

## CLASS ALLEGATIONS

70.     Plaintiffs bring this action against Defendants on behalf of themselves and all others similarly situated, as a class action pursuant to section 382 of the California Code of Civil Procedure and section 1781 of the California Civil Code. Plaintiffs seek to represent a group of

similarly situated persons, defined as follows:

> All persons who, between June 16, 2017 and the present, purchased the Products in California.

71.    This action has been brought and may properly be maintained as a class action against Defendants pursuant to the provisions of California Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

72.    Numerosity: Plaintiffs do not know the exact size of the class, but it is estimated that it is composed of more than 100 persons. The persons in the class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

73.    Common Questions Predominate: This action involves common questions of law and fact to the potential class because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led Defendants' customers to believe that the Products are "100% Recyclable." The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the class to recover. Among the questions of law and fact common to the class are:

    a)    Whether Defendants' Products are "100% Recyclable;"

    b)    Whether Defendants unfairly, unlawfully and/or deceptively represented that the Products are "100% Recyclable" and/or failed to inform class members that the Products are not "100% Recyclable;"

    c)    Whether Defendants' advertising and marketing regarding the Products sold to class members was likely to deceive class members or was unfair;

    d)    Whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

    e)    The amount of the premium lost by class members as a result of such wrongdoing;

    f)    Whether class members are entitled to injunctive and other equitable relief

and, if so, what is the nature of such relief; and

g) Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

74. Typicality: Plaintiffs' claims are typical of the class because each of them purchased the Products on one or more occasions during the last four years, in reliance on Defendants' misrepresentations and omissions that the Products are "100% Recyclable." Thus, Plaintiffs and class members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law. The injuries and damages of each class member were caused directly by Defendants' wrongful conduct in violation of law as alleged.

75. Adequacy: Plaintiffs will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with or antagonistic to the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and the interests of the class. By prevailing on their own claim, Plaintiffs will establish Defendants' liability to all class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

76. Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for the Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions

would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

77.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

78.     Plaintiffs do not plead, and hereby disclaim, any causes of action under any regulations promulgated by the FTC. Plaintiffs rely on these regulations only to the extent such regulations have been separately enacted as state law or regulations or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

## PLAINTIFFS' FIRST CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.***

**(On Behalf of Plaintiffs and the Class)**

79.     Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint as if set forth herein.

80.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. ("CLRA").

81.     Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

82.     Plaintiffs and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

83.     The Products that Plaintiffs (and others similarly situated class members) purchased from Defendants were "goods" within the meaning of California Civil Code § 1761(a).

84.     By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(5), § 1770(a)(7),

§ 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that the goods they sell are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendants have disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code §1770(a)(9), Defendants have advertised goods or services with intent not to sell them as advertised. Specifically, in violation of sections 1770 (a)(2), (a)(5), (a)(7) and (a)(9), Defendants' acts and practices led customers to falsely believe that their Products are "100% Recyclable." In violation of section 1770(a)(8), Defendants falsely or deceptively market and advertise that, unlike products not specifically denominated as "100% Recyclable," the Products are "100% Recyclable," when in fact, they are not "100% Recyclable."

85.    Plaintiffs request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the class will continue to suffer harm.

86.    CLRA § 1782 NOTICE. **Irrespective of any representations to the contrary in this Class Action Complaint, Plaintiffs specifically disclaim, at this time, any request for damages under any provision of the CLRA**. Plaintiffs, however, hereby provide Defendants with notice and demand that within thirty (30) days from that date, Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Defendants' failure to do so will result in Plaintiffs amending this Class Action Complaint to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices. In particular, Plaintiffs will seek to recover on behalf of themselves and those similarly situated, the price premium paid for the

Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendants' misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

87.     Plaintiffs also request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

## PLAINTIFFS' SECOND CAUSE OF ACTION

### False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL")

### (On Behalf of Plaintiffs and the Class)

88.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

89.     Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

90.     Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that they were purchasing products that were "100% Recyclable." Defendants deceptively failed to inform Plaintiffs, and those similarly situated, that the Products are not "100% Recyclable."

91.     Plaintiffs and those similarly situated relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing the Products or paying less for them.

92.     Defendants' acts and omissions are likely to deceive the general public.

93.     Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

94.     The aforementioned practices, which Defendants have used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

95.     As a direct and proximate result of such actions, Plaintiffs and the other members of the class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs, and those similarly situated, paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendants' misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

96.     Plaintiffs seek, on behalf of those similarly situated, restitution of the difference between what Defendants acquired from Plaintiffs, the general public, or those similarly situated, and what would have been acquired in absence of the false, misleading and deceptive advertising and marketing practices complained of herein, which amount will be proven at trial, plus interest thereon.

97.     Plaintiffs seek, on behalf of those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

98.     Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit the sale of the Products within a reasonable time after entry of judgment, unless the Products' packaging and marketing is modified to remove the misrepresentation "100% Recyclable" and to disclose the omitted facts about their true recyclability. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate

-28-

1  remedy at law to ensure future compliance with the California Business and Professions Code

2  alleged to have been violated herein.

3                          **PLAINTIFFS' THIRD CAUSE OF ACTION**

4                          **Fraud, Deceit and/or Misrepresentation**

5                          **(On Behalf of Plaintiffs and the Class)**

6          99.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class

7  Action Complaint as if set forth herein.

8          100.    For the last three years, Defendants have fraudulently and deceptively led

9  Plaintiffs to believe that the Products are "100% Recyclable." Defendants also failed to inform

10  Plaintiffs that the Products are not "100% Recyclable," that approximately 30% of PET plastic

11  recycled is lost due to contamination during the recycling process, that it is economically

12  infeasible to recycle the bottle caps and plastic film labels, and that the bottle caps and plastic

13  film labels must be disposed or incinerated.

14         101.    These misrepresentations and omissions were material at the time they were

15  made. They concerned material facts that were essential to the analysis undertaken by Plaintiffs

16  as to whether to purchase the Products.

17         102.    Defendants made identical misrepresentations and omissions to members of the

18  class regarding the Products.

19         103.    Plaintiffs and those similarly situated relied to their detriment on Defendants'

20  fraudulent misrepresentations and omissions. Had Plaintiffs and those similarly situated been

21  adequately informed and not intentionally deceived by Defendants, they would have acted

22  differently by, without limitation, not purchasing (or paying less for) the Products.

23         104.    Defendants had a duty to inform class members at the time of their purchases that

24  the Products were not "100% Recyclable," that approximately 30% of PET plastic recycled is

25  lost due to contamination during the recycling process, that it is economically infeasible to

26  recycle the bottle caps and plastic film labels, and that the bottle caps and plastic film labels must

27  be disposed or incinerated. Defendants failed to provide this information to class members. Class

28  members relied to their detriment on Defendants' omissions. These omissions were material to

the decisions of the class members to purchase the Products. In making these omissions, Defendants breached their duty to class members. Defendants also gained financially from, and as a result of, their breach.

105.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs, and those similarly situated, to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiffs, and those similarly situated, to, without limitation, pay a premium to purchase the Products.

106.    As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiffs, and those similarly situated, have suffered damages. In particular, Plaintiffs seek to recover on behalf of themselves and those similarly situated the price premium paid for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendants' misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

107.    Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

## PLAINTIFFS' FOURTH CAUSE OF ACTION

### Negligent Misrepresentation

### (On Behalf of Plaintiffs and the Class)

108.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

109.    For the last three years, Defendants provided false and misleading information regarding the Products, representing that they were "100% Recyclable."

110.    These representations were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase the Products.

111.    Defendants made identical misrepresentations and omissions to members of the class regarding the Products.

112.    Defendants should have known their representations to be false and had no reasonable grounds for believing them to be true when they were made.

113.    By and through such negligent misrepresentations, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendants negligently induced Plaintiffs, and those similarly situated to, without limitation, to purchase the Products.

114.    Plaintiffs and those similarly situated relied to their detriment on Defendants' negligent misrepresentations. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

115.    Plaintiffs and those similarly situated have suffered damages. In particular, Plaintiffs seek to recover on behalf of themselves and those similarly situated the price premium paid for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendants' misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

## PLAINTIFFS' FIFTH CAUSE OF ACTION

### "Greenwashing" Under the Environmental Marketing Claims Act, Cal. Bus. & Prof. Code § 17580, *et seq.*

### (On Behalf of Plaintiffs and the Class)

116.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

117.    Defendants' representations and omissions complained of herein constitute advertising that the Products are not harmful to, or are beneficial to, the natural environment, through the use the phrase "100% Recyclable." On information and belief, in violation of Cal. Bus. & Prof. Code §17580(a), Defendants have not maintained in written form in their records information and documentation supporting the validity of the representation, including but not limited to, any significant adverse environmental impacts directly associated with the production,

1    distribution, use, and disposal of the Products.

2        118.    Further, in violation of Cal. Bus. & Prof. Code §17580.5(a), Defendants'

3    representations and omissions complained of herein constitute untruthful, deceptive, or

4    misleading environmental marketing claims, explicit or implied, including claims referenced in

5    the Green Guides published by the FTC.

6        119.    Plaintiffs seek on behalf of themselves, the general public, and those similarly

7    situated to Plaintiffs, a declaration that the above-described practices are fraudulent and/or

8    unlawful.

9        120.    Plaintiffs seek on behalf of themselves, the general public, and those similarly

10   situated to Plaintiffs, an injunction to prohibit the sale of the Products within a reasonable time

11   after entry of judgment, unless packaging and marketing is modified to remove the

12   misrepresentation "100% Recyclable" and to disclose the omitted facts about the true

13   recyclability of the Products. Such misconduct by Defendants, unless and until enjoined and

14   restrained by order of this Court, will continue to cause injury in fact to the general public and

15   the loss of money and property in that Defendants will continue to violate the laws of California,

16   unless specifically ordered to comply with the same. This expectation of future violations will

17   require current and future consumers to repeatedly and continuously seek legal redress in order

18   to recover monies paid to Defendants to which Defendants were not entitled. Plaintiffs, and those

19   similarly situated and/or other consumers, have no other adequate remedy at law to ensure future

20   compliance with the California Business and Professions Code alleged to have been violated

21   herein.

22                              **PLAINTIFFS' SIXTH CAUSE OF ACTION**

23                          **Unfair, Unlawful and Deceptive Trade Practices,**

24                          **Business and Professions Code § 17200, *et seq.***

25                                **(On Behalf of Plaintiffs and the Class)**

26       121.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class

27   Action Complaint as if set forth herein.

28       122.    Within four (4) years preceding the filing of this Class Action Complaint, and at

all times mentioned herein, Defendants have engaged, and continue to engage, in unfair,
unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and
unlawful business practices outlined in this Class Action Complaint.

123.    In particular, Defendants have engaged, and continue to engage, in deceptive
practices by, without limitation, the following:

      a.     deceptively representing that the Products are "100% Recyclable;" and

      b.     failing to disclose that the Products are not "100% Recyclable."

124.    Defendants' claims that the Products are 100% recyclable are material, untrue,
and misleading. These recyclable claims are prominent on all of the Products' marketing,
advertising, and labeling materials, even though Defendants are aware that the claims are false
and misleading. Defendants' claims are thus likely to deceive reasonable consumers.

125.    Further, Defendants have engaged, and continue to engage, in unfair practices by,
without limitation, advertising and marketing the Products as "100% Recyclable" when they are
not, which is immoral, unethical, oppressive, unscrupulous, and substantially injurious to
consumers and environment. By taking advantage of consumers concerned about the
environmental impacts of plastic pollution, Defendants' conduct, as described herein, far
outweighs the utility, if any, of such conduct.

126.    Additionally, Defendants have engaged, and continue to engage, in unlawful
practices by, without limitation, the following:

      a.     violating the Federal Trade Commission Green Guides regulations,
including, without limitation, 16 C.F.R. sections 260.3(b), 260.3(c),
260.12(b), 260.12(c), 260.12(d), 260.16(c), 260.1, and 260.2, as described
herein; and

      b.     violating the Environmental Marketing Claims Act, Cal. Bus. & Prof.
Code § 17580, *et seq.*, as described herein.

      c.     violating the CLRA as described herein; and

      d.     violating the FAL as described herein.

127.    Plaintiffs and those similarly situated relied to their detriment on Defendants'

1   unfair, deceptive and unlawful business practices. Had Plaintiffs and those similarly situated

2   been adequately informed and not deceived by Defendants, they would have acted differently by

3   not purchasing (or paying less for) the Products.

4        128.    Defendants' acts and omissions are likely to deceive the general public.

5        129.    Defendants engaged in these unfair practices to increase their profits.

6   Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by

7   section 17200, *et seq.* of the California Business and Professions Code.

8        130.    The aforementioned practices, which Defendants have used to their significant

9   financial gain, also constitute unlawful competition and provide an unlawful advantage over

10  Defendants' competitors as well as injury to the general public.

11       131.    As a direct and proximate result of such actions, Plaintiffs, and other members of

12  the class, have suffered and continue to suffer injury in fact and have lost money and/or property

13  as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount

14  which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

15  In particular, Plaintiffs and those similarly situated paid a price premium for the Products, i.e.,

16  the difference between the price consumers paid for the Products and the price that they would

17  have paid but for Defendants' misrepresentation. This premium can be determined by using

18  econometric or statistical techniques such as hedonic regression or conjoint analysis.

19       132.    Plaintiffs seek on behalf of themselves and those similarly situated, a declaration

20  that the above-described trade practices are fraudulent and/or unlawful.

21       133.    Plaintiffs seek on behalf of themselves and those similarly situated, an injunction

22  to prohibit the sale of the Products within a reasonable time after entry of judgment, unless the

23  Products' packaging and marketing is modified to remove the misrepresentation "100%

24  Recyclable" and to disclose the omitted facts about their true recyclability. Plaintiffs have no

25  adequate remedy at law for the injuries currently being suffered as an award of monetary

26  damages would not prohibit Defendants' unlawful acts. Such misconduct by Defendants, unless

27  and until enjoined and restrained by order of this Court, will continue to cause injury in fact to

28  the general public and the loss of money and property in that Defendants will continue to violate

1   the laws of California, unless specifically ordered to comply with the same. This expectation of

2   future violations will require current and future consumers to repeatedly and continuously seek

3   legal redress in order to recover monies paid to Defendants to which they were not entitled.

4   Plaintiffs have no other adequate remedy at law to ensure future compliance with the California

5   Business and Professions Code alleged to have been violated herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgement against Defendants as follows:

A.    Certification of the proposed Class, including appointment of Plaintiffs' counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    An award of compensatory damages in an amount to be determined at trial, except as to those causes of action where compensatory damages are not available as a matter of law;

D.    An award of statutory damages in an amount to be determined at trial, except as to those causes of action where statutory damages are not available as a matter of law;

E.    An award of punitive damages in an amount to be determined at trial, except as to those causes of action where punitive damages are not available as a matter of law;

F.    An award of treble damages, except as to those causes of action where treble damages are not available as a matter of law;

G.    An award of restitution in an amount to be determined at trial; and

H.    An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded.

H.    For reasonable attorneys' fees and the costs of suit incurred;

I.      For such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: June 16, 2021                    **GUTRIDE SAFIER LLP**


                                        */s/Marie A, McCrary/s/*
                                        Marie A. McCrary, Esq.
                                        Seth A. Safier, Esq.
                                        100 Pine Street, Suite 1250
                                        San Francisco, California 94111

                                        Attorneys for Plaintiffs

# Exhibit A

## EXHIBIT A

I, Marcelo Muto, declare:

1.      I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2015.5 and California Civil Code section 1780(d).

3.      I purchased 3 24-packs of Dasani water bottles in Riverside County, California. My most recent date of purchase was approximately on or around April 15, 2021.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 28th day of April 2021, in Indio, California.



DocuSigned by:

BC9FDA1EA6D24D1...

Marcelo Muto

MUTO DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

## EXHIBIT A

I, Cristina Salgado, declare:

1.      I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2015.5 and California Civil Code section 1780(d).

3.      I purchased a 24-pack of Niagara water bottles in Los Angeles County, California. My most recent date of purchase was approximately on or around April 10, 2021.

4.      I purchased an 8-pack of Dasani water bottles in Los Angeles County, California. My most recent date of purchase was approximately on or around April 20, 2021.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 28th day of April 2021, in Los Angeles, California.



Cristina Salgado

SALGADO DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

DocuSign Envelope ID: 98EE0680-D8F5-4A79-A621-B16DFF29258D

## EXHIBIT A

I, David Swartz, declare:

1.      I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2015.5 and California Civil Code section 1780(d).

3.      I purchased a 20-once bottle of Arrowhead water in Merced County, California. My most recent date of purchase was approximately on or around November 15, 2020.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 13th day of May 2021, in Oakland, California.



DocuSigned by:

F84B95A8CD184CB...

David Swartz

SWARTZ DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION