DAWN SESTITO (S.B. #214011)
dsestito@omm.com
COLLINS KILGORE (S.B. #295084)
ckilgore@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California  90071-2899
Telephone:     +1 213 430 6000
Facsimile:     +1 213 430 6407

HANNAH Y. CHANOINE (*pro hac vice*)
hchanoine@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone:     +1 212 326 2128
Facsimile:     +1 212 326 2061

*Attorneys for Defendant BlueTriton Brands, Inc.*
(additional counsel on signature page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DAVID SWARTZ, CRISTINA SALGADO, and MARCELO MUTO, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE COCA-COLA COMPANY, BLUETRITON BRANDS, INC., and NIAGARA BOTTLING, LLC,<br><br>Defendants. | Case No. 3:21-cv-04643-JD<br><br>**DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   June 30, 2022<br>Time:   10:00 a.m.<br>Judge:  Hon. James Donato<br>Courtroom:  11, 19th Floor |
| SIERRA CLUB,<br>                    Plaintiff,<br>v.<br><br>THE COCA-COLA COMPANY and BLUETRITON BRANDS, INC.,<br><br>Defendants. | |

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE**

**THAT** on June 30, 2022, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, Defendants BlueTriton Brands, Inc. ("BTB"), the Coca-Cola Company ("Coca-Cola"), and Niagara Bottling, LLC ("Niagara") (collectively, "Defendants") hereby move pursuant to the Court's March 8, 2022 Minute Order (Dkt. No. 68) and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing these actions with prejudice on the grounds that Plaintiffs lack Article III standing and that they fail to state a claim.

1

2

Dated:  April 22, 2022                    By:  /s/ Dawn Sestito

3

4                                              Dawn Sestito
                                             Collins Kilgore
                                             O'MELVENY & MYERS LLP
                                             400 South Hope Street, 18th Floor
5                                              Los Angeles, California  90071-2899
                                             (213) 430-6000
6                                              (213) 430-6407 (fax)
                                             dsestito@omm.com
7                                              ckilgore@omm.com

8                                              Hannah Y. Chanoine (*pro hac vice*)
                                             O'MELVENY & MYERS LLP
9                                              7 Times Square
                                             New York, NY 10036
10                                             (212) 326-2000
                                             (212) 326-2061 (fax)
11                                             hchanoine@omm.com

12                                             *Attorneys for Defendant BlueTriton Brands, Inc.*

13

Dated:  April 22, 2022                    By:  **/s/ Gary T. Lafayette

14

15                                             Steven A. Zalesin (*pro hac vice*)
                                             PATTERSON BELKNAP WEBB &
16                                             TYLER LLP
                                             1133 Avenue of the Americas
17                                             New York, New York 10036
                                             (212) 336-2000
18                                             (212) 336-2222 (fax)
                                             sazalesin@pbwt.com

19

Gary T. Lafayette
20                                             LAFAYETTE & KUMAGAI LLP
                                             1300 Clay Street, Suite 810
21                                             Oakland, CA 94612
                                             Telephone: (415) 357-4600
22                                             Facsimile: (415) 357-4605
                                             lafayette@lkclaw.com

23                                             *Attorneys for Defendant the Coca-Cola*
                                             *Company*

24

25

26

27

28

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

Dated:  April 22, 2022

By: **/s/ *Kent J. Schmidt*

Kent J. Schmidt
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 200
Costa Mesa, CA 92626
(714) 800-1445
(202) 464-4507 (fax)
schmidt.kent@dorsey.com

Creighton R. Magid (*pro hac vice*)
DORSEY & WHITNEY LLP
1401 New York Avenue NW
Suite 900
Washington, DC 20005
(202) 442-3000
(202) 442-3199
magid.chip@dorsey.com

*Attorneys for Defendant Niagara Bottling LLC*

**\*\*Pursuant to Civ. L.R. 5-1(i)(3), the electronic signatory has obtained approval from this signatory.*

# TABLE OF AUTHORITIES

**Page(s)**

I.      INTRODUCTION .................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED ...................................................... 2

III.    STATEMENT OF RELEVANT FACTS ................................................................ 3

IV.     LEGAL STANDARD ............................................................................................. 6

V.      ARGUMENT .......................................................................................................... 7

    A.      The incorporation of the Green Guides definition into the Business &
        Profession Code for "recyclable" labeling supersedes any other definition. .......... 7

    B.      Plaintiffs fail to sufficiently plead that Defendants' "100% Recyclable"
        labeling is false or misleading. .................................................................................. 8

    C.      Reasonable consumers would not interpret "100% Recyclable" to mean
        that *every* bottle is recycled. ................................................................................... 10

    D.      Plaintiffs fail to meet Rule 9(b) pleading standards. .............................................. 13

    E.      Additional, claim-specific defects warrant dismissal. ............................................ 13

        1.      Fraud, deceit, and/or misrepresentation claim. ........................................... 14

        2.      UCL claim. ................................................................................................... 14

    F.      The Consumer Plaintiffs lack Article III standing to pursue their claims............. 16

        1.      Plaintiffs do not allege that the "100% Recyclable" statement
            caused them any injury.................................................................................. 17

        2.      Plaintiffs lack standing to pursue injunctive relief..................................... 18

    G.      Plaintiffs' claims do not warrant joinder................................................................ 20

VI.     CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ........................................................................ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................................... 6, 8

*Bank of Am. Corp. v. City of Miami*,
137 S. Ct. 1296 (2017) ......................................................................................................... 6

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ..................................................................................... 11, 13

*Beecher v. Google N. Am. Inc.*,
2018 WL 4904914 (N.D. Cal. Oct. 9, 2018) ........................................................................ 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................... 6, 8, 10, 15

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ............................................................................................. 17

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) ................................................................................................. 9

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
475 F. App'x 113 (9th Cir. 2012) ...................................................................................... 11

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ....................................................................................................... 14

*Cheslow v. Ghirardelli Chocolate Co.*,
445 F. Supp. 3d 8 (N.D. Cal. 2020) ................................................................................... 12

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ............................................................................................................. 18

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........................................................................................................... 18

*Colgan v. Leatherman Tool Grp., Inc.*,
135 Cal. App. 4th 663 (2006) ............................................................................................ 10

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ....................................................................................... 18, 19

# TABLE OF AUTHORITIES

**Page(s)**

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) .......................................................................... 10

*Edelman v. Bank of Am.*,
   2009 WL 10673209 (C.D. Cal. Oct. 21, 2009) ........................................... 15

*Forouzesh v. Starbucks Corp.*,
   2016 WL 4443203 (C.D. Cal. Aug. 19, 2016) ............................................. 11

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ........................................................................... 10

*Girard v. Toyota Motor Sales, U.S.A., Inc.*,
   316 F. App'x 561 (9th Cir. 2008) ................................................................. 10

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ....................................................... 10

*Hanscom v. Reynolds Consumer Prods. LLC*,
   2022 WL 591466 (N.D. Cal. Jan. 21, 2022) ............................................... 19

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ...................................................................... 10

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ......................................................................... 6

*Jessani v. Monini N. Am., Inc.*,
   744 F. App'x 18 (2d Cir. 2018) .................................................................... 12

*Ketab Corp. v. Mesriani L. Grp.*,
   2015 WL 2085523 (C.D. Cal. May 5, 2015) ............................................... 14

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ........................................................................... 9

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ................................................................................... 14

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ................................................................. 10, 11

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ........................................................................ 14

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................... 16

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

**TABLE OF AUTHORITIES**

**Page(s)**

*Malmen v. World Sav. Inc.*,
   2011 WL 65781 (C.D. Cal. Jan. 7, 2011) ......................................................... 14

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ..................................................................... 11, 12

*Myers-Armstrong v. Actavis Totowa, LLC*,
   2009 WL 1082026 (N.D. Cal. Apr. 22, 2009) ....................................................... 18

*N.L.R.B. v. SW Gen., Inc.*,
   137 S. Ct. 929 (2017) ............................................................................. 7

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ......................................................... 6, 14

*Newton v. Kraft Heinz Foods Co.*,
   2018 WL 11235517 (E.D.N.Y. Dec. 18, 2018) ....................................................... 12

*Nowrouzi v. Maker's Mark Distillery, Inc.*,
   2015 WL 4523551 (S.D. Cal. July 27, 2015) ....................................................... 11

*Pels v. Keurig Dr. Pepper, Inc.*,
   2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ......................................................... 18

*People ex rel. Dep't of Motor Vehicles v. Cars 4 Causes*,
   139 Cal. App. 4th 1006 (2006) .................................................................... 10

*Phan v. Sargento Foods, Inc.*,
   2021 WL 2224260 (N.D. Cal. June 2, 2021) ..................................................... 17, 18

*Red v. Kraft Foods, Inc.*,
   2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ................................................... 11, 12

*Robbins v. Gerber Prods. Co.*,
   2021 WL 3284812 (C.D. Cal. June 16, 2021) ....................................................... 20

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................. 16

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................. 18

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................... 13

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .......................................................................... 16

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

# TABLE OF AUTHORITIES

**Page(s)**

*Verdugo v. Target Corp.*,
    59 Cal. 4th 312 (2014) ............................................................................. 7

*Wallace v. ConAgra Foods, Inc.*,
    747 F.3d 1025 (8th Cir. 2014) ................................................................ 17

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................... 16

**Statutes**

Cal. Bus. & Prof. Code § 17204 ............................................................... 14

Cal. Bus. & Prof. Code § 17580(a) .............................................................. 5

Cal. Bus. & Prof. Code § 17580.5 ........................................................... 2, 7

Cal. Bus. & Prof. Code § 17580.5(a) ........................................................... 7

Cal. Bus. & Prof. Code § 17580.5(b) ..................................................... 7, 15

Cal. Civ. Code § 1750 ................................................................................ 3

Cal. Pub. Res. Code § 42355.51(b)(2)(A) .................................................. 4

**Other Authorities**

American Beverage Association, *Every Bottle Back | Innovation Naturally*,
    https://www.innovationnaturally.org/plastic/ ........................................ 13

Fed. Trade Comm'n, *The Green Guides: Statement of Basis and Purpose* 24
    https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-
    revised-green-guides/greenguidesstatement.pdf .................................... 12

Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic
    Recyclability* (2020) https://www.greenpeace.org/usa/wp-
    content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf ................... 9, 15

*Recyclable*, Cambridge Dictionary,
    https://dictionary.cambridge.org/us/dictionary/english/ recyclable (last visited
    Apr. 20, 2022) ...................................................................................... 12

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................ 6, 13, 14

Fed. R. Civ. P. 12(b)(6) ............................................................................. 6

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

# TABLE OF AUTHORITIES

**Page(s)**

Fed. R. Civ. P. 20 ............................................................................................................. 20

Fed. R. Civ. P. 21 ............................................................................................................. 20

**Regulations**

16 C.F.R. § 260.12 .............................................................................................................. 1

16 C.F.R. § 260.12(a) ................................................................................................. 4, 7, 8

16 C.F.R. § 260.12(b)(1) ............................................................................................... 4, 8

16 C.F.R. § 260.3(b) ....................................................................................................... 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## I.     **INTRODUCTION**[1]

2        Plaintiffs in these putative class actions base their claims on their own novel re-definition

3   of a well-understood term.  Plaintiffs do not deny that Defendants' water bottles can be, and are,

4   recycled.  Yet Plaintiffs claim that labeling the bottles as "100% Recyclable" is deceptive because

5   not every bottle will be recycled.  Common sense, federal labeling guidance, and California law

6   are consistent: Recycl*able* means *able* to be recycled.  Plaintiffs' thesis that "recyclable" is to be

7   read as a guarantee that each and every bottle will *ultimately be recycled* is thus inconsistent with

8   federal guidelines and California law, and begs credulity.  Because this erroneous definition

9   underpins each of Plaintiffs' claims against all Defendants, their claims all fail.

10       The Federal Trade Commission's ("FTC") Green Guides, which govern marketing claims

11  about recyclability, recognize that the phrase "recyclable" means that a product "*can be* collected,

12  separated, or otherwise recovered from the waste stream through an established recycling program

13  for reuse or use in manufacturing or assembling another item."  16 C.F.R. § 260.12.  Defendants'

14  "100% Recyclable" labels comport with these FTC guidelines; Plaintiffs never allege that the

15  products at issue are made from materials that *cannot* be recycled.  Plaintiffs make general

16  allegations about *nationwide* recycling capacity for *all* plastics, but fail to allege any facts regarding

17  the recyclability of Defendants' bottles, caps, or labels *specifically* and fail to allege any facts

18  regarding the recyclability of PET water bottles *in California*, which has a California Redemption

19  Value ("CRV") beverage container redemption program (and thus redemption and recycling

20  infrastructure not found in most other states).

21       In the few specific allegations they do make, Plaintiffs admit that Defendants' bottles are

22  made of the "most recyclable" plastics available.  Whether a given recyclable bottle is ultimately

23  repurposed depends on numerous factors beyond Defendants' control—including, above all,

24  consumers' willingness to place the bottles in the recycling stream.  Those and countless other

25  external factors might affect whether a given bottle is recycled, but they do not change the fact that

26  the bottle is able to be recycled.  Perhaps for this reason, the Consolidated Amended Complaint

27

28

---

[1] Unless otherwise stated, all emphasis is added and citations and internal quotation marks are omitted.

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

("CAC") fails to allege that anyone other than the named plaintiffs accepts their idiosyncratic definition of "recyclable" as meaning that every last container will be recovered and repurposed.

In California, the Green Guides are more than commonsense guidance based on the FTC's consumer surveys—they are *the* authority on recyclability claims according to California law, which expressly permits representations that follow the Green Guides.  This law sinks Plaintiffs' general consumer-fraud theories.  California lawmakers enacted the Environmental Marketing Claims Act  ("EMCA"), Cal. Bus. & Prof. Code § 17580.5, to govern marketing statements involving the term "recyclable."  That statute is the *exclusive* California law defining "recyclable," superseding all other consumer protection laws.  In other words, Plaintiffs cannot deploy general consumer-fraud theories under the UCL, CLRA, FAL, or common law to claim deception based on a *different* definition of "recyclable" than the EMCA's—as they do here.

Plaintiffs' claims fail for other reasons, too.  They impermissibly lump Defendants' products together and fail to identify with the requisite specificity which allegations pertain to which Defendants' products.  They fail to plead requisite elements of their CLRA, FAL, fraud, negligent misrepresentation, and UCL claims.  Plaintiffs also fail to adequately allege Article III standing because they have suffered no injury and do not allege that their expectations were not met with respect to the specific bottles they purchased, and lack standing to  seek injunctive relief because they have not alleged the requisite threat of prospective harm.

Plaintiffs' deficient claims boil down to their dissatisfaction with the nation's recycling infrastructure and the market for recycled material.  Neither their dissatisfaction nor alternative definition of "recyclable" creates an actionable claim.  The Court should dismiss the CAC.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.  Have Plaintiffs sufficiently pleaded a violation of any of the consumer protection laws based on a definition of "recyclable" consistent with the FTC's Green Guides definition, which the California legislature incorporated into the Business & Professions Code?

2.  Have Plaintiffs failed to plead that Defendants' "100% Recyclable" labeling is false or misleading?

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

3.  Would a reasonable consumer interpret "100% Recyclable" to mean that Defendants' water bottles *definitely will* be recycled?

4.  By making group pleadings about all Defendants' products and making few allegations about any specific product, do Plaintiffs satisfy Rule 9(b)?

5.   Do additional, claim-specific defects warrant dismissal?

6.  Do Plaintiffs (i) satisfy the standing requirements of Article III when they do not and cannot allege that the products they purchased failed to satisfy their expectations, and do they (ii) have Article III standing to seek injunctive relief when they cannot plausibly be "deceived" by the label in the future?

**III.   STATEMENT OF RELEVANT FACTS**

These are two consolidated cases in a series of putative class actions alleging similar claims about the recyclability of plastic packaging.  Plaintiffs sue the Coca-Cola Company ("Coca-Cola"), BlueTriton Brands, Inc. ("BTB"), and Niagara Bottling, LLC ("Niagara") (collectively, "Defendants"), alleging that Defendants' "100% Recyclable" representations on their water bottles are false and misleading.[2]  *See* CAC ¶¶ 40–68.

The CAC relies mostly on collective allegations against all Defendants and offers only limited detail about specific products.  Plaintiff Swartz alleges that, in November 2020, he purchased a bottle of Arrowhead water in California bearing a "100% Recyclable" label in part because of the text of the label.  *Id*. ¶ 88.  Plaintiffs Muto and Salgado claim that, in April 2021, they purchased Coca-Cola's Dasani Purified Water in part because of the "100% Recyclable" statement on the bottle.  *Id.* ¶¶ 86–87.  Plaintiff Salgado also claims that she purchased a Niagara product in April 2020 with a similar label statement.  *Id.* ¶ 87.

Plaintiffs allege that the "100% Recyclable" representations on Defendants' labels are false, violate California public policy and the FTC's Green Guides, and defraud the public because

---

[2] Plaintiffs allege five causes of action: (1) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), (2) false advertising under Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"), (3) fraud, deceit, and misrepresentation, (4) negligent misrepresentation, and (5) unfair, unlawful, and deceptive trade practices, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

Defendants' bottles are not "100% Recyclable" under Plaintiffs' definition of "recyclable." According to Plaintiffs, a "recyclable" product "*must*, if discarded into a recycling bin, be: (i) accepted for collection by a recycling facility; and (ii) processed for reuse or use in manufacturing another item." *Id.* ¶ 40. In other words, according to Plaintiffs, a product is recyclable only if it *is* recycled.

But that is not how "recyclable" is defined in the FTC's Green Guides. Rather, a product is recyclable—and can be labeled as such—if it "*can be* collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." 16 C.F.R. § 260.12(a). The Green Guides permit the use of unqualified "recyclable" claims if "recycling facilities are available" to at least 60% "of consumers or communities where the item is sold." *Id.* § 260.12(b)(1). As Plaintiffs themselves allege, consumers and communities in California have access to at least 75 Materials Recovery Facilities ("MRFs") that process recyclable materials, including the materials Plaintiffs allege comprise Defendants' bottles, caps, and labels. *See* CAC ¶ 41 (PET, HDPE, and PP sorted in sink-float tank). Plaintiffs do not allege that any of Defendants' California consumers or communities—let alone more than 40% of them—lack access to "recycling facilities." Therefore, Plaintiffs fail to allege that Defendants inappropriately label their bottles as "100% Recyclable." By relying on their own invented definition, Plaintiffs ask the Court to rewrite the California law and impose a definition of recyclability that the legislature neither considered nor codified.

Plaintiffs also ask the court to rely on portions of California law not in effect at the time they allegedly purchased the products at issue. Plaintiffs reference proposed amendments to California's recycling law in Senate Bill 343 concerning recyclability claims and recordkeeping requirements. CAC ¶¶ 74–75. Those provisions are inapplicable here. The amendments were signed into law on October 5, 2021 and do not apply for years, let alone retroactively to the purchases at issue. CAC ¶¶ 86–88 (alleging Plaintiffs purchased products in April 2020 and April 2021); Cal. Pub. Res. Code § 42355.51(b)(2)(A) (new restrictions on representations of recyclability do not apply to "[a]ny product or packaging that is manufactured up to 18 months

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

after the date the department publishes the first material characterization study" or "before January 1, 2024, whichever is later").[3]

Moreover, while Plaintiffs' CAC theorizes about the probability that a given bottle will or will not be recycled, it never alleges what happened to the specific bottles that Plaintiffs deposited in their recycling bins.  Although Plaintiffs cite a Greenpeace report to insinuate that their bottles stood roughly a 20% chance of reuse, that report pre-dated Plaintiffs' purchases by several years and purported to assess recycling capacity nationwide, not in California or in Plaintiffs' community.  CAC ¶¶ 41–44.  Accordingly, the CAC not only lacks factual allegations suggesting that Defendants' bottles are not 100% *recyclable*, but also lacks allegations that the bottles Plaintiffs purchased were not *actually recycled*.

Although each of Plaintiffs' claims concerns a different product, a different defendant, and a different purported injury, Plaintiffs attempt to tie them together with the conclusory assertion that Defendants' independent use of the phrase "100% Recyclable" on their respective products reflects a coordinated "marketing campaign" to mislead the public.  *Id.* ¶ 67.  But the factual allegations supporting this claim are scant and altogether insufficient.  Plaintiffs observe that the trade group American Beverage Association ("ABA") participated in a 2019 publicity campaign to promote the recycling of plastics, including by encouraging its members to consider "voluntary on-pack messag[ing]" about recyclability.  *Id.* ¶¶ 58–65.  Any recyclability-related claim that appeared on beverage containers during this period is alleged to be part of an ABA-led "coordinated scheme to defraud the public."  *Id.* ¶ 65.  Plaintiffs fail, however, to allege any facts suggesting that Niagara, BTB, or Coca-Cola had anything to do with the ABA campaign.  Plaintiffs also do not allege that Defendants—with their different products—communicated or cooperated with one another with regard to their claims of recyclability, or that the introduction of "100% Recyclable" on Defendants' packaging coincided with the ABA initiative.

---

[3] One of Plaintiffs' quoted provisions, Cal. Bus. & Prof. Code § 17580(a), imposes a recordkeeping requirement.  But Plaintiffs have failed to allege any noncompliance.

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

1    **IV.    LEGAL STANDARD**

2          To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual

3    matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

4    556 U.S. 662, 678 (2009).  "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to

5    relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

6    cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While the

7    Court must accept well-pleaded facts as true, it need not accept "allegations that are merely

8    conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec.*

9    *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Instead, the allegations in the complaint "must be

10   enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   Because

11   all of Plaintiffs' claims here sound in fraud, Plaintiffs must also satisfy Rule 9(b)'s heightened

12   pleading standard.[4]  To do so, they must sufficiently allege "the who, what, when, where, and how"

13   of the fraud. *TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1017 (N.D. Cal.

14   2012).   Any such claim must be "specific enough to give defendants notice of the particular

15   misconduct which is alleged to constitute the fraud charged so that they can defend against the

16   charge." *Id.*

17          Plaintiffs must also establish that they have constitutional standing, pleading an "injury in

18   fact that is fairly traceable to the defendant's conduct and that is likely to be redressed by a favorable

19   judicial decision." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302 (2017).

20   //

21   //

22   //

23   //

24   //

---

25   [4] Courts routinely apply Rule 9(b) to similar causes of action. *Beecher v. Google N. Am. Inc.*, 2018
26   WL 4904914, at *1 (N.D. Cal. Oct. 9, 2018) (UCL, FAL, and CLRA); *TransFresh Corp. v.*
     *Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1015 (N.D. Cal. 2012) (Greenwashing and UCL);
27   *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (fraud and
     negligent misrepresentation).

28

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

1

## V.     ARGUMENT

2

### A.     The incorporation of the Green Guides definition into the Business & Profession Code for "recyclable" labeling supersedes any other definition.

3

4

California law is far from silent on what "recyclable" means.  Plaintiffs' claims of deceptive

5

environmental marketing all fail because they hinge on a definition of "recyclable" that differs from

6

the Green Guides, which is the *exclusive* standard for such claims in California.   California

7

lawmakers enacted the EMCA, Cal. Bus. & Prof. Code § 17580.5, for the specific purpose of

8

governing environmental marketing claims, including what qualifies as "recyclable."  The statute

9

expressly defines an "environmental marketing claim" as any claim "contained in the [Green

10

Guides] published by the Federal Trade Commission."  *Id*. § 17580.5(a).  The statutory text then

11

makes crystal clear that compliance with the Green Guides provides a complete defense to any

12

claim of violation:  "It shall be a defense to any suit or complaint brought under this section that

13

the person's environmental marketing claims conform to the standards or are consistent with the

14

examples contained in the [Green Guides]."  *Id*. § 17580.5(b).  The Green Guides, in turn, are

15

explicit that whether a product may be labeled as "recyclable" hinges on whether the item is

16

accepted for recycling by existing recycling programs, not, as Plaintiffs urge, on whether every unit

17

of the product is, in fact, recycled.  The Green Guides state that a product may "be marketed as

18

recyclable [if] it can be collected, separated, or otherwise recovered from the waste stream through

19

an established recycling program for reuse or use in manufacturing or assembling another item."

20

16 C.F.R. § 260.12(a).

21

Because lawmakers designed the EMCA to address the specific kind of claims at issue here,

22

it bars Plaintiffs' attempt to impose a *different* definition of "recyclable" under the UCL, FAL, and

23

CLRA, all of which are more general statutes.  "[I]t is a commonplace of statutory construction that

24

the specific governs the general."  *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 941 (2017).  The

25

legislature's chosen definition also precludes Plaintiffs' common law claims, each of which turns

26

on an alleged meaning of "recyclable" different from that in the Green Guides.  *See Verdugo v.*

27

*Target Corp.*, 59 Cal. 4th 312, 326 (2014) (when the legislature uses "much clearer and more

28

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

1    explicit statutory language" it reflects an intention "entirely to preclude the imposition of

2    liability . . . under common law principles").  The Court should therefore dismiss the UCL, FAL,

3    CLRA, fraud, and negligent misrepresentation claims as based on a "recyclable" definition that is

4    inconsistent with the EMCA.  *See* CAC ¶¶ 106, 112, 125, 135, 144, 146.

5            **B.      <u>Plaintiffs fail to sufficiently plead that Defendants' "100% Recyclable" labeling
                        is false or misleading.</u>**

6

7            Plaintiffs' conclusory allegations that Defendants' products are not "100% Recyclable" are

8    based on generalized allegations about nationwide recycling practices that say nothing specific

9    about Defendants' products or recycling practices *in California*.  Because Plaintiffs' factual

10   allegations do not plausibly support a violation of California's definition of "recyclable," all of their

11   claims must be dismissed.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

12           California's adoption of the FTC's definition of "recyclable" requires Plaintiffs to plausibly

13   allege that, for at least 60% of California consumers or communities in which Defendants' products

14   are sold, there are no "recycling facilities . . . available" to collect, separate, or otherwise recover

15   from the waste stream the materials in Defendants' packaging.  *See* 16 C.F.R. § 260.12(a), (b)(1).

16   The Green Guides permit the use of the term "recyclable" on any packaging that "*can be* collected,

17   separated, or otherwise recovered from the waste stream through an established recycling program

18   for reuse or use in manufacturing or assembling another item."  *Id.* § 260.12(a).  The Green Guides

19   allow the use of "recyclable" without restriction if "recycling facilities are available to a substantial

20   majority [60%] of consumers or communities" where the item is sold.  *Id*. § 260.12(b)(1).

21   Therefore, to assert a violation of California's definition of "recyclable," Plaintiffs must plead facts

22   showing that, in at least 40% of the California communities in which Defendants' products labeled

23   "100% Recyclable" are sold, there are no established recycling programs to recover the bottles,

24   caps, or labels from the waste stream.  Plaintiffs fail to do so.

25           Ignoring that the definition of "recyclable" centers on the availability of recycling facilities

26   in specific communities, Plaintiffs rest their allegations on the capability of *existing* recycling

27   facilities *nationwide* to convert the collected PET, HDPE, and PP/BOPP into new plastics.  These

28

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

1    allegations rely entirely on inferences drawn from public reports discussing general recycling

2    practices in the United States.  *See* CAC ¶¶ 40–45, 42 nn.7, 8 (citing Greenpeace report and

3    plasticpollutioncoalition.org blog post).  But the allegations drawn from these sources fail to

4    plausibly indicate that Defendants' bottles, caps, and labels are not collected by California's

5    recycling programs.  Plaintiffs theorize that, "[a]lthough the Products *may be accepted for recycling*

6    by some curbside programs," MRFs allegedly lack the capacity to process the packaging into new

7    plastics.  *Id.*  ¶ 50.  Plaintiffs allege that as of 2017, nationwide MRFs had limited capacity to

8    process PET and HDPE and that contamination and processing issues further reduce the amount of

9    PET and HDPE converted to new plastics.  *Id.* ¶ 42.  But they fail to allege that the 2017 data is

10   still accurate, that it applies to *California* MRFs, or that the same contamination and processing

11   issues affecting plastics in general also exist for Defendants' bottles.  Relying on the Greenpeace

12   report, Plaintiffs assert that PP and BOPP plastics are generally too expensive to recycle in the

13   United States due to limited demand.  *Id.* ¶¶ 43–44.  But Plaintiffs say nothing about the capabilities

14   of *California* MRFs and never allege that Defendants' PP or BOPP labels are among the materials

15   that those MRFs decline to recycle.  *Id.* ¶ 43 & nn.10, 11 (citing Greenpeace report).[5]  Further,

16   Plaintiffs concede that 75 of the nation's 365 MRFs are in California. *Id.* ¶ 41.  Plaintiffs, moreover,

17   allege that MRFs generally utilize float tanks to separate HDPE and PP from PET plastics,

18   conceding that MRFs are capable of removing all three types of plastics from the waste stream.  *Id.*

19   The alleged lack of market demand for PP and BOPP plastics does not mean MRFs cannot process

20   those materials.

---

[5] The Greenpeace report is incorporated by reference into the CAC.  *See* CAC ¶¶ 42 & n.7, 43 nn.10, 11; *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (incorporation by reference permits the court to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading"); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation by reference "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"); *see also* Greenpeace, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastic Recyclability* (2020) https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf.

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

The Green Guides do not require "recyclable" claims to be backed by a pledge that recycling facilities *will* convert every gram of recyclable material into recycled plastics.  Because Plaintiffs do not plausibly allege that 60% of consumers of Defendants' products lack access to recycling facilities that collect and process bottles, caps, and labels, Plaintiffs' allegations fail to support a plausible inference that the "100% Recyclable" statements deviate from California's "recyclable" definition.  *See Twombly*, 550 U.S. at 555.

### C.   Reasonable consumers would not interpret "100% Recyclable" to mean that *every* bottle is recycled.

Plaintiffs not only seek to rewrite California law, but plain English as well.  Plaintiffs' claims all stem from their own invented definition of "recyclable": not that a plastic bottle *is capable of being* recycled, but that it *will be* recycled.  That tortured interpretation contradicts the word's plain meaning, reasonable consumers' understanding of it, and federal guidelines for its use in advertising.  That is, even if Plaintiffs sufficiently alleged that "100% Recyclable" does not comply with the Green Guides, they must also plead, for all their claims, that the "100% Recyclable" claim is "likely to mislead" or "likely to deceive" reasonable consumers.  *See Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (CLRA, UCL, and FAL); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (fraud); *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 562 (9th Cir. 2008) ("justifiable reliance" element of negligent misrepresentation same as "reasonable consumer" standard); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (EMCA must satisfy reasonable consumer test "as expressed in the FTC guides . . . and as used in our state's consumer laws").

This "reasonable consumer" test requires Plaintiffs to plead not only their *own* belief that they were misled but "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *People ex rel. Dep't of Motor Vehicles v. Cars 4 Causes*, 139 Cal. App. 4th 1006, 1016 (2006); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1092–93 (N.D. Cal. 2017).  It is not enough to plead that 100%

- 10 -

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

Recyclable "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie*, 105 Cal. App. 4th at 508.  Nor is it enough to plead that the three named plaintiffs shared the same interpretation.  *See id*.; *see also Moore v. Trader Joe's Co.*, 4 F.4th 874, 881–85 (9th Cir. 2021).

Courts regularly dismiss claims where, as here, plaintiffs fail to plead any basis for concluding that a *significant portion* of consumers—not just "some" consumers—would understand the statements to mean what plaintiffs suggest.  *See, e.g.*, *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1227–31 (9th Cir. 2019) (holding "no reasonable consumer would believe that the word 'diet' in a soft drink's brand name promises weight loss or healthy weight management" rather than "fewer calories"); *Moore*, 4 F.4th at 881–85 (reasonable consumer would not understand phrase "100% New Zealand Manuka Honey" to promise product contained only manuka pollen); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (reasonable consumer would not believe that ice cream is healthier than others solely because of "Original" and "Classic" descriptors); *Forouzesh v. Starbucks Corp.*, 2016 WL 4443203, at *3 (C.D. Cal. Aug. 19, 2016) (reasonable consumer would know that iced tea contains ice); *Nowrouzi v. Maker's Mark Distillery, Inc.*, 2015 WL 4523551, at *7 (S.D. Cal. July 27, 2015) (reasonable consumer would not think "handmade" meant no equipment or automated process used to manufacture whiskey); *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (reasonable consumer would "be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables").

Here, Plaintiffs allege no plausible facts to suggest that a reasonable consumer would believe that a "recyclable" product "must, if discarded into a recycling bin, be . . . processed for reuse or use in manufacturing another item" or that "100% Recyclable" means the entirety of the packaging could *and would* be recycled once deposited in a recycling bin.  CAC ¶ 40.  Plaintiffs contend that "100% Recyclable" guarantees that every bit of plastic from a "100% Recyclable" bottle will *always* be recycled—an impossibility given that a tiny fraction of bottles may be lost or mishandled in transport or processing.  Courts routinely reject unreasonable consumer

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

1   interpretations, like the one Plaintiffs advance here.  *See Kraft Foods*, 2012 WL 5504011, at *3;

2   *Moore*, 4 F.4th at 883 ("A reasonable consumer would not understand [defendant's] label here as

3   promising something that is impossible to find."); *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18,

4   19–21 (2d Cir. 2018) (affirming dismissal of a claim relating to truffle-flavored olive oil because

5   reasonable consumers would not expect a "mass produced, modestly priced olive oil" to be made

6   with real truffles).

7   　　　Underlining the implausibility of Plaintiffs' claim is the Green Guides' definition of

8   "recyclable."  Even if the FTC's Green Guides did not control the definition of recyclable, *supra*

9   Section V.A, they specifically address how reasonable consumers understand the term "recyclable."

10  The FTC intended to give guidance to marketers to avoid practices that likely mislead reasonable

11  consumers.[6]  The contradiction between Plaintiffs' proffered definition of "recyclable" and the

12  definition found in the Green Guides, *see supra* Section V.B, sinks Plaintiffs' claims.  *See Newton*

13  *v. Kraft Heinz Foods Co.*, 2018 WL 11235517, at *9 (E.D.N.Y. Dec. 18, 2018) (dismissing "natural"

14  claim as "so inconsistent with current federal law, that it fails to comport with reality").

15  　　　Finally, Plaintiffs' definition defies common sense.  Any reasonable person would

16  understand "recyclable" to mean "capable of being recycled."  That is, reasonable consumers

17  understand that a recyclable item might not, in fact, be recycled—just as an edible item might not

18  be eaten and a flammable item might not be lit ablaze.  This common sense understanding of

19  "recyclable" is consistent with the dictionary definition of the term.  *Recyclable*, Cambridge

20  Dictionary, https://dictionary.cambridge.org/us/dictionary/english/ recyclable (last visited Apr. 20,

21  2022) (defining "recyclable" as "able to be recycled").  Plaintiffs cannot clear the plausibility

22  threshold by interpreting words in a manner contrary to their "common definition and

23  understanding."  *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 17 (N.D. Cal. 2020)

24  (dismissing complaint premised on interpretation of "white" on a confectionery product as

---

25  [6] When fashioning the Green Guides, the FTC relied on consumer survey data to make
26  determinations "based on how consumers reasonably interpret claims" and considered the views of
    consumers with a range of sophistication.  Fed. Trade Comm'n, *The Green Guides: Statement of*
27  *Basis and Purpose* 24, 218, 241, https://www.ftc.gov/sites/default/files/attachments/press-
    releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf.

28  　　　　　　　　　　　　　　　　　　　　　　　DEFS.' CONSOLIDATED
                                                  MOT. TO DISMISS
                                                  3:21-cv-04643-JD

guaranteeing "white chocolate"). In fact, every single reference that Plaintiffs cite in the CAC—including the Green Guides and the Greenpeace report—embraces the universal understanding that "recyclable" means "able to be recycled." Plaintiffs have identified no authority that supports their tortured construction of the term.

Because Plaintiffs fail to show that a significant portion of reasonable consumers could have been confused by "100% Recyclable," they fail to state any claim. *Becerra*, 945 F.3d at 1230.

### D. Plaintiffs fail to meet Rule 9(b) pleading standards.

Plaintiffs barely allege anything specific about Defendants' separate products and instead impermissibly lump all of Defendants' products together. Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). The CAC makes blanket statements about *all* of Defendants' various products without differentiating them, alleging in conclusory terms that the "100% Recyclable" statements are false. *See, e.g.*, CAC ¶ 50. And contrary to Plaintiffs' allegation that "Defendants" have launched the "Every Bottle Back" initiative to market their products as "100% Recyclable," *id.* ¶ 58, they do not allege that any specific defendant participated in or was affiliated with that initiative.[7] Under Rule 9(b), Plaintiffs cannot rely on these broad-brush, conclusory statements, and the claims should accordingly be dismissed. *Swartz*, 476 F.3d at 764–65.

### E. Additional, claim-specific defects warrant dismissal.

As explained *supra* Section V.B–D, all of Plaintiffs' claims should be dismissed because Plaintiffs fail to allege an actionable misrepresentation. Certain claims should also be dismissed for the following claim-specific reasons.

---

[7] Nor could they allege all Defendants' participation. For example, BTB never participated in this initiative. American Beverage Association, *Every Bottle Back | Innovation Naturally*, https://www.innovationnaturally.org/plastic/ (listing corporate participants). The "Every Bottle Back" website is incorporated by reference into the CAC. *See* CAC ¶¶ 58, 61, 65; *supra* note 5.

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

1

**1.      Fraud, deceit, and/or misrepresentation claim.**

Plaintiffs' fraud, deceit, and/or misrepresentation claim fails because they do not allege "knowledge of falsity (or scienter)" or an "intent to defraud." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1140–41 (C.D. Cal. 2003).   Conclusory allegations that Defendants had actual knowledge or deliberately disregarded that the "100% Recyclable" statements were false are not enough under Rule 9(b).  CAC ¶ 126; *Ketab Corp. v. Mesriani L. Grp.*, 2015 WL 2085523, at *5 (C.D. Cal. May 5, 2015).   And as explained, *supra* Section V.B–D, the CAC fails to plead anything specific about any of the particular products at issue or what role each individual Defendant allegedly had in the undefined "fraud."

**2.      UCL claim.**

*Failure to Allege Violation of California Recycling Policy.*   Plaintiffs allege that Defendants have and continue to engage in unfair and unlawful practices that "violate" California recycling policy—specifically, California Public Resources Code sections 42355 and 42355.5. CAC ¶ 146(c).  But these provisions were enacted on January 1, 2022, long after Plaintiffs allegedly purchased the products at issue.  Thus, any alleged "violation" of these provisions could not have caused Plaintiffs' loss of money or property, leaving Plaintiffs without standing to sue on this basis in the wake of Proposition 64.  Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320–21 (2011).   Plaintiffs cite to no authority—and Defendants are aware of none—that legislative findings and declarations can be "violated" such that they can underpin a UCL "unlawful" prong claim.[8]  *See Malmen v. World Sav. Inc.*, 2011 WL 65781, at *4 (C.D. Cal. Jan. 7, 2011) (dismissing plaintiff's cause of action based on legislative findings and declarations because such "impose[d] no duties on [entities such as defendants] and therefore [was] not the basis

---

[8] Plaintiffs also assert that "contravening and undermining" these findings and declarations, as well as other state and local recycling policies, violates the "unfair" prong of the UCL.  CAC ¶ 146(c)–(d).   The CAC does not attempt to allege or explain how undermining legislative findings and declarations, even if proven, would meet any of the applicable tests under the UCL's unfair prong. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184, 186–87 (1999); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007).

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

1    for a legal claim"); *see also Edelman v. Bank of Am.*, 2009 WL 10673209, at *4 (C.D. Cal. Oct. 21,

2    2009) (similar).

3        ***Failure to Allege EMCA Violation.***  Plaintiffs' UCL claim predicated on an alleged EMCA

4    violation fails because Plaintiffs' admissions that Defendants' packaging can be separated from the

5    waste stream meets the Green Guides' definition of "recyclable"—meaning the EMCA's safe

6    harbor applies.  Cal. Bus. & Prof. Code § 17580.5(b).  Defendants accurately describe their

7    products as "100% Recyclable" for reasons expressed *supra* Section V.A–D.  The Greenpeace

8    report Plaintiffs cite found that all MRFs accept PET and HDPE—materials that Plaintiffs allege

9    comprise Defendants' bottles—and that those materials can "be [l]abeled as 'Recyclable' per FTC

10   Green Guides."  *See supra* note 5 at 10.  As the CAC admits, PET and HDPE are the "most

11   recyclable" plastics.  CAC ¶ 42.  The CAC also admits that MRFs are widely available in California

12   and that MRFs collect and separate from the waste stream all three types of plastics allegedly used

13   in Defendants' packaging: PET, HDPE, and PP.  *Id.* ¶ 41.

14       ***No Violation of Section 260.3.***  Plaintiffs' allegations also render implausible their

15   suggestion that Defendants are engaged in unlawful practices by violating Section 260.3 of the

16   Green Guides, which addresses whether an environmental marketing statement refers to the

17   "product, the product's packaging, a service, or just to a portion of the product, package, or service."

18   CAC ¶ 51.  Not only are all parts of Defendants' bottles recyclable, but the Green Guides also allow

19   Defendants to label their products as "recyclable" even if "minor, incidental" components like

20   bottle caps or labels are not recyclable.  *See* 16 C.F.R. § 260.3(b) ("In general, if the environmental

21   attribute applies to all but minor, incidental components of a product or package, the marketer need

22   not qualify the claim to identify that fact.").  While Plaintiffs assert that Defendants' bottle caps

23   and labels are not "incidental components" and are not recyclable (a legal conclusion the Court

24   need not accept as true, *Twombly*, 550 U.S. at 555), the Green Guides and Plaintiffs' allegations

25   contradict both claims.  Plaintiffs acknowledge that the plastics used to make Defendants' bottle

26   caps and labels are recyclable, albeit with further "processing."  CAC ¶ 43.  And the Green Guides

27   cite bottle caps as an example of a "minor, incidental component."  16 C.F.R. § 260.3(b) ("Example

28

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

2: A soft drink bottle is labeled 'recycled.' The bottle is made entirely from recycled materials, but the bottle cap is not. Because the bottle cap is a minor, incidental component of the package, the claim is not deceptive.").

**Derivative Claims Subject to Dismissal.** Where a "UCL claim is derivative of the other claims in the [complaint] that the Court dismisses . . . [the] derivative UCL claim must also be dismissed." *Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, 2018 WL 1805516, at *13 (N.D. Cal. Apr. 16, 2018). Plaintiffs derive their "unlawful" claim in part from purported violations of the CLRA and FAL, and it fails for the same reasons. CAC ¶ 147.

Because Plaintiffs have failed to allege any plausible basis for their UCL claim—under the deceptive, unfair, or unlawful prongs—the claim should be dismissed in its entirety.

### F.   The Consumer Plaintiffs lack Article III standing to pursue their claims.

Plaintiffs Muto, Salgado, and Swartz lack standing to pursue their "100% Recyclable" claims.[9] To pursue a claim in federal court, Plaintiffs must demonstrate standing to sue by establishing that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs "must clearly . . . allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) ("To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm."). Here, Plaintiffs cannot demonstrate even that first, crucial element of injury in fact, so they lack standing. Even if Plaintiffs' claims were predicated on a reasonable interpretation of "100% Recyclable," they would lack standing to pursue them because they cannot show that the water bottles they purchased were not recycled. Moreover, because Plaintiffs do not plausibly allege any risk of future injury, they lack standing to pursue injunctive relief.

---

[9] Plaintiff Sierra Club's lack of Article III standing is addressed in the supplemental brief of Coca-Cola and BTB.

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

1.      **Plaintiffs do not allege that the "100% Recyclable" statement caused them any injury.**

Though Plaintiffs suggest that water bottles are not generally recycled, they do not allege that the bottles *they* purchased were not ultimately recycled.  This renders their alleged injury a hypothetical one at best.  Article III standing requires Plaintiffs to show that "they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009).  "The requisite injury must be an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.*

Plaintiffs acknowledge that Defendants' bottles are made of the "most recyclable" plastics available.  CAC ¶ 42.  Plaintiffs make no allegations regarding the recycling rates for plastic water bottles, as opposed to all PET and HDPE products.  Plaintiffs wholly fail to address recycling of water bottles in California (or its CRV program), other than to concede that 75 of the nation's 365 MRFs operate in the state.  Plaintiffs do not, and cannot, allege that their water bottles were not recycled—meaning that there is no evidence that Plaintiffs received anything less than that for which they paid.  Mere supposition that the bottles they purchased might not have been recycled is too "conjectural [and] hypothetical" to give rise to Article III standing. *Birdsong*, 590 F.3d at 960.

Courts have consistently declined to entertain false-labeling claims by plaintiffs who might have been, but were not necessarily, deprived of the benefit of their bargain.  In *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1027 (8th Cir. 2014), the plaintiffs complained that they had purchased the defendant's "100% kosher" hot dogs and later learned that some of the defendant's products were tainted with non-kosher meat.  The court dismissed the complaint for lack of Article III standing, reasoning that it was "pure speculation to say the particular packages sold to the [plaintiffs] were tainted by non-kosher beef," and "quite plausible" that plaintiffs purchased "*exactly what was promised*: a higher quality, kosher meat product." *Id.* at 1031.  Similarly, the court in *Phan v. Sargento Foods, Inc.*, 2021 WL 2224260, at *4 (N.D. Cal. June 2, 2021), found that the plaintiff lacked standing to bring suit over a "No Antibiotics" label on a cheese product, where the plaintiff

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

1    contended that a "systemic problem" at the defendant's plant had tainted some units with antibiotics.

2    Absent an allegation that the plaintiff "actually purchased one of the[] [p]roducts containing

3    antibiotics," the plaintiff could not demonstrate that he had suffered any injury from purchasing the

4    product. *Id.*; *see also Pels v. Keurig Dr. Pepper, Inc*., 2019 WL 5813422, at *4–5 (N.D. Cal. Nov.

5    7, 2019) (dismissing claims for failure to plead a particularized injury where plaintiff did not allege

6    that he himself purchased water with dangerous arsenic levels); *Myers-Armstrong v. Actavis*

7    *Totowa, LLC*, 2009 WL 1082026, at *3–4 (N.D. Cal. Apr. 22, 2009) (allegation that defendant's

8    products "came from a source of uncertain quality" not sufficient to confer standing).

9    The result must be the same here. As in *Wallace*, it is "quite plausible" that Plaintiffs got

10   exactly what they hoped for: water bottles that were ultimately repurposed for reuse in another

11   product. Their contention to the contrary is "entirely speculative." Even if Plaintiffs could satisfy

12   Article III by showing that their bottles *probably* were not reused, their allegations still would not

13   suffice. The Greenpeace report Plaintiffs rely on refers to nationwide shortfalls in PET waste

14   recycling capacity in 2017. It also does not address recycling of water bottles in California or under

15   California's CRV program. Nor does it address recycling at the time Plaintiffs allegedly placed

16   their bottles in the recycling stream in 2020 and 2021. Accordingly, Plaintiffs lack standing to

17   pursue their claims based upon their implausible interpretation of "100% Recyclable."

18   ### 2.        Plaintiffs lack standing to pursue injunctive relief.

19   To establish standing to seek injunctive relief, a plaintiff must show that the threat of future

20   injury is "actual and imminent, not conjectural or hypothetical." *Davidson v. Kimberly-Clark Corp.*,

21   889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

22   "In other words, the 'threatened injury must be *certainly impending* to constitute injury in fact' and

23   'allegations of *possible* future injury are not sufficient.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*,

24   568 U.S. 398, 409 (2013)). "Where standing is premised entirely on the threat of repeated injury,

25   a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Id.*

26   (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

27   The Ninth Circuit, in *Davidson*, rejected the argument "that injunctive relief is *never*

28

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

available for a consumer who learns after purchasing a product that the label is false." 889 F.3d at 970. But the court did not hold that injunctive relief is always available to a plaintiff who alleges an interest in purchasing the product at issue in the future. Rather, the Ninth Circuit held that "a previously deceived consumer *may* have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase," in limited circumstances. *Id.* at 969. The court held that standing to seek injunctive relief *could* exist if a plaintiff made "*plausible* allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," or if a plaintiff made "*plausible* allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70.

Plaintiffs say they "continue to desire to purchase water in bottles that are '100% Recyclable,'" hypothesize that either recycling technology or the products in question could change over time, and make the conclusory assertion that they are "likely to be repeatedly misled by Defendants' conduct" in the absence of an injunction. CAC ¶ 90. Plaintiffs' own allegations in the CAC, however, render this assertion implausible. Plaintiffs make clear their belief that now and in the foreseeable future no PET water bottle—an certainly *no* PET water bottle with a HDPE or PP cap and a PP label—is 100% recyclable; the gravamen of their CAC, after all, is that it is a "fiction that plastic bottles are '100% Recyclable,'" *id.* ¶ 58, and that PET water bottles are inherently non-recyclable because "the United States lacks the capacity to process 77.5% of all PET and 88% of all HDPE plastic waste generated," *id.* ¶ 42. Plaintiffs' allegations regarding the state of recycling, moreover, make it clear that any hypothetical changes to the state of recycling in the United States that might bear on the recyclability of water bottles will be far in the future and that, as persons apparently quite knowledgeable about recycling, they would know if future changes in recycling infrastructure rendered plastic water bottles 100% Recyclable by their definition. Plaintiffs therefore lack standing to seek injunctive relief. *See, e.g.*, *Hanscom v. Reynolds Consumer Prods. LLC*, 2022 WL 591466, *4–5 (N.D. Cal. Jan. 21, 2022) (plaintiff lacked standing to pursue

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

injunctive relief because her alleged interest in future purchases of recycling bags was undermined by allegations that recycling processes were "designed to work without such bags").

### G. <u>Plaintiffs' claims do not warrant joinder.</u>

Finally, while the Court has ruled on the issue, Defendants respectfully wish to preserve their argument that Plaintiffs have failed to meet the requirements for joinder under Federal Rule of Civil Procedure 20. The CAC does not adequately allege that Defendants are jointly or severally liable for one another's conduct. Rather, it attempts to tie Defendants together by asserting that Defendants' separate use of the phrase "100% Recyclable" reflects a "coordinated marketing campaign." *See, e.g.*, CAC ¶ 4. The CAC, however, fails to allege that Defendants actually communicated with one another or otherwise cooperated in making their claims of recyclability. Allegations that Defendants merely engaged in similar conduct do not satisfy Rule 20's joinder requirements. *See, e.g.*, *Robbins v. Gerber Prods. Co.*, 2021 WL 3284812, at *2 (C.D. Cal. June 16, 2021). As such, there is no basis to join Defendants together in a single action, and the claims against the three Defendants should have been severed. *See* Fed. R. Civ. P. 21.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' consolidated motion to dismiss with prejudice.

//
//
//
//
//
//
//
//
//
//

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD

1    Dated:  April 22, 2022              By:  /s/ *Dawn Sestito*

2                                             Dawn Sestito
                                              Collins Kilgore
3                                             Hannah Y. Chanoine (*pro hac vice*)
                                              O'MELVENY & MYERS LLP
4
                                              *Attorneys for Defendant BlueTriton Brands,*
5                                             *Inc.*

6

7    Dated:  April 22, 2022              By:  **/s/ *Gary T. Lafayette*

8                                             Steven A. Zalesin (*pro hac vice*)
                                              PATTERSON BELKNAP WEBB &
9                                             TYLER LLP

10                                            Gary T. Lafayette
                                              LAFAYETTE & KUMAGAI LLP
11
                                              *Attorneys for Defendant The Coca-Cola*
12                                            *Company*

13

14   Dated:  April 22, 2022              By:  **/s/ *Kent J. Schmidt*

15                                            Kent J. Schmidt
                                              Creighton R. Magid (*pro hac vice*)
16                                            DORSEY & WHITNEY LLP

17                                            *Attorneys for Defendant Niagara Bottling LLC*

18                                            **Pursuant to Civ. L.R. 5-1(i)(3), the electronic
                                              signatory has obtained approval from this
19                                            signatory.

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION OF FILING**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all other signatories listed, and on behalf of whom this filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  April 22, 2022                    By:  /s/ *Dawn Sestito*

Dawn Sestito
Collins Kilgore
Hannah Y. Chanoine (*pro hac vice*)
O'MELVENY & MYERS LLP

*Attorneys for Defendant BlueTriton Brands, Inc.*

DEFS.' CONSOLIDATED
MOT. TO DISMISS
3:21-cv-04643-JD