**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID SWARTZ, CRISTINA SALGADO, and MARCELO MUTO, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE COCA-COLA COMPANY, BLUETRITON BRANDS, INC., and NIAGARA BOTTLING, LLC,<br><br>Defendants. | Lead Case No.: 3:21-cv-04643-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION TO DISMISS**<br><br>Hon. James Donato<br><br>DATE: June 30, 2022<br>TIME: 10:00 a.m.<br>CTRM: 11, 19th F |
| SIERRA CLUB,<br><br>Plaintiff,<br><br>v.<br><br>THE COCA-COLA COMPANY and BLUETRITON BRANDS, INC.,<br><br>Defendants. | Case No.: 3:21-cv-04644-JD |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................................1

II.   FACTUAL ALLEGATIONS ........................................................................................2

    A.    Defendants' "100% Recyclable" Claim..............................................................2

    B.    The Consumer Plaintiffs' Experiences. ..............................................................3

    C.    Sierra Club Diverts Substantial Resources to Combat Defendants' False Claim..........4

III.  LEGAL STANDARD ....................................................................................................5

IV.   ARGUMENT .................................................................................................................5

    A.    Plaintiffs Have Plausibly Alleged Deceptive Practices. ....................................5

    B.    Defendants Have Not Complied with the Green Guides Or the EMCA's Definition of Recyclable and Cannot Seek Safe Harbor. ..............................................10

    C.    Plaintiffs Have Alleged Their Claims Sounding In Fraud With Particularity. ...........13

    D.    Defendants' Additional Claim-Specific Arguments Are Meritless. ...................15

        1.    Plaintiffs Have Plausibly Alleged Fraud, Deceit, and/or Misrepresentation. ........15

        2.    Plaintiffs Have Plausibly Alleged a UCL Violation. ...............................15

            a)   Defendants' Misrepresentations Violate Cal. Pub. Res. Code §§ 42355 and 42355.5. ...............................................15

            b)   Defendants' Misrepresentations Violate the EMCA. ...............16

            c)   Defendants' Misrepresentations Violate The Green Guides. ..................16

            d)   Defendants' Misrepresentations Violate the CLRA and the FAL. ...........17

            e)   Defendants' Conduct Is Unfair. ...............................17

    E.    The Consumer Plaintiffs Have Article III Standing To Pursue Their Claims. .............18

        1.    Injury-In-Fact. ...............................................18

        2.    Injunctive Relief. ...........................................20

    F.    Plaintiff Sierra Club Has Standing To Pursue Its Claims. ............................22

        1.    Sierra Club Has Suffered An Injury-in-Fact. ......................22

            a)   Defendants' Labels Have Frustrated Sierra Club's Mission.................23

|     |     |     | b) | Sierra Club Has Diverted Resources to Respond to the Frustration of | |
|     |     |     |    | Its Mission.................................................................................................24 | |
|     |     | 2.  | Sierra Possesses Article III Standing To Pursue Injunctive Relief.......................26 | | |
|     |     | 3.  | Sierra Club Possesses Statutory Standing For Its UCL And FAL Claims. ...........26 | | |
|     |     |     | a) | Sierra Club Has Lost Money and Property and Suffered Injury-in-Fact...27 | |
|     |     |     | b) | UCL Enforcement is not Limited to Those Who Can Show Reliance. ......27 | |
|     | G.  | The Court Has Already Made A Decision Regarding Joinder of Defendants' Claims. ....29 | | | |
|     | H.  | The Court Granted Plaintiffs Broad Leave To File A Consolidated Complaint................29 | | | |
| V.  | CONCLUSION.......................................................................................................................30 | | | | |

PLFS.' OPPOSITION TO DEFS.' CONSOLIDATED MOTION TO DISMISS; LEAD CASE NO. 3:21-CV-04643-JD

**Cases**

*Abante Rooter & Plumbing v. Pivotal Payments, Inc.*,
No. 16-cv-05486-JCS, 2017 U.S. Dist. LEXIS 26457 (N.D. Cal. Feb. 24, 2017) .............................. 26

*Allergan United States v. Imprimis Pharm., Inc.*,
No. SA CV 17-1551-DOC (JDEx), 2017 U.S. Dist. LEXIS 223117 (C.D. Cal. Nov. 14, 2017)......... 34

*Andrew W. v. Menlo Park City Sch. Dist.*,
No. C-10-0292 MMC, 2010 U.S. Dist. LEXIS 76827, 2010 WL 3001216 (N.D. Cal. July 29, 2010) 36

*Animal Legal Def. Fund v. Great Bull Run, LLC*,
No. 14-cv-01171-MEJ, 2014 U.S. Dist. LEXIS 78367 (N.D. Cal. June 6, 2014) .............................. 31

*Animal Legal Def. Fund v. HVFG LLC*,
2013 U.S. Dist. LEXIS 89169, 2013 WL 3242244 (N.D. Cal. June 25, 2013)................................... 32

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ................................................................................... 19

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ............................................................................................................. 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................................. 5

*Astiana v. Ben & Jerry's Homemade, Inc.*,
No. C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ................................................. 15

*Athens Lodge No. 70 v. Wilson*,
117 Cal. App. 2d 322 (1953) ............................................................................................................. 33

*Barquis v. Merchs. Collection Ass'n*,
7 Cal. 3d 94 (1972) ............................................................................................................................ 33

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ............................................................................................................. 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................................. 5

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ........................................................................................................... 16

*Bush v. Rust-Oleum Corp.*,
No. 20-cv-03268-LB, 2021 U.S. Dist. LEXIS 507 (N.D. Cal. Jan. 4, 2021) ................................ 7, 24

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
475 F. App'x 113 (9th Cir. 2012) ...................................................................................................... 10

*Cel-Tech Commc'ns Inc. v. L.A. Cellular Tel. Co.*,
83 Cal. Rptr. 2d 548 (1999) ............................................................................................................... 20

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................................................................................................................... 23, 30

*Concha v. London*,
62 F.3d 1493 (9th Cir. 1995) ............................................................................................................. 16

*Davidson v. Kimberly-Clark Corp.*,
76 F. Supp. 3d 964 (N.D. Cal. 2014) ................................................................................................ 25

*Davidson v. Kimberly-Clark Corp.*,
  873 F.3d 1103 (9th Cir. 2017) .................................................................. 2, 23, 24, 25

*Drum v. San Fernando Valley Bar Ass'n*,
  106 Cal. Rptr. 3d 46 (2010) ................................................................................ 19

*East Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) .............................................................................. 28

*Fair Hous. Council v. Roommate.com, LLC*,
  666 F.3d 1216 (9th Cir. 2012) ....................................................................... 27, 29

*Fair Hous. of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002) .............................................................................. 28

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*,
  345 F. Supp. 3d 1111 (N.D. Cal. 2018) ............................................................... 7

*Forouzesh v. Starbucks Corp.*,
  No. CV 16-3830 PA (AGRx), 2016 U.S. Dist. LEXIS 111701 (C.D. Cal. Aug. 19, 2016)................ 10

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) .................................................................................. 6

*Friends of the Earth v. Laidlaw Envtl. Servs.*,
  528 U.S. 167 (2000) ............................................................................................ 26

*Friends of the Earth v. Sanderson Farms, Inc.*,
  992 F.3d 939 (9th Cir. 2021) .............................................................................. 30

*Gilmore v. Union Pac. R. Co.*,
  No. 09-CV-02180-JAM-DAD, 2010 U.S. Dist. LEXIS 50470, 2010 WL 2089346 (E.D. Cal. May 21, 2010) ................................................................................ 35

*Grace v. Apple Inc.*,
  No. 17-CV-00551, 2017 U.S. Dist. LEXIS 119109 (N.D. Cal. July 28, 2017).................... 30

*Greenpeace, Inc. v. Walmart Inc.*,
  No. 21-cv-00754-MMC, 2021 U.S. Dist. LEXIS 178959 (N.D. Cal. Sep. 20, 2021) ............ 34

*Ham v. Hain Celestial Grp., Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) ............................................................. 6, 15

*Hanscom v. Reynolds Consumer Prods. LLC*,
  No. 21-cv-03434-JSW, 2022 U.S. Dist. LEXIS 34057 (N.D. Cal. Jan. 21, 2022) ........... 7, 25

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ...................................................................................... 26, 27

*In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*,
  No. 20-15742, 2021 U.S. App. LEXIS 26239 (9th Cir. Aug. 31, 2021) ...................... 24

*Johnson v. California*,
  543 U.S. 499 (2005) ............................................................................................ 23

*Jou v. Kimberly-Clark Corp.*,
  No. C-13-03075 JSC, 2013 U.S. Dist. LEXIS 173216 (N.D. Cal. Dec. 10, 2013) ........... 18

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................................ 14

*Klein v. Chevron U.S.A., Inc.*,
  137 Cal. Rptr. 3d 293 (2012) .............................................................................. 18

*Kraus v. Trinity Mgmt. Servs., Inc.*,
  23 Cal. 4th 116 (2000) ........................................................................................ 32

iv

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ............................................................................................31, 32

*LaVigne v. First Cmty. Bancshares, Inc.*,
  215 F. Supp. 3d 1138 (D.N.M. 2016) ...............................................................................26

*Lona's Lil Eats, LLC v. Doordash, Inc.*,
  No. 20-cv-06703-TSH, 2021 U.S. Dist. LEXIS 8930 (N.D. Cal. Jan. 18, 2021) ...............33

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...........................................................................................................26

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ..............................................................................................21

*McKell v. Wash. Mut., Inc.*,
  49 Cal. Rptr. 3d 227 (2006) ...............................................................................................20

*Milan v. Clif Bar & Co.*,
  489 F. Supp. 3d 1004 (N.D. Cal. 2020) .............................................................................23

*Moore v. Kayport Package Express*,
  885 F.2d 531 (9th Cir. 1989) ..............................................................................................16

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th. Cir. 2021) ..................................................................................................9

*Myers-Armstrong v. Actavis Totowa, LLC*,
  No. C 08-04741 WHA, 2009 U.S. Dist. LEXIS 38112 (N.D. Cal. Apr. 22, 2009)..............23

*Nacarino v. Chobani, LLC*,
  No. 20-cv-07437-EMC, 2021 U.S. Dist. LEXIS 149153 (N.D. Cal. Aug. 9, 2021) ...........24

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015) ............................................................................................28

*Nowrouzi v. Maker's Mark Distillery, Inc.*,
  No. 14cv2885 JAH(NLS), 2015 U.S. Dist. LEXIS 97752 (S.D. Cal. July 27, 2015) ...........10

*Pels v. Keurig Dr. Pepper, Inc.*,
  No. 19-CV-03052-SI, 2019 U.S. Dist. LEXIS 194909 (N.D. Cal. Nov. 7, 2019)................22

*Phan v. Sargento Foods, Inc.*,
  No. 20-CV-09251-EMC, 2021 U.S. Dist. LEXIS 103629 (N.D. Cal. June 2, 2021) ..........22

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ..............................................................................................21

*Red v. Kraft Foods, Inc.*,
  No. CV 10-1028-GW(AGRx), 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012) ...............11

*Rovai v. Select Portfolio Servicing, LLC*,
  No. 14-cv-1738-BAS-WVG, 2018 U.S. Dist. LEXIS 107764 (S.D. Cal. June 27, 2018) ..................21

*S. Cal. Hous. Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*,
  426 F. Supp. 2d 1061 (C.D. Cal. 2005) .............................................................................32

*Salters v. Beam Suntory, Inc.*,
  No. 4:14cv659-RH/CAS, 2015 U.S. Dist. LEXIS 62146 (N.D. Fla. May 1, 2015) ............11

*Scilex Pharm. v. Sanofi-Aventis United States LLC*,
  No. 21-cv-01280-JST, 2021 U.S. Dist. LEXIS 149390 (N.D. Cal. Aug. 5, 2021)..............34

*Smith v. Keurig Green Mt., Inc.*,
  393 F. Supp. 3d 837 (N.D. Cal. 2019) ..............................................................................7, 8

*Smith v. Pac. Props. and Dev. Corp.*,
358 F.3d 1097 (9th Cir. 2004) ................................................................ 26

*SPS Techs., LLC v. Briles Aero., Inc.*,
No. CV 18-9536-MWF (ASx), 2019 U.S. Dist. LEXIS 219610 (C.D. Cal. Oct. 30, 2019) .............. 33

*Sw. Fair Hous. Council v. WG Scottsdale LLC*,
No. CV-19-00180-TUC-RM, 2021 U.S. Dist. LEXIS 43115 (D. Ariz. Mar. 8, 2021) ...................... 28

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ................................................................ 16

*Theranos, Inc. v. Fuisz Pharma LLC*,
876 F. Supp. 2d 1123 (N.D. Cal. 2012) ............................................... 5, 22

*Topadzhikyan v. Glendale Police Dep't*,
No. CIV 10-387 CAS (SSX), 2010 U.S. Dist. LEXIS 78717, 2010 WL 2740163
(C.D. Cal. July 8, 2010) ..................................................................... 35

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966) .......................................................................... 35

*United States ex rel. Vatan v. OTC Med. Servs.*,
721 F. App'x 662 (9th Cir. 2018) ......................................................... 16

*Usher v. City of Los Angeles*,
828 F.2d 556 (9th Cir.1987) ................................................................. 5

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .............................................................. 14

*Wallace v. ConAgra Foods, Inc.*,
747 F.3d 1025 (8th Cir. 2014) .............................................................. 22

*Walling v. Beverly Enters.*,
476 F.2d 393 (9th Cir.1973) .................................................................. 5

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ............................................................... 19

**Other authorities**

Cal. Bus. & Prof. Code § 17580 ............................................................ 11

Cal. Bus. & Prof. Code § 17580(a) ....................................................... 18

Cal. Bus. & Prof. Code § 17580.5(a) .................................................... 18

Cal. Bus. & Prof. Code § 17580.5(b) .................................................... 12

Cal. Pub. Res. Code § 42355 ............................................................... 17

Cal. Pub. Res. Code § 42355.5 ........................................................ 17, 20

**Rules**

Rule 12(b)(6) ........................................................................................ 5

Rule 9(b) ............................................................................................ 13

**Treatises**

2021 Cal. Stats. ch. 507 § 4 (SB 343) .............................................. 15, 25

**Regulations**

16 C.F.R. § 260.12 (Example 1) ........................................................... 13

16 C.F.R. § 260.12(a) .......................................................................... 12

16 C.F.R. § 260.12(b) .................................................................................................. 12

16 C.F.R. § 260.12(c) ......................................................................................... 12, 13, 19

16 C.F.R. § 260.3 (Example 1). .................................................................................... 13

16 C.F.R. § 260.3(b) ..................................................................................................... 13

21 C.F.R. § 260.12 (Example 1) ................................................................................... 12

21 C.F.R. § 260.12(a) ................................................................................................... 12

21 C.F.R. § 260.12(c) ................................................................................................... 12

21 C.F.R. § 260.3 .......................................................................................................... 12

PLFS.' OPPOSITION TO DEFS.' CONSOLIDATED MOTION TO DISMISS; LEAD CASE NO. 3:21-CV-04643-JD

# I. **INTRODUCTION**

Americans use around 50 billion single-serve plastic water bottles a year, most of which end up as waste, inside and outside of landfills. The plastics in these bottles remain in our environment for hundreds years as a source of enduring contamination, affecting human health as well as our wildlife and marine life. Individual consumers, environmental organizations, and government agencies are concerned with this growing calamity, but some corporations are seeking to deceive the public about the problem in order to maintain their profits.

Plaintiffs allege that Defendants The Coca-Cola Company ("Coca-Cola"), BlueTriton Brands, Inc. ("BTB") and Niagara Bottling LLC ("Niagara") deceptively represent that their bottled water, including brands such as Dasani, Arrowhead, and Niagara (the "Products") are "100% Recyclable." Reasonable consumers understand this to mean that the entirety of the Product can, and will, be recycled if disposed in the recycling bin. However, this is false. Defendants' Products are made with unrecyclable polypropylene ("PP") bottle caps and biaxially oriented polypropylene ("BOPP") plastic labels that cannot be recovered from the waste stream and are treated as waste. And even when the remainder of the bottles are made of polyethylene terephthalate ("PET") and/or the caps are made of high-density polyethylene ("HDPE"), which are technically capable of being recycled, the overwhelming majority end up in landfills or incinerators because of contamination of the waste stream and restricted availability of processing facilities. Defendants fail to disclose information regarding the true recyclability of the Products.

Defendants dispute that reasonable consumers expect "100% Recyclable" to mean that "100%" of the product can and will be recycled if placed in the recycling bin. Not only does this factual dispute have no bearing on the sufficiency of the pleadings, but it flouts common sense as well as statements by Defendants themselves and their trade association that "100% Recyclable" means that the Products are part of a "circular economy" in which the Product will be repurposed in its entirety. ECF No. 74 ("CCAC") ¶ 58. Defendants also contend that Plaintiffs have not alleged that the label statement is false or likely to mislead *in California*, apparently overlooking numerous allegations, such as in paragraph 50 of the Consolidated Amended Complaint: "MRFs in California do not have the capacity to . . . process the Products' PP bottle caps and BOPP labels." CCAC ¶ 50.

Defendants argue that they have complied with the Environmental Marketing Claims Act ("EMCA"), the Green Guides and other laws that define the word "recyclable." Not only are they wrong, but certainly nothing in those laws provides a safe harbor for the false and misleading claim at issue here, "***100%*** Recyclable," when products contain indisputably unrecyclable components.

Contrary to Defendants' contention, Plaintiffs have satisfied FRCP 9(b) by pleading the "who, what, when, where and how" of their causes of action sounding in fraud. Plaintiffs have also alleged which Defendants are responsible for the manufacture, marketing, and sale of each Product. Plaintiffs have also alleged all the other requirements of fraud, including knowledge of falsity and intent to defraud, with specific facts about Defendants' individual actions and collective trade association conduct in which they participated. And they pled multiple violations of state law, federal law, and public policy that serve as predicates for their unlawful and unfairness claims under the UCL. Moreover, Plaintiffs' unfairness claim satisfies all three tests used in this Circuit to evaluate whether a claim is "unfair."

With regard to standing, it is well established that consumer plaintiffs may seek injunctive relief when they have stated an intent to make future purchases but do not know whether the label claims are likely to be truthful in the future, because of the defendant's ability to modify the product. *See, e.g., Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1110 (9th Cir. 2017). Sierra Club has Article III and statutory standing for its claims, because it already has had to expend funds to combat Defendants' false advertising, diverting resources from other objectives, and will continue to have to do so. Despite the one case on which Defendants rely, the overwhelming weight of authority empowers organizations to bring UCL and FAL suits in these circumstances.

Finally, Defendants renew their effort to argue that the claims should be severed into separate actions, which the Court already rejected in its March 8, 2022 minute order.

For these reasons, the Court should deny Defendants' motion to dismiss in its entirety.

## II. FACTUAL ALLEGATIONS

### A. Defendants' "100% Recyclable" Claim.

Defendants are manufacturers of various brands of bottled water. CCAC ¶ 28. Defendants uniformly represent that each of their Products are "100% Recyclable." *Id.* ¶ 30. Reasonable consumers

understand this to mean that the Products can, and will be, recycled in their entirety if the consumer disposes of the bottles in a recycling bin. *Id.* ¶¶ 66, 86–88.

Defendants' coordinated use of the claim "100% Recyclable" is part of an effort to rehabilitate the image of their Products, which the public is increasingly aware pose a substantial environmental risk. *Id.* ¶¶ 4, 58, 66. The "Every Bottle Back" initiative that Coca-Cola, the American Beverage Association ("ABA"), and other beverage companies launched in 2019 is central to this marketing effort. *Id.* ¶¶ 58, 64. The stated purpose of this initiative is to spread awareness of the "circular plastics economy." *Id.* ¶ 58. As the ABA website explains, American beverage makers are "[w]ork[ing] together to leverage our packaging to remind consumers that our bottles are 100% recyclable and can be remade into new bottles. Beverage companies will begin introducing voluntary messaging on packages in late 2020." *Id.* ¶ 64. The most important features of the "Every Bottle Back" initiative are a "public awareness campaign to help consumers understand the value of 100% recyclable bottles" and the use of "a new voluntary on-pack message to promote the recyclability of [Defendants'] plastic bottles and caps." *Id.* All Defendants have adopted the voluntary "100% Recyclable" on-pack message. *Id.* ¶ 65. The ABA explains that this message is intended to convey that not only are plastic water bottles recyclable, but also that the Products are part of circular economy where bottles are recycled over and over. *Id.* ¶¶ 58, 66.

In truth, Defendants' Products are not recyclable and the circular plastics economy is a fiction. *Id.* ¶ 4. Defendants' caps and labels are made from plastics that cannot be, and are not, recycled at all. *Id.* ¶¶ 4, 43–45. The caps and labels are waste that must be sent to a landfill or incinerated. *Id.* ¶¶ 43, 125, 130. The bottle (apart from the label and cap), though made from PET plastic that is considered "recyclable," is not "*100%* recyclable" because 28% of PET plastic that is recycled is lost in processing. *Id.* ¶¶ 4, 50. Defendants fail to inform consumers about this fact and other facts about the Products' true recyclability, including that there is only capacity to recycle approximately 22.5% of PET plastic in the United States, which also contradicts their "100% Recyclable" claim. *Id.* ¶¶ 42, 112–114, 125–128, 137, 144, 146.

## B. The Consumer Plaintiffs' Experiences.

The Consumer Plaintiffs purchased the Products from 2020 onward. Plaintiff Muto purchased three 24-packs of Dasani water (manufactured by Coca-Cola). *Id.* ¶ 86. Plaintiff Salgado purchased a 24-pack of 16.9-ounce Niagara water bottles (manufactured by Niagara) and an 8-pack of 12-ounce Dasani water

bottles. *Id.* ¶ 87. Plaintiff Swartz purchased a bottle of Arrowhead water (manufactured by BTB). *Id.* ¶ 88. Each Plaintiff saw the "100% Recyclable" claim on the respective Products prior to purchase and believed the Products could, and would, be recycled in their entirety if they were properly disposed of in a recycling bin. *Id.* ¶¶ 86–88. However, the Products could not be fully recycled because, *inter alia*, their labels and caps are unrecyclable. *Id.* ¶ 29, 43.

The Consumer Plaintiffs allege the same causes of action against all Defendants based on their use of the "100% Recyclable" claim: (1) violation of the CLRA, (2) violation of the False Advertising Law ("FAL"), (3) fraud, deceit, and/or misrepresentation, (4) negligent misrepresentation, and (5) violation of the Unfair Competition Law ("UCL").

### C. Sierra Club Diverts Substantial Resources to Combat Defendants' False Claim.

Defendants' claim that their single-use bottles are "100% Recyclable" undermines Sierra Club's mission to "educate and enlist humanity to protect" the natural environment because the claim falsely implies that the use of plastic bottles is sustainable. *Id.* ¶¶ 21, 72. If the public is not properly educated and informed about the consequences of Defendants' actions—that plastic bottles are not "100% Recyclable" and that a large majority of the bottles end up in rivers, waterways and landfills—consumers cannot make environmentally responsible choices. *Id.* ¶ 72. Sierra Club's messages and educational efforts directly compete with Defendants'; a public exchange in which Sierra Club attacked Arrowhead's use of the "100% recyclable" claim and Arrowhead responded by doubling down on the claim—expressly stating the caps and labels were recyclable, and encouraging consumers to recycle the Products in their entirety—is evidence of this competition. *Id.* ¶¶ 80–81. In addition, the "100% recyclable" claim is intended to and does increase the manufacture, sale, and use of single-use plastic bottles, which is detrimental to the environment because the overwhelming majority of those bottles end up in landfills or are incinerated. *Id.* ¶ 72. This negatively impacts humans, animals, and ecosystems and is directly antagonistic to the Sierra Club's express mission to "protect the planet." *Id.*

Before this litigation began, the Sierra Club expended money, staff time, and diverted organizational resources in California in response to Defendants' efforts to frustrate Sierra Club's mission. *Id.* ¶¶ 72–85. During the past two years, the Sierra Club diverted dozens of volunteer and staff hours to support legislation in California to expressly prohibit the "100% Recyclable" claim and support the use of

reusable bottles. *Id*. Those efforts included lobbying, publishing articles, and circulating letters and other communications (including the public exchange with Arrowhead referenced above). *Id*. ¶¶ 70–71, 73–85. Responding to Defendants' misrepresentations has caused the Sierra Club to divert resources that could be used to pursue other projects to advance its mission (*id*. ¶ 84; Ip Decl. ¶ 18), including its Ready for 100, Beyond Coal, and Our Wild America campaigns (*see* https://www.sierraclub.org/more-ways-to-give (last visited May 13, 2022).

Sierra Club alleges that BTB and Coca-Cola's use of the "100% Recyclable" claim violates the UCL. Sierra Club seeks a declaration that BTB and Coca-Cola's conduct is unlawful and seeks to enjoin BTB and Coca-Cola from continuing their unlawful conduct.

## III.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "In determining whether sufficient facts are stated such that the claim is plausible, the court must presume all factual allegations are true and draw all reasonable inferences in favor of Plaintiff." *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1136 (N.D. Cal. 2012) (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987)). Any ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir.1973).

## IV.   <u>ARGUMENT</u>

### A.   **Plaintiffs Have Plausibly Alleged Deceptive Practices.**

"Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss"; it is only "in rare situations [that] a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). This is not one of those "rare circumstances."

Plaintiffs allege that reasonable consumers understand "100% Recyclable" to mean that (1) the entirety of the Product can, and will, be recycled if a consumer properly disposes of it in a recycling bin and (2) the Product is part of a circular plastics economy, in which it can be recycled again and again. CCAC ¶¶ 66, 86–88. However, neither is true: the entirety of the Product is not recyclable and the circular plastics economy is a fiction. *Id.* ¶ 4. Defendants' Products are made with unrecyclable PP bottle caps and BOPP plastic labels that cannot be recovered from the waste stream and are treated as waste. *Id.* ¶¶ 4, 29, 43. Additionally, at least 28% of the PET bottles and HDPE bottle caps sent to recycling centers are lost in processing or are contaminated and thus end up in landfills or are burned, and domestic recycling facilities have the capacity to process only approximately 22.5% of the PET and HDPE consumed in the United States. *Id.* ¶ 4. Defendants' statement that the Products are "100% Recyclable" fails to properly inform consumers about the true recyclability of the Products and intentionally misleads them. *Id.* ¶¶ 112–114, 125–128, 137, 144, 146.

Plaintiffs' deception claims are plausible. Plaintiffs saw "100% Recyclable" on the front of the Products and reasonably understood that the entirety of the Products were recyclable and that they could, and would, be recycled if they were properly disposed of in a recycling bin. *Id.* ¶¶ 66, 86–88. Not coincidently, this is what Defendants intend consumers to believe through the "Every Bottle Back" initiative. (*See supra* at 2.) Courts have routinely found similar allegations sufficient to plead an actionable misrepresentation and actionable omissions. *See, e.g.*, *Smith v. Keurig Green Mt., Inc.*, 393 F. Supp. 3d 837, 842 (N.D. Cal. 2019) (denying motion to dismiss where plaintiff alleged that defendant sold its single-use plastic PP coffee pods with "recyclable" claim when pods were too small to actually be separated from general waste stream); *Hanscom v. Reynolds Consumer Products Inc.*, 4:21-cv-03434 (N.D. Cal) ("*Hanscom*"), ECF No. 41 at 9 (denying motion to dismiss where plaintiff alleged that "Recycling" label claim on defendant's trash bags communicated to reasonable consumers that Products were suitable for municipal recycling and were themselves recyclable); *Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-LB, 2021 U.S. Dist. LEXIS 507, at *14 (N.D. Cal. Jan. 4, 2021) (finding that significant portion of reasonable consumers would interpret the claims "non-toxic" and "earth friendly" to mean that the products "do not pose any risk of harm to humans, animals, and/or the environment."); *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 345 F. Supp. 3d 1111, 1118 (N.D. Cal. 2018) (holding there was a genuine issue of material

fact as to whether the Dr. Pepper's "Made From Real Ginger" claim implied that the Product contained ginger root).

Defendants argue that Plaintiffs' allegations are implausible because they are based on generalized allegations about nationwide recycling practices. ECF No. 76 at 18; ECF No. 75 at 5. However, Plaintiffs make specific allegations regarding recycling practices in California. *See, e.g.*, CCAC ¶ 50 ("MRFs in California do not have the capacity to: (i) process the Products' PP bottle caps and BOPP labels into reusable material because it is not cost effective and there is no end market to do so; or (ii) convert all plastic bottle material processed into reusable material because 28% of the material is contaminated or lost during processing and must be landfilled or incinerated."). Plaintiffs' nationwide allegations regarding the capacity of MRFs to process PET bottles are also plausibly true in California. *Id.*

Defendants next argue that Plaintiffs are required to allege, that "for at least 60% of California consumers or communities in which Defendants' products are sold, there are no 'recycling facilities . . . available' to collect, separate, or otherwise recover from the waste stream the materials in Defendants' packaging." ECF No. 76 at 18. Plaintiffs do make these allegations. *See* CCAC ¶¶ 48 and 50 ("If recycling facilities are available to less than a substantial majority [defined as at least 60%] of consumers or communities where the item is sold, marketers should qualify all recyclable claims. . . . Defendants' marketing of the Products as "100% Recyclable" violates these provisions of the Green Guides because it is false that 100% of the Products can be collected, separated, or otherwise recovered from the waste stream, in a substantial majority of communities where the Products are sold."). In any event, courts have sustained similar allegations even where 60% of communities did accept the products for recycling but the Products were not actually capable of being recycled. *See Smith*, 393 F. Supp. 3d at 842 (denying motion to dismiss where the plaintiff alleged that the defendant sold its single-use plastic PP coffee pods with a "recyclable" claim and the products were collected for recycling in 60% of communities where product was sold, but the plaintiffs alleged they could not actually be recycled).

Next, Defendants contend that the nationwide reports cited in the complaint are insufficient to sustain Plaintiffs' claims as to California consumers. ECF No. 76 at 9. However, Plaintiffs cite numerous additional sources in their Complaint, and the question is whether Plaintiffs' allegations are plausible, not whether Plaintiffs have proven their claims.

In its separate brief, Defendant Niagara blatantly misstates Plaintiffs' Complaint. It is telling that none of its co-defendants joined these arguments. ECF No. 75 at 4 n.1.[1] Contrary to Niagara's contention, Plaintiffs do not concede that MRFs are capable of processing caps and labels; they allege the exact opposite. CCAC ¶ 43 ("PP and BOPP plastics, which are the material used to make the Products' bottle caps and film labels, respectively, are widely considered to be the least recyclable plastics. . . . 'the economics [of processing those bails] have proven insurmountable.'"); *id.* ("[T]he Products' BOPP labels . . . are completely unrecyclable because they are made of plastic film that is difficult to sort and process and is typically treated as trash."). Likewise, Plaintiffs' Complaint does say that a substantial percentage of PET water bottles and HDPE caps cannot be recycled in California. *Id.* ¶ 50 ("MRFs in California do not have the capacity to . . . convert all plastic bottle material processed into reusable material because 28% of the material is contaminated or lost during processing and must be landfilled or incinerated."). Nor do Plaintiffs ever concede that PP or HDPE caps are fully recyclable so long as they are affixed to the bottle. ECF No. 75 at 6.[2]

Although Defendants cite cases to support their argument that Plaintiffs' theory of deception is unreasonable, these cases are factually inapposite. *Becerra v. Dr. Pepper/Seven Up*, *Inc.*, 945 F.3d 1225 (9th Cir. 2019) involved the use of the word "Diet" on a soft drink. The plaintiff argued that the term "Diet" conveyed that the product would help with losing weight. *Id*. at 1230. At the time, diet drinks had been sold in the United States for decades, so "diet" was a term of art well-understood to mean a zero-calorie drink. *Id*. at 1227–29. The court held that "[i]n context, the use of 'diet' in a soft drink's brand name is understood as a relative claim about the calorie content of that soft drink compared to the same brand's 'regular' (full-calorie) option." *Id*. at 1229. Unlike in *Becerra*, there is no public understanding here that

---

[1] Further, as Defendant Niagara acknowledges, it was not given permission to file a separate supplemental brief.

[2] Niagara also points out that the Greenpeace report Plaintiffs cite in their Complaint states that "[i]t is reasonable for U.S. consumers to believe that PET bottles and jugs that are collected by municipal programs will be recycled/reprocessed into new products." ECF No. 75 at 9. However, the Greenpeace report concerned, *inter alia*, where it was acceptable to label a PET bottle as *"Recyclable."* Here, Defendants are not merely representing that their Products are "Recyclable," they are representing that the Products are "*100%* Recyclable" even though they are made of plastic components that cannot be recycled and must be discarded even when the Products are properly recycled. The Greenpeace report did not make an express finding on such claims that, as explained in Section IV.B *infra*, clearly violate the Green Guides.

"100% Recyclable" means that a product is not fully recyclable.

*Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th. Cir. 2021) concerned the sale of a product labeled "100% New Zealand Manuka Honey." The plaintiffs argued that Trader Joe's was misleading consumers into believing that its product was 100% derived from Manuka flower nectar when it was not. *Id.* at 882. The defendants countered that no honey is 100% derived from a single floral source and that federal guidelines allow a seller of honey to list the chief floral source of the honey. *Id.* at 881. They said the language "100%" was intended to convey that the product was 100% honey with a *chief* floral source that is Manuka. *Id.* More importantly, honey producers had created a scale to grade the purity of Manuka honey called the Unique Manuka Factor ("UMF") grading system, which grades honey on a scale of 5+ to 26+ based on the percentage of the product that is derived from Manuka nectar. *Id.* at 877. The court acknowledged that the 100% language was potentially misleading, but to the extent there was any ambiguity, among other things, Trader Joe's had prominently disclosed on the front of the label the honey's UMF rating of 10+, which communicated to consumers that the product was not 100% derived from Manuka nectar. *Id.* The *Moore* case supports Plaintiffs' allegations because (1), here, as explained *infra*, Defendants have not complied with legal guidelines for unqualified recycling claims, and (2) there is no front of the label disclosure on Defendants' Products that cure their misrepresentation.

In *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113 (9th Cir. 2012), the plaintiffs alleged that the words "Original" and "Classic" on the Drumstick Sundae Bar communicated that the product was more wholesome or nutritious than other ice creams. *Id.* at 115. But nothing in the language "Original" and "Classic" is connected to health or wholesomeness. Here, Plaintiffs' theory of deception is based on the reasonable meaning of "***100%*** Recyclable" and Defendants' alleged misrepresentations and omissions regarding the recyclability of the products.

In *Forouzesh v. Starbucks Corp.*, No. CV 16-3830 PA (AGRx), 2016 U.S. Dist. LEXIS 111701 (C.D. Cal. Aug. 19, 2016), the plaintiffs alleged that Starbucks deceived consumers when it represented the products contained a particular amount of liquid—e.g., the grande-sized drink contained 16 ounces of liquid. *Id.* at *2. The plaintiffs alleged that Starbucks failed to disclose that with ice, the customer received only 12 ounces of liquid and 4 ounces of ice. *Id.* at *7. However, consumers knew at the point of transaction that the drink contained ice because the drink was served in a clear plastic cup. *Id.* at *8. Further, reasonable

consumers know from their ordinary experience that ice diminishes the total amount of liquid in their drink and that iced drinks contain ice. *Id.* In other words, no reasonable consumer could be deceived because the alleged misconduct was obvious. That contrasts to the present facts because (1) consumers have no reason to doubt Defendants' statement that the Products are "100% Recyclable," and (2) Defendants' deception was not obvious at the point of sale.

*Nowrouzi v. Maker's Mark Distillery, Inc.*, No. 14cv2885 JAH(NLS), 2015 U.S. Dist. LEXIS 97752 (S.D. Cal. July 27, 2015) is also inapposite. There, the plaintiffs argued the defendant misrepresented its whiskey was handmade. However, the court determined that the use of the word "handmade" was a form of puffery because nearly every product requires some tools and equipment and reasonable consumers do not literally expect something advertised as handmade to be "literally made by hand." *Id.* *17 (quoting *Salters v. Beam Suntory, Inc.*, No. 4:14cv659-RH/CAS, 2015 U.S. Dist. LEXIS 62146, at *8 (N.D. Fla. May 1, 2015)). Here, Defendants' "100% Recyclable" claim is not mere puffery because the language has an objective meaning and, reasonable consumers expect a "100% Recyclable" product to be recyclable in its entirety.

Finally, in *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx), 2012 U.S. Dist. LEXIS 164461, at *9 (C.D. Cal. Oct. 25, 2012) the plaintiff alleged that product packaging featuring vegetables and the language "Made With Real Vegetables" suggested that the product was healthy and contained a significant amount of vegetables. However, in *Red*, the product did contain vegetables and plaintiffs conceded that the primary representation was literally true. Here, the claim "100% Recyclable" is not literally true because the entirety of the Product cannot be recycled.

**B.** **Defendants Have Not Complied with the Green Guides Or the EMCA's Definition of Recyclable and Cannot Seek Safe Harbor.**

Defendants argue that Plaintiffs are imposing a definition of recyclable that is inconsistent with the Green Guides and that they have complied with the safe harbor provision of the EMCA, Cal. Bus. & Prof. Code §§ 17580, *et seq*. ECF No. 76 at 17. This is incorrect for at least two reasons. First, contrary to Defendants' argument, the Green Guides expressly reject Defendants' definition of "recyclable"—i.e., that "Recyclable" means merely that a Product is theoretically "capable of being recycled." *See* ECF No. 76 at 20; 21 C.F.R. § 260.12(a). The Green Guides require that a recyclable product must be collectable "through

PLFS.' OPPOSITION TO DEFS.' CONSOLIDATED MOTION TO DISMISS; LEAD CASE NO. 3:21-CV-04643-JD

an established program *for reuse*." 21 C.F.R. § 260.12(a) (emphasis added). Additionally, the Green Guides require marketers to qualify claims to avoid deceiving consumers. *See, e.g.,* 21 C.F.R. §§ 260.12(c); 260.12 (Example 1) (explaining that a recyclable claim would be deceiving if it was printed on an unrecyclable portion of package and that a manufacturer should indicate what portions of the package to which the claim relates); *see also Id.* at § 260.3 (Example 1) (similar). Second, the claim must either "conform to the standards or [be] consistent with the examples contained in the [Green Guides]" for Defendants' safe harbor argument to apply. Cal. Bus. & Prof. Code § 17580.5(b). There is no standard or example in the Green Guides that permit a manufacturer to use the language "*100% Recyclable*" on a product when its product cannot be recycled in its entirety.

Defendants selectively quote the Green Guides stating that a product may properly be labeled as "recyclable" if "it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." ECF No. 76 at 17 (quoting 16 C.F.R. § 260.12(c)). They use this language to support their argument that the Green Guides endorse a definition of "Recyclable" that is based on theoretical recyclability and not actual recyclability. Setting aside for a moment the fact that Defendants' label says "100% Recyclable," not just "Recyclable," Defendants improperly fixate on only one part of the Green Guides' requirements for use of the term "Recyclable."

A full reading of the relevant guidelines indicates that three elements must be present for a marketer to use an unqualified recycling claim: (1) the product must "be collect[able], separ[able], or otherwise recover[able] from the waste stream through an established program for reuse," (2) recycling facilities must be "available to a substantial majority of consumers where the item is sold" (meaning 60%), and (3) the entire package must be "recyclable, excluding minor incidental components." 16 C.F.R. §§ 260.12(a)-(c). Finally, even if a product meets these standards, "[f]or items that are partially made of recyclable components, marketers should clearly and prominently qualify the recyclable claim to avoid deception about which portions are recyclable. *Id.* at § 260.12(c). Here, though the Products may be recoverable from the waste stream under ideal conditions, and PET recycling may be available to 60% of consumers where the Products are sold, Plaintiffs have alleged that the Products are only partially recyclable. Therefore, section 260.12(c) applies, requiring a clear disclosure regarding which portions of the Product are actually

recyclable. Defendants fail to properly disclaim that the entirety of the bottle, including the label and cap, cannot be recycled. Thus, they have violated the Green Guides.

The Green Guides provide an example that is directly on point in this situation:

> A packaged product is labeled with an unqualified claim, "recyclable." It is unclear from the type of product and other context whether the claim refers to the product or its package. The unqualified claim likely conveys that both the product and its packaging, except for minor, incidental components, can be recycled. Unless the manufacturer has substantiation for both messages, it should clearly and prominently qualify the claim to indicate which portions are recyclable.

*Id.* at § 260.12 (Example 1); *see also Id.* at § 260.3 (Example 1). Here, Defendants print a "100% Recyclable" claim directly on their unrecyclable plastic BOPP label that wraps around the bottle similarly to the plastic packaging in the example. Printing a recyclable claim on an unrecyclable portion of the Product (even if minor or incidental) can deceive and confuse consumers regarding what portion of the Product is recyclable.

In addition to the section governing recycling claims, the Green Guides' General Principles "emphasize that marketers should 'specify whether [a claim] refers to the product, the product's packaging, a service, or just to a portion of the product, package, or service.'" 16 C.F.R. § 260.3(b). Defendants have failed to do so.

Defendants argue that Plaintiffs concede that PET and HDPE plastic are recyclable. However, even if the Defendants had complied with the Green Guides as to the term "recyclable," which they have not, the term "100%" is not expressly governed by the Green Guides. The guidelines for the use of the term "recyclable" embrace a definition that is inherently less than 100% (e.g., a marketer can represent that a product is "recyclable" even if less than 100% of the product is recyclable—i.e. minor or incidental portions). But Defendants go further by adding "100%" to their label, which implies that the Products are not just "recyclable". In other words, Defendants are conveying to consumers that, as opposed to an ordinary recyclable product that may contain incidental portions that are unrecyclable or cannot be converted in its entirety to reusable material, Defendants' Products are truly *100%* recyclable and thus exceed the requirements of the Green Guides. Coca-Cola and the ABA's marketing show that Defendants intended this language to mean that the Products are part of a circular plastic economy, i.e., that the plastic bottles could be recycled over and over. CCAC ¶ 58 ("The stated purpose of this initiative is to support

what the members call the 'circular plastics economy,' which perpetuates the fiction that plastic bottles are '100% Recyclable' and are part of a sustainable, circular plastics economy"). However, that is false because: (1) not all components of the Products are recyclable; (2) the process for recycling is inherently imperfect and 30% is lost in production; and (3) domestic facilities lack the capacity to process all PET. Therefore, even if an ordinary unqualified standalone recyclable claim would be acceptable, the addition of the "100%" qualifier language defeats any safe harbor. Defendants do the exact opposite of what the Green Guides require by adding language that *increases* the likelihood that consumers will be deceived.

### C. Plaintiffs Have Alleged Their Claims Sounding In Fraud With Particularity.

To satisfy the particularity requirements of Rule 9(b), a Plaintiff must plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Plaintiffs Muto, Salgado, and Swartz allege that they viewed the "100% Recyclable" claim on the labels of Defendants' Products, reasonably interpreted the claim to mean that the Products could, and would be, recycled in their entirety if they were disposed of in a recycling bin, and made their purchases in reliance on Defendants' claim. *See* CCAC ¶¶ 86–88. Plaintiff Muto alleges that he purchased Dasani bottled water from Costco in La Quinta, CA on or around April 15, 2021 and asserts his claims against Coca-Cola. *Id.* ¶ 86. Plaintiff Salgado alleges that she purchased Niagara bottled water from Numero Uno Market in Los Angeles, CA on or around April 15, 2020 and Dasani bottled water from the Target near her home in Los Angeles, CA on or around April 20, 2021. *Id.* ¶ 87. Plaintiff Salgado asserts claims against Coca-Cola and Niagara. *Id.* Plaintiff Swartz alleges that he purchased Arrowhead bottled water from a gas station in Merced County in or around November 2020 and asserts his claims against BTB. *Id.* ¶ 88. Each Plaintiff also alleges that the Products "were not and could not be recycled in their entirety." *Id.* ¶¶ 86–88. Plaintiffs also allege which Defendant is responsible for manufacturing, marketing and selling each Product that they purchased. *Id.* ¶¶ 25–27 ("Coca-Cola manufactures, markets, and sells . . . Dasani;" "[BlueTriton] manufactures, markets, and sells Arrowhead, Poland Springs, Ozarka, and Deer Park;" and "Niagara manufactures, markets, and sells Niagara, Costco Kirkland, Save Mart Sunny Select, and Save Mart Market Essentials"). Courts have repeatedly found allegations such as these to be sufficient to meet the requirements of Rule 9(b). *See, e.g., Ham,* 70 F. Supp. 3d at 1192 (holding that plaintiff satisfied Rule 9(b) by pleading "(i) the

13

who: Hain; (ii) the what: 'All Natural' labeling on waffles containing SAPP, a synthetic ingredient; (iii) the when: purchases made between May 2012 and March 2014; (iv) the where: labels on the waffles, copies of which [were] attached to the complaint; (v) and the how: purchases made with reasonable reliance on the 'All Natural' statement"); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) (applying *Kearns* and holding "[t]he 'who' is Ben & Jerry's, Breyers, and Unilever. The 'what' is the statement that ice cream containing alkalized cocoa is 'all natural.' The 'when' is alleged as 'since at least 2006,' and 'throughout the class period.' The 'where' is on the ice cream package labels. The 'how the statements were misleading' is the allegation that defendants did not disclose that the alkalizing agent in the alkalized cocoa was potassium carbonate, which plaintiffs allege is a 'synthetic.'").

Defendants argue that Plaintiffs have not satisfied their obligations under Rule 9(b) because Plaintiffs "*barely* allege anything specific about Defendants' separate products and impermissibly lump Defendants products together." ECF No. 76 at 13 (emphasis added). Defendants have no basis for this position because Plaintiffs have alleged that all the Products are made from the same unrecyclable materials, contain the same misrepresentation, and allege which specific Defendant makes each Product. *See* CCAC ¶¶ 25–30. The only case Defendants cite to support their argument affirms the sufficiency of Plaintiffs' allegations and states that "[t]o comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Plaintiffs' allegations meet this standard.

Niagara, in its supplemental brief, takes issue with the fact that Plaintiffs "assert, variously that 'the plastic industry' (CC ¶ 54), 'the petrochemical industry' (CC ¶ 60), 'Coca-Cola and the American Beverage Association' (CC ¶ 58), and 'Defendants' have defrauded the public by promoting the 'myth' that plastic can be recycled" and that these assertions merely exist to smear Niagara and Defendants. ECF No. 75 at 7. However, these allegations are appropriate and relevant to the context of Plaintiffs' injuries, the materiality of Defendants' misrepresentations, and consumers' understanding of the meaning of Defendants' representations. Plaintiffs are not required to plead every allegation in their Complaint with specificity,

only "those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access," which they have done. *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995); *see also United States ex rel. Vatan v. QTC Med. Servs.*, 721 F. App'x 662, 663 (9th Cir. 2018) (same); *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989) (explaining that while grouping defendants together is disfavored, "the rule may be relaxed as to matters within the opposing party's knowledge").

### D. Defendants' Additional Claim-Specific Arguments Are Meritless.

#### 1. Plaintiffs Have Plausibly Alleged Fraud, Deceit, and/or Misrepresentation.

Defendants argue that Plaintiffs have not pled "'knowledge of falsity' (or scienter) or an 'intent to defraud'" to support their cause of action for fraud. ECF No. 76 at 24. This is plainly incorrect. Plaintiffs plead that Defendants knew their statements were false and intended to defraud consumers. *See* CCAC ¶ 126 ("Defendants knew that the "100% Recyclable" representation on the Products was false when they made it or they made the representation recklessly without regard for its truth."); *Id.* ¶ 131 ("Defendants intended to induce the Consumer Plaintiffs, and those similarly situated, to alter their position to their detriment."). Plaintiffs' allegations are not conclusory, as they explain in their CCAC that Defendants plausibly had knowledge regarding the falsity of their statements because they "engineered and manufactured the Products and reasonably should have investigated whether the Products were '100% Recyclable' before marketing them as such." *Id.* ¶ 126. Additionally, Defendants' intent to induce reliance is plausibly supported by the fact that Defendants made the statements on the front label of their Products where they knew consumers would read them. *See id.* ¶¶ 30–39. Finally, as explained *supra*, Plaintiffs' allegations sounding in fraud are pleaded with particularity as required by FRCP 9(b). Thus, Plaintiffs have plausibly alleged common law fraud.

#### 2. Plaintiffs Have Plausibly Alleged a UCL Violation.

##### a) Defendants' Misrepresentations Violate Cal. Pub. Res. Code §§ 42355 and 42355.5.

Defendants are mistaken about the date when Cal. Pub. Res. Code §§ 42355 and 42355.5 came into effect. Defendants argue that the statutes were passed after Plaintiffs' purchases. However, sections 42355 and 42355.5 came into effect on January 1, 2012. 2011 Cal. Stats. ch. 594 (SB 567). While section 42355.5 was amended in 2021 and the amended version of the statute came into effect on January 1, 2022, the prior

versions of both statutes were in effect at the time of Plaintiffs' purchases. 2021 Cal. Stats. ch. 507 § 4 (SB 343). Further, the 2021 amendment did not change the relevant text which states "that it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products." Cal. Pub. Res. Code § 42355.5. Defendants do not possess any such evidence. Therefore, they are in violation of the law.

Defendants then argue that Cal. Pub. Res. Code sections 42355–42355.5 are merely legislative findings and declarations and cannot be "violated." ECF No. 76 at 24. However, "[v]irtually any law or regulation—federal or state, statutory or common law—can serve as a predicate for a section 17200 'unlawful' violation." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326–27 (2012) (internal quotation marks and ellipsis omitted). Here, section 42355.5 mandates specific conduct so it is actionable under the UCL "unlawful" prong. And, at minimum, it codifies public policy that serves as the basis for Plaintiffs' UCL "unfairness" prong claims.

### b) Defendants' Misrepresentations Violate the EMCA.

Because Plaintiffs have plausibly alleged that reasonable consumers are misled by Defendants' "100% Recyclable" claim, they also have properly pled a violation of section 17580.5(a) of the EMCA, which prohibits "untruthful, deceptive, or misleading environmental marketing claims, whether explicit or implied." *See Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 U.S. Dist. LEXIS 173216, at *19 (N.D. Cal. Dec. 10, 2013) (applying reasonable consumer test to an alleged violation of Bus. & Prof. Code § 17580.5(a)). Plaintiffs have also plausibly alleged that Defendants do not possess "information and documentation supporting the validity" of the "100% Recyclable" claim as required by Bus. & Prof. Code § 17580(a), because it is impossible to recycle the Products' labels and caps as they are currently designed. And as explained in section IV.B *supra*, Defendants are ineligible for safe harbor under the EMCA because the Green Guides do not permit a manufacturer to make the claim "*100%* Recyclable" when the Product is not fully recyclable.

### c) Defendants' Misrepresentations Violate The Green Guides.

As explained in greater detail in section IV.B *supra*, Defendants have violated numerous provisions of the Green Guides. Defendants fail to "clearly and prominently qualify [their] recyclable claims to avoid

deception about which portions are recyclable." 16 C.F.R. § 260.12(c). Instead, they have added the term "100%" which falsely communicates to consumers that the entirety of the Product, including incidental components, is recyclable.

### d) Defendants' Misrepresentations Violate the CLRA and the FAL.

Defendants argue that where a "UCL claim is derivative of other claims in the [Complaint] that the Court dismisses . . . [the] derivative UCL claim must also be dismissed." ECF No. 76 at 16 (quoting *Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, 2018 WL 1805516, at *13 (N.D. Cal. Apr. 16, 2018). Defendants argue that they have not violated the CLRA and FAL and, therefore, Plaintiffs' UCL unlawful claims predicated under these statutes must be dismissed. However, in section IV.A *supra*, Plaintiffs explain that reasonable consumers are deceived by Defendants' "100% Recyclable" claim. This is sufficient to plead a violation of the CLRA and the FAL and therefore, dismissal of Plaintiffs' UCL claims is unwarranted. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (California statutes are governed by the "reasonable consumer" test).

### e) Defendants' Conduct Is Unfair.

There are three tests a court can use to evaluate whether a practice is "unfair." *See Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46, 53–54 (2010) (articulating the possible tests defining "unfair"). First, the "tethering test" asks whether the practice violates a public policy "tethered to specific constitutional, statutory, or regulatory provisions." *Id.* Second, the "balancing test" asks whether the alleged practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of Defendants' conduct against the gravity of the harm to the alleged victim. *Id.* Finally, the "FTC test" holds that a practice is unfair if (1) the consumer injury is substantial; (2) not outweighed by any countervailing benefits; and (3) consumers could not reasonably have avoided the injury. *Id.* Plaintiffs have adequately alleged an unfair practice under each of these tests.

Under the "tethering test," there must be a close "nexus between the challenged act and the legislative policy." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018); *see also Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548, 544 (1999) (holding that for an act to be "unfair," it must "threaten[]" a violation of law or "violate[] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law"). Here, there is a clear nexus between Defendants'

PLFS.' OPPOSITION TO DEFS.' CONSOLIDATED MOTION TO DISMISS; LEAD CASE NO. 3:21-CV-04643-JD

failure to possess evidence for its "100% Recyclable" claim and California's policy requiring that "environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence" because the stated purpose of the policy is to "prevent deceiving or misleading consumers about the environmental impact of plastic products." Cal. Pub. Res. Code § 42355.5. Here, Defendants do not have evidence to support their claim and they are deceiving consumers. The nexus between the public policy and Defendants' conduct could not be more direct. Additionally, Defendants' misrepresentations contravene local policies favoring recycling, because Defendants' misrepresentations create unrecyclable waste.

Plaintiffs also plausibly allege violation of the UCL's "unfair" prong pursuant to the balancing test and FTC test. Pursuant to the balancing test, (1) Defendants unethically and unscrupulously represent to consumers that the Products are 100% recyclable and are part of a sustainable loop, and (2) there is no utility in allowing Defendants to sell the bottles with an inaccurate recyclability claim. Pursuant to the FTC test, (1) the consumer injury in the aggregate is substantial, (2) there is no benefit to allowing Defendants to sell the Products with the "100% Recyclable" claim, and (3) consumers could not have avoided the injury because they have no way of knowing the truth about the Products. Further, under any test, whether a practice is unfair, "is one of fact which requires a review of the evidence" and "thus cannot usually be" determined on the pleadings. *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (2006); *see also Rovai v. Select Portfolio Servicing, LLC*, No. 14-cv-1738-BAS-WVG, 2018 U.S. Dist. LEXIS 107764, at *47 (S.D. Cal. June 27, 2018) ("The balancing test should not be a particularly difficult test to satisfy at the motion to dismiss stage").

**E.     The Consumer Plaintiffs Have Article III Standing To Pursue Their Claims.**

**1.     Injury-In-Fact.**

Plaintiffs have alleged a sufficient injury-in-fact, because each alleges that they paid more for the products, i.e., a price premium, as a result of the false and misleading "100% Recyclable" label. The injury occurred at the moment of purchase, and all consumers paid this premium regardless of whether they chose to recycle the Product. Courts have long recognized that this type of economic injury is sufficient to confer standing. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (holding that paying more for a product is a quintessential Article III economic injury); *Mazza v. Am. Honda Motor Co.,*

*Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) (stating that, in class action alleging UCL, FAL, and CLRA claims, "[t]o the extent that class members were relieved of their money by [Defendant's] deceptive conduct . . . they have suffered an 'injury in fact'") (citation omitted).

Defendants argue that Plaintiffs "do not allege that the bottles *they* purchased were not ultimately recycled" and that any supposition that the Products are not recyclable is merely conjectural. ECF No. 76 at 17, 27 (emphasis in original). This line of argument is misguided. Plaintiffs' injury is tied to the price premium, *not whether the products were recycled*. As the Ninth Circuit has plainly held, a price premium injury occurs at the point of sale and *any subsequent conduct is irrelevant*. *Pulaski,* 802 F.3d at 989 ("The calculation need not account for benefits received after purchase because the focus is on the value of the service at the time of purchase."). Plaintiffs have no burden to plead anything with respect to whether the Products they purchased were recycled. Regardless, each Plaintiff alleges that the Products they purchased were not recycled in their entirety. *See* CCAC ¶¶ 86–88 (Plaintiffs "did in fact dispose of the bottles in a recycling bin. However . . . the bottles were not and could not be recycled in their entirety."). Plaintiffs also allege unequivocally that, at minimum, Defendants' labels and caps are completely unrecyclable. *See*, *e.g.*, *Id.* ¶ 43 ("[T]he Products' BOPP labels . . . are completely unrecyclable because they are made of plastic film that is difficult to sort and process and is typically treated as trash"); *Id.* ¶ 44 ("[T]he Products' PP bottle caps and BOPP labels are not "100% Recyclable" because those materials are not processed into reusable material, and are instead, sent to incinerators or landfills.). This is not conjectural, but is true for all consumers in California. The Court must take Plaintiffs' well-pled factual allegations as true for making its ruling on a motion to dismiss. *Theranos, Inc*, 876 F. Supp. 2d at 1136.

Defendants' cited cases—all of which involve adulterated products—are inapposite. In *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014), the allegations concerned "100% kosher" hot dogs tainted with non-kosher meat. In that case, the plaintiff did not know or allege that the hot dogs she purchased contained non-kosher meat. *Id.* at 1031. Here, Plaintiffs have alleged that every single Product is not "100% Recyclable" because they all include components that are completely unrecyclable, including the caps and labels. Therefore, Plaintiffs can allege and have alleged with certainty that they purchased one of the non-conforming Products. Defendants' other authority is inapposite for the same reason. *See Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 U.S. Dist. LEXIS 194909 (N.D. Cal. Nov. 7, 2019)

(concerning sodas tainted with arsenic); *Phan v. Sargento Foods, Inc.*, No. 20-CV-09251-EMC, 2021 U.S. Dist. LEXIS 103629 (N.D. Cal. June 2, 2021) (concerning food products tainted with antibiotics); *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08-04741 WHA, 2009 U.S. Dist. LEXIS 38112 (N.D. Cal. Apr. 22, 2009) (concerning recalled pharmaceuticals of uncertain quality).

### 2. Injunctive Relief.

The Supreme Court has held that, to have standing to pursue an injunction, a plaintiff must allege only "a sufficient likelihood that [she] will again be wronged in a similar way," not that she will be wronged in the exact same manner that entitled her to sue for damages. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). And, as the Ninth Circuit has admonished, when determining if an injury is similar, courts "must be careful not to employ too narrow or technical an approach . . . [and] must reject the temptation to parse too finely." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499 (2005).

Plaintiffs allege a current, ongoing desire to purchase the Products if they were truly "100% Recyclable" because a fully recyclable single-use water bottle "would be convenient and friendlier to the environment than a water bottle that is not completely recyclable." CCAC ¶ 90. Because Defendants may reengineer their Products at any time, Plaintiffs have no way of knowing whether Defendants have cured their false claim or if it remains false. *Id.* Thus, (1) Plaintiffs will be unable to rely on Defendants' "100% Recyclable" representations when purchasing the Products in the future, (2) they will be unable to compare prices when shopping for similar Products, and (3) they may purchase the same Product again believing that Defendants have reengineered the Product. Courts have repeatedly recognized these types of injuries as sufficient to establish Article III standing for injunctive relief. *See*, *e.g.*, *Davidson*, 873 F.3d at 1116; *Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1007 (N.D. Cal. 2020) (applying *Davidson* and holding that Article III standing was present where the plaintiffs alleged that they "'will be unable to trust the representations on [the defendant's] Products" absent an injunction.'"); *Bush*, 2021 U.S. Dist. LEXIS 507, at *16 (same); *Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021 U.S. Dist. LEXIS 149153, at *31 (N.D. Cal. Aug. 9, 2021) (same); *cf. In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*, No. 20-15742, 2021 U.S. App. LEXIS 26239, at *4 (9th Cir. Aug. 31, 2021) (applying *Davidson* and finding no Article III standing where the plaintiffs did not allege a present intent to purchase the product at issue

or similar products or any likelihood of continuing to be misled by the label about the actual contents of the product, but merely alleged that [if the product] were properly labeled, they would *consider* purchasing it." (emphasis added)).

Defendants recognize that Plaintiffs' injuries are cognizable but argue that Plaintiffs' allegations are implausible. Specifically, Defendants argue that "Plaintiffs make clear their belief that now and in the foreseeable future no PET water bottle,—an [sic] certainly *no* PET water bottle with HDPE or PP cap and a PP label—is 100% recyclable." ECF No. 76 at 29. However, Defendants could reengineer the Products so that they are made of a different type of plastic. It is also plausible that recycling technology and availability will change. Plaintiffs do not allege anywhere in their Complaint that it is impossible to design a truly "100% Recyclable" bottle or that it is impossible for recycling technology to be improved or for the economics of plastic recycling to change in the future. It is possible that the situation could change, but Plaintiffs have no way of knowing that at the point of sale.

Defendants' argument that it is implausible that the Products could be reengineered to be truly "100% Recyclable," is identical to the argument rejected by the *Davidson* court. 889 F.3d 956 at 969. In *Davidson*, the plaintiff alleged that the defendants' "flushable" wipes were not flushable as advertised and that they were incompatible with municipal waste systems and sewers. *Davidson*, 873 F.3d at 1110. In *Davidson*, as here, the defendants argued that because the plaintiff alleged in her complaint that she had come to believe that that the wipes should not be flushed, she could never be deceived again, and that the possibility of reengineering the Product was merely conjectural. The district court adopted this same reasoning in its ruling. *See Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 969 (N.D. Cal. 2014). However, the Ninth Circuit overturned the district court's ruling, stating that the fact that the plaintiff wanted to purchase the product again and that she could not rely on the label's truthfulness was a sufficient informational injury to confer Article III standing. *See Davidson,* 873 F.3d at 1116 ("We hold that Davidson properly alleged that she faces a threat of imminent or actual harm by not being able to rely on Kimberly-Clark's labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief.").

Defendants' citation to *Hanscom v. Reynolds Consumer Prods. LLC*, No. 21-cv-03434-JSW, 2022 U.S. Dist. LEXIS 34057 (N.D. Cal. Jan. 21, 2022) is misplaced. The court's ruling was based on the plaintiff's failure to "allege[] any underlying belief in the utility of the [product], either generally or as it

pertains to her own recycling experience, that supports her alleged desire to purchase [the product] in the future." *Id.* at *13. The court contrasted the case to *Davidson* where the plaintiff "alleged a continued desire to purchase flushable wipes based on her belief that it would be easier and more sanitary to flush wipes than to dispose of them in the garbage." *Id.* at *12. Here, like in *Davidson,* Plaintiffs allege facts that support their desire to purchase "100% Recyclable" bottled water in the future. Specifically, that it is "convenient and friendlier to the environment than a water bottle that is not completely recyclable." CCAC ¶ 90. For these reasons, Plaintiffs' allegations that they continue to desire the Products are plausible and Plaintiffs have standing for injunctive relief.

Finally, the *Davidson* court explained that its ruling was intended to prevent a situation where a party would have a right to injunctive relief in state court but would not have standing to sue in federal court. 873 F.3d at 1115–16 ("Were injunctive relief unavailable to a consumer who learns after purchasing a product that the product's label is false, California's consumer protection laws would be effectively gutted, as defendants could remove any such case."). If this Court adopts Defendants' argument, it would be creating the exact outcome that the *Davidson* court expressly sought to avoid.

### F.      Plaintiff Sierra Club Has Standing To Pursue Its Claims.

#### 1.      Sierra Club Has Suffered An Injury-in-Fact.

Standing under Article III requires (1) an injury, (2) that is traceable to Defendants' conduct and (3) that is redressable. *See, e.g., Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An organization, such as Sierra Club, suffers an injury-in-fact if the conduct at issue resulted in: (1) frustration of its organizational mission; and (2) diversion of its resources to combat that frustration. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding an organization sufficiently pled standing by broadly alleging that "its efforts to assist equal access to housing through counseling and other referral services" were "frustrated by defendants' racial steering practices," and that it "had to devote significant resources to identify and counteract the [practices]"); *Smith v. Pac. Props. and Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). "Article III requirements for an injury-in-fact do not contain a 'minimum' cost or harm threshold. Regardless of how small the harm is, it is actual and it is real." *Abante Rooter & Plumbing v. Pivotal Payments, Inc.*, No.

16-cv-05486-JCS, 2017 U.S. Dist. LEXIS 26457, at *21 (N.D. Cal. Feb. 24, 2017) (quoting *LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1146 (D.N.M. 2016)).

Sierra Club meets these requirements.

### a) Defendants' Labels Have Frustrated Sierra Club's Mission.

Defendants promote single-use plastic and mislead consumers into believing that purchase of Defendants' Products is an environmentally responsible choice. Those practices are directly contrary to Sierra Club's missions: (1) "to practice and promote the responsible use of the earth's ecosystems and resources;" and (2) "to educate and enlist humanity to protect and restore the quality of the natural and human environment." CCAC ¶ 10; Cullum Decl. ¶¶ 3, 8. In particular, Sierra Club educates consumers about the harm of single-use plastics and the need for reusable water bottles. CCAC ¶¶ 10, 69, 71. While Sierra Club seeks to *increase* awareness of the problems single-use plastics present and educate consumers as to how to *mitigate* those problems, Defendants seek to *decrease* consumer awareness of the problems their products cause and to misinform and confuse consumers in ways that *exacerbate* those problems. Cullum Decl. ¶ 8; CCAC ¶ 58. Indeed, Defendants have specifically countered Sierra Club's education efforts by reinforcing their false claims that water bottles are "100% Recyclable" in direct response to Sierra Club educational messages. CCAC ¶¶ 80–81.

Where an organization is engaged in efforts to educate people about a problem and how they can mitigate it, and a defendant engages in advertising that undermines or counters those efforts, the organization's mission is frustrated. *See Fair Hous. Council v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (holding that discriminatory advertising frustrated the plaintiff's mission to educate the public about fair housing laws and to combat discriminatory practices); *see also Havens*, 455 U.S. at 379. For purposes of Article III standing, the situation here is almost identical to that in *Roommate.com*. In both cases, the organizations sought to provide guidance to individuals about their options to avoid contributing to or falling prey to a damaging social problem (discriminatory housing practices, on the one hand, and the unsustainable level of single-use plastics, on the other), while the defendants' marketing misled people about their options and increased the incidence of the problems at issue.

A defendant can also frustrate an organization's mission by engaging in conduct that effectively discourages people from seeking the organization's services or from obtaining or following the

organization's advice. For example, the Ninth Circuit recently found that a rule stripping asylum eligibility from certain migrants perceptibly impaired the organizational plaintiffs' ability to assist migrants seeking asylum because the rule discouraged migrants from seeking asylum and diminished the plaintiffs' client base. *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663-64 (9th Cir. 2021). Here, Defendants' "100% recyclable" label creates a false sense of responsibility among consumers who use single-use plastics thinking they are avoiding most of the harms actually caused by such products; this complacency reduces the number of people motivated to seek Sierra Club's educational services and to heed Sierra Club's calls to action. CCAC ¶ 2, 72.

> **b)** **Sierra Club Has Diverted Resources to Respond to the Frustration of Its Mission.**

Diversion of resources occurs if an organization "expended additional resources that they would not otherwise have expended, and in ways that they would not have expended them." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015). A diversion of resources can take a number of forms, including: "creating educational and outreach initiatives, expending resources to address the alleged violation that would have otherwise gone toward some other aspect of the organization's purpose, and monitoring the alleged violations and educating the public about them." *See Sw. Fair Hous. Council v. WG Scottsdale LLC*, No. CV-19-00180-TUC-RM, 2021 U.S. Dist. LEXIS 43115, at *13 (D. Ariz. Mar. 8, 2021). Courts have found standing, for example, when an organization designed and spread literature to redress the effects of the challenged discrimination (*Fair Hous. of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002)) and when an organization "started new education and outreach campaigns" targeting the defendant's discriminatory practices (*Roommate.com*, 666 F.3d at 1219).

Here, Defendants' practices caused Sierra Club to devote additional resources to educate consumers about Defendants' false recyclability claims. For example, Sierra Club published an online article and posted on social media specifically to educate consumers regarding Defendants' false recyclability claims. *See* CCAC ¶¶ 80, 82–83 (referencing Simone Kufhal, *Truth in Recycling*, Sierra Club Angeles Chapter Website (June 7, 2021)). Additionally, Sierra Club's National Zero-Waste Team strategized at its monthly meetings how best to combat the harmful effects of Defendants' misrepresentations. Ip Decl. ¶ 12. These actions were not "business as usual" for Sierra Club, as Sierra Club would not have, and could not have,

analyzed and specifically responded to Defendants' misleading label claims if Defendants had not made those claims in the first place. Instead, Sierra Club would have used those resources to further educate consumers about environmental issues, to make additional progress in combatting plastic pollution, and to advance its other major initiatives, rather than using those resources merely to fight back against the misperceptions and confusion caused by Defendants' labels. CCAC ¶ 84; Ip Decl. ¶ 18.

Defendants' practices have also caused Sierra Club to devote additional resources to support legislation in California to combat Defendants' false recyclability claims. CCAC ¶¶ 74–79; Cullum Decl. ¶¶ 9–17. For example, SB 343 directly combats Defendants' "100% Recyclable" claim because it places greater restrictions on the types and forms of plastic products and packaging for which a claim of recyclability can be made unless it is truly recyclable. CCAC ¶¶ 74–75; Cullum Decl. ¶¶ 10–11. Such legislation has become more urgent and a significantly higher priority as a result of Defendants' practices. CCAC ¶¶ 76, 79. Because Defendants are the top plastic polluters in the world (*id.* ¶¶ 59, 67), their false representations pose substantial dangers of increasing the production, use, and unsustainable disposal of harmful plastics at a time when serious efforts and changes are needed to avoid catastrophic levels of plastic pollution. Recognizing these dangers and the urgency of countering them, Sierra Club diverted volunteers and internal resources to support legislation that directly addresses Defendants' misleading use of "100% recyclable," including by reviewing and joining coalition letters, lobbying, drafting and circulating articles, and communicating with both Sierra Club members and the public. Cullum Decl. ¶¶ 12, 15; CCAC ¶¶ 79–85. These efforts would either not be necessary or would be a significantly lower priority but for Defendants' efforts to mislead consumers to believe that Defendants' Products are truly "100% recyclable." Accordingly, these particular lobbying efforts were not generalized environmental advocacy or "business as usual" for Sierra Club, but were specifically tied to combating Defendants' misleading labels.

Defendants argue that the activities described above are the types of activities in which Sierra Club often engages. But any activity, if characterized with enough generality, could be deemed "business as usual" for an organization. The relevant question is whether the activity and the resources devoted to it were a specific response to the defendant's conduct, as is the case here. *Cf. Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 943 (9th Cir. 2021) (examining whether the advocacy activities at

issue were "a continuation of existing advocacy, or whether they were an affirmative diversion of resources to combat [the defendant's] representations").

### 2. Sierra Possesses Article III Standing To Pursue Injunctive Relief.

Sierra Club has standing to pursue an injunction so long as there is "a sufficient likelihood that [it] will again be wronged in a similar way." *City of Los Angeles*, 461 U.S. at 111. Here, Defendants' labels continue to undermine Sierra Club's mission and, unless enjoined, will continue to cause Sierra Club to divert its resources from actually making progress on its mission to merely fighting Defendants' false statements. CCAC ¶¶ 80–85; Cullum Decl. ¶¶ 9, 17; Ip Decl. ¶¶ 9–17.

Defendants argue that Sierra Club will not be able to show irreparable harm. However, it is not required to do so now. At the pleading stage, it is sufficient that a plaintiff plead that it is injured by the defendants' conduct and that it continues to suffer harm. *Grace v. Apple Inc.*, No. 17-CV-00551, 2017 U.S. Dist. LEXIS 119109, at *49 (N.D. Cal. July 28, 2017) ("Although Plaintiffs may ultimately not be entitled to injunctive relief, at this stage of the proceedings, Plaintiffs have alleged that they continue to suffer an injury and that a solution is not presently available.").

Defendants also argue that the requested injunction would not redress Sierra Club's injury and that, even if an injunction was granted, "Sierra Club would continue to expend resources to combat single-use plastics." ECF No. 77 at 10. To the contrary, an injunction would remove a major impediment to Sierra Club's efforts to educate consumers and stop the diversion of its resources needed to combat Defendants' false claims. Defendants' misrepresentations are thwarting Sierra Club's efforts because "Defendants intend for consumers to believe, and reasonable consumers do believe, that because the Products are part of a circular plastics economy all bottles are recycled into new bottles to be used again." CCAC ¶ 66. Thus, because of Defendants' false representations, consumers do not understand they are purchasing a single-use plastic, do not seek out the education of Sierra Club, and are less inclined to heed Sierra Club's messages. If the injunction were granted, Sierra Club would be able to focus on making progress on its educational mission and Sierra Club's efforts would have more an impact.

### 3. Sierra Club Possesses Statutory Standing For Its UCL And FAL Claims.

A plaintiff asserting a UCL claim must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the

result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322–23 (2011) (emphasis in original). The quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury-in-fact, which can be a trifling injury. *Id.* "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.*

### a)      Sierra Club Has Lost Money and Property and Suffered Injury-in-Fact.

"Organizational plaintiffs have standing under the UCL where they divert resources as a result of a defendant's alleged unlawful business practices." *Animal Legal Def. Fund v. Great Bull Run, LLC*, No. 14-cv-01171-MEJ, 2014 U.S. Dist. LEXIS 78367, at *17–19 (N.D. Cal. June 6, 2014); *see S. Cal. Hous. Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1069 (C.D. Cal. 2005) (concluding an organizational plaintiff had standing "based on loss of financial resources in investigating this claim and diversion of staff time from other cases to investigate the allegations here"); *Animal Legal Def. Fund v. HVFG LLC*, 2013 U.S. Dist. LEXIS 89169, 2013 WL 3242244, at *3 (N.D. Cal. June 25, 2013) ("a public advocacy firm such as ALDF can have standing under [the UCL] to challenge a business practice inimical to its purpose and against which the firm expends its resources, thus reducing the money and property it would otherwise have for other projects"); *see also Kwikset*, 51 Cal. 4th 310, 323 ("There are innumerable ways in which economic injury from unfair competition may be shown."). As explained above, Sierra Club has diverted resources to combat Defendants' false claims and has therefore suffered an injury-in-fact.

### b)      UCL Enforcement is not Limited to Those Who Can Show Reliance.

The purpose of the UCL "is to protect both consumers *and competitors* by promoting fair competition in commercial markets for goods and services," *Kwikset*, 51 Cal. 4th at 320 (emphasis added). The UCL originated in a 1933 amendment to California Civil Code section 3369, authorizing courts to enjoin acts of unfair competition. *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 129-30 (2000). The original focus of the law was harm to businesses and organizations. *See id.* ("Notwithstanding the broadly worded definition of unfair competition, the law was not relied on as the basis of general consumer protection actions until the late 1950's."). And before it was well recognized that the law protected consumers, it was first recognized that organizations other than business competitors could sue under the

law. *See, e.g., Athens Lodge No. 70 v. Wilson*, 117 Cal. App. 2d 322, 325 (1953) (holding that a fraternal association could sue to enjoin the use of their name). In 1972, the California Supreme Court clarified that the law was not limited to the protection of businesses for competitive injuries but also extended to protect consumers. *See Barquis v. Merchs. Collection Ass'n*, 7 Cal. 3d 94, 109 (1972). Defendants now suggest the pendulum has swung and that the UCL protects *only* consumers and *not* competitors or other organizations. Defendants argue, in particular, that Sierra Club lacks standing under the UCL because it cannot show that it relied on Defendants' "100% recyclable" claim. But if, as Defendants suggest, every UCL plaintiff had to prove reliance, "it would be hard to imagine when a competitor would be able to assert a false advertising claim." *SPS Techs., LLC v. Briles Aero., Inc.*, No. CV 18-9536-MWF (ASx), 2019 U.S. Dist. LEXIS 219610, at *22 (C.D. Cal. Oct. 30, 2019).

Multiple courts have carefully considered the argument Defendants make here and concluded that the reliance required in *Kwikset* for an individual purchaser does not apply to claims by organizations harmed by a defendant's UCL violations. Rather, "[a] non-consumer plaintiff can allege false advertising claims under the UCL and FAL without alleging its own reliance, as long as the plaintiff has alleged a sufficient causal connection." *Lona's Lil Eats, LLC v. Doordash, Inc.*, No. 20-cv-06703-TSH, 2021 U.S. Dist. LEXIS 8930, at *37–38 (N.D. Cal. Jan. 18, 2021) (distinguishing *Kwikset* and holding a restaurant had standing to sue a delivery company for misrepresentations about the plaintiff's business and other unfair acts); *Allergan United States v. Imprimis Pharm., Inc.*, No. SA CV 17-1551-DOC (JDEx), 2017 U.S. Dist. LEXIS 223117, at *38–39 (C.D. Cal. Nov. 14, 2017) (declining to extend *Kwikset* to claims between competitors); *Scilex Pharm. v. Sanofi-Aventis United States LLC*, No. 21-cv-01280-JST, 2021 U.S. Dist. LEXIS 149390, at *18–20 (N.D. Cal. Aug. 5, 2021) (finding *Lona's* and *Allergan* persuasive and concluding that the court's prior application of *Kwikset* was incorrect). Here, Sierra Club has alleged that Defendants have frustrated Sierra Club's mission and, by trying to persuade consumers that the Products are "100% Recyclable" and part of an environmentally sustainable lifestyle, Defendants have entered the space in which Sierra Club works and are competing (deceptively, unfairly, and unlawfully) with Sierra Club's messaging about plastics and sustainable options. In short, the parties are competitors with respect to the claim at issue.

Defendants cite a single case that applied the reliance requirement to an organization's claims: *Greenpeace, Inc. v. Walmart Inc.*, No. 21-cv-00754-MMC, 2021 U.S. Dist. LEXIS 178959 (N.D. Cal. Sep. 20, 2021). In *Greenpeace*, the court dismissed claims by an organization that alleged the defendant violated the UCL by labeling plastic products as "recyclable" because the plaintiff organization did not itself rely on the "recyclable" representation. *Id.* at *6. The court mechanically applied *Kwikset* without accounting for the differences in context between a claim by an individual purchaser and a claim by an organization. *Id.* at *3–5. Nor did it consider whether Greenpeace and the defendants were in essence "competitors" in the area of environmental sustainability messaging. Because *Greenpeace* is inconsistent with and does not even engage with any of the reasoning, legislative history, or cases set forth above, it should not be followed.

### G.   The Court Has Already Made A Decision Regarding Joinder of Defendants' Claims.

As Defendants acknowledge, the Court already ruled on the suitability of the cases for consolidation. ECF No. 76 at 20. It is procedurally inappropriate for them to raise this issue again in their motion to dismiss. In any event, their argument rests on an incorrect reading of the Federal Rules of Civil Procedure and, as the Supreme Court has noted, the "impulse" of the Rules "is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

### H.   The Court Granted Plaintiffs Broad Leave To File A Consolidated Complaint.

Niagara, in its supplemental brief, argues that Plaintiffs improperly amended their Complaint to "expand the putative class from a California class to a national class with respect to Niagara." ECF No. 75 at 7. Niagara concedes that the Court granted Plaintiffs leave to amend their Complaint. The order stated that "Plaintiffs may file a consolidated complaint by March 24, 2022." ECF No. 68 at 1. There is no indication in the order that the Court intended to limit the scope of amendment. If a court's order does not expressly limit leave to amend, the right is interpreted broadly. *See Gilmore v. Union Pac. R. Co.*, No. 09-CV-02180-JAM-DAD, 2010 U.S. Dist. LEXIS 50470, 2010 WL 2089346, at *4 (E.D. Cal. May 21, 2010) (finding that plaintiff was not required to seek leave to amend when: plaintiff asserted new claims, defendants did not demonstrate prejudice by the addition of the claim, and the court did not limit leave to amend to only the existing claims); *see also Topadzhikyan v. Glendale Police Dep't*, No. CIV 10-387 CAS (SSX), 2010 U.S. Dist. LEXIS 78717, 2010 WL 2740163, at *3 n. 1 (C.D. Cal. July 8, 2010) (declining to

strike new claims where court granted leave to amend without limitation); *but cf. Andrew W. v. Menlo Park City Sch. Dist.*, No. C-10-0292 MMC, 2010 U.S. Dist. LEXIS 76827, 2010 WL 3001216, at *2 (N.D. Cal. July 29, 2010) (finding that a court's prior order did not give express leave to add new claims or defendants, but rather granted leave to amend deficiencies in specified claims). Here, Niagara will not be prejudiced by the amended class allegations because this action is at an early stage, Niagara has not answered, and Niagara will not be forced to reproduce any work.

**V.      CONCLUSION**

For the reasons set forth above, the Court should deny Defendants' motion to dismiss in full.

Dated: May 13, 2022                    **GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier /s/*
Seth A. Safier, Esq.
Marie McCrary, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

Attorneys for Plaintiffs