| | |
|---|---|
| 1 | DAWN SESTITO (S.B. #214011) |
| | dsestito@omm.com |
| 2 | COLLINS KILGORE (S.B. #295084) |
| | ckilgore@omm.com |
| 3 | O'MELVENY & MYERS LLP |
| | 400 South Hope Street, 18th Floor |
| 4 | Los Angeles, California 90071-2899 |
| | Telephone: +1 213 430 6000 |
| 5 | Facsimile: +1 213 430 6407 |

HANNAH Y. CHANOINE (*pro hac vice*)
hchanoine@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: +1 212 326 2128
Facsimile: +1 212 326 2061

*Attorneys for Defendant BlueTriton Brands, Inc.*
(additional counsel on signature page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DAVID SWARTZ, CRISTINA SALGADO, and MARCELO MUTO, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE COCA-COLA COMPANY, BLUETRITON BRANDS, INC., and NIAGARA BOTTLING, LLC,<br><br>Defendants. | Case No. 3:21-cv-04643-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF CONSOLIDATED MOTION TO DISMISS**<br><br>Date: June 30, 2022<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato<br>Courtroom: 11, 19th Floor |
| SIERRA CLUB,<br>Plaintiff,<br>v.<br><br>THE COCA-COLA COMPANY and BLUETRITON BRANDS, INC.,<br><br>Defendants. | |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ............................................................................................................ 2

    A. Plaintiffs' Opposition Does Not Salvage Their Deceptive Practices Allegations. ................................................................................................. 2

        1. Plaintiffs Do Not Meaningfully Contest the Legal Definition of "Recyclable." ........................................................................................ 2

        2. Plaintiffs' Definition of "100% Recyclable" Fails the Reasonable Consumer Test. ................................................................................... 3

        3. Allegations About Third-Party Website Claims Do Not Support Plaintiffs' Interpretation of "100% Recyclable." ................................ 5

        4. Plaintiffs Do Not Plausibly Allege that the Components of Defendants' Packaging Cannot Be Recycled by 60% of Californians Who Buy Them. .................................................................................. 6

    B. The Consumer Plaintiffs Lack Standing Because They Fail To Allege an Injury-in-Fact. ........................................................................................... 7

    C. The Consumer Plaintiffs Lack Standing To Pursue Injunctive Relief. ..... 8

    D. Plaintiffs' Other Claims Fail for Additional Reasons. .............................. 8

        1. Conclusory Allegations Cannot Sustain Plaintiffs' Fraud Claim. ...... 8

        2. Plaintiffs' UCL Claims Fail To Plausibly Allege Any Underlying Violation. ............................................................................................ 9

    E. Sierra Club's Use of Its Resources in Furtherance of Its Organizational Mission Does Not Provide Standing. ........................................................ 9

III. CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aranda v. CitiMortgage Inc.*,
   2013 WL 12182677 (C.D. Cal. May 13, 2013) .................................................................... 9

*Becerra v. Dr Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ............................................................................................. 4

*Bush v. Rust-Oleum Corp.*,
   2021 WL 24842 (N.D. Cal. Jan. 4, 2021) ........................................................................... 3

*Clapper v. Amnesty Int'l, USA*,
   568 U.S. 398 (2013) .......................................................................................................... 10

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ............................................................................................. 8

*Elbaz v. Vitals Int'l Grp.*,
   2018 WL 5868739 (C.D. Cal. Apr. 10, 2018) .................................................................... 4

*Fair Housing Council v. Roommate.com*,
   666 F.3d 1216 (9th Cir. 2012) ............................................................................................ 9

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*,
   345 F. Supp. 3d 1111 (N.D. Cal. 2018) .............................................................................. 3

*Friends of the Earth v. Sanderson Farms, Inc.*,
   992 F.3d 939 (9th Cir. 2021) ............................................................................................. 10

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) .............................................................................. 7

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ........................................................................ 7

*Jimenez v. Tsai*,
   2017 WL 2423186 (N.D. Cal. June 5, 2017) .................................................................... 10

*Klein v. Chevron U.S.A., Inc.*,
   137 Cal. Rptr. 3d 293 (2012) .............................................................................................. 9

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ........................................................................................................ 5

# TABLE OF AUTHORITIES

**Page(s)**

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir 2012) ............................................................................................. 7

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ................................................................................................ 4

*Moreno v. Vi-Jon, LLC*,
2021 WL 5771229 (S.D. Cal. Dec. 6, 2021) ..................................................................... 4

*Prescott v. Nestle USA, Inc.*,
2022 WL 1062050 (N.D. Cal. Apr. 8, 2022) ..................................................................... 4

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ............................................................................................. 7

*Smith v. Keurig Green Mountain, Inc.*,
393 F. Supp. 3d 837 (N.D. Cal. 2019) ........................................................................... 2, 3

*Smith v. Pac. Props. & Dev. Corp.*,
358 F.3d 1097 (9th Cir. 2004) ........................................................................................... 9

*Thomas v. Costco Wholesale Corp.*,
2022 WL 636637 (9th Cir. Mar. 4, 2022) .......................................................................... 4

*Wallace v. ConAgra Foods, Inc.*,
747 F.3d 1025 (8th Cir. 2014) ........................................................................................... 7

**Statutes**

Cal. Pub. Res. Code § 42355 ................................................................................................... 9

Cal. Pub. Res. Code § 42355.5 ................................................................................................ 9

**Regulations**

16 C.F.R. § 260.12(a) .............................................................................................................. 2

16 C.F.R. § 260.12(c) .............................................................................................................. 5

## I. INTRODUCTION[1]

Rather than use their Opposition to clarify their strained definition of "recyclable," Plaintiffs stretch that definition even further. Defendants' Motion to Dismiss explains that the plain meaning of "recyclable" is that an item is *able* to be recycled. This definition is consistent with the Green Guides and the EMCA and is in lock-step with the common-sense understanding and dictionary definition of the term. Plaintiffs concede that the Green Guides govern the definition of "recyclable," and that "PET recycling may be available to 60% of consumers" where Defendants' products are sold. Opp'n at 19–20.[2] In short, Plaintiffs admit that Defendants' products satisfy the Green Guides' requirements. That should put an end to Plaintiffs' claims. But Plaintiffs now theorize that adding "100%" before the term "recyclable" transforms that word into a promise that 100% of the packaging not only *will* be recycled if placed in a recycling bin but that it "can be recycled *again and again*" as part of a "circular plastics economy." *Id.* at 14. This is such a fanciful interpretation of "100% Recyclable"—especially given the uncontested meaning of "recyclable" standing alone—that the Court should dismiss it on the pleadings, as courts routinely do with unreasonable interpretations of labeling or marketing claims.

Plaintiffs also argue that statements on the American Beverage Association ("ABA") and Every Bottle Back ("EBB") websites lend credence to their wild interpretation by stating that plastics can be recycled and remade into new bottles. But Plaintiffs do not allege that all Defendants participated in, let alone directed, the EBB initiative, undermining the sufficiency of their allegations under Rules 8 and 9(b). *See* CAC ¶ 58. Nor do the named plaintiffs even allege they read or relied on any these statements. *Id* ¶¶ 58–64, 86–88.

Plaintiffs fail to plausibly allege that "100% Recyclable" is inaccurate. They do not allege that *Californians* lack access to recycling programs that accept Defendants' packaging. Instead, they use inapt, nationwide statistics indicating that plastic products *in general* often are not recycled and suggest that these statistics hold true in California. But these allegations fail to establish that

---

[1] Unless otherwise stated, all emphasis is added and citations and internal quotation marks are omitted. Additionally, all defined terms in the opening brief shall have the same definitions here.
[2] All citations to briefs are to CM/ECF page numbers.

any of Defendants' products cannot be recycled through programs available to 60% of California customers or communities, which is the relevant standard. Further, the Green Guides permit unqualified recycling claims, such as "100% Recyclable," even when "minor incidental components," like bottle caps and labels, are not recyclable.

Plaintiffs' definition of "100% Recyclable" is unreasonable, and Plaintiffs allege no facts suggesting that Californians cannot recycle Defendants' packaging. Plaintiffs' claims are not plausible, and the Court should dismiss them with prejudice.

II. ARGUMENT[3]

### A. Plaintiffs' Opposition Does Not Salvage Their Deceptive Practices Allegations.

#### 1. Plaintiffs Do Not Meaningfully Contest the Legal Definition of "Recyclable."

The Green Guides and EMCA, which Plaintiffs concede control when interpreting the meaning of "recyclable," *see* Opp'n at 18–21, unequivocally define "recyclable" as *able* to be recycled. Plaintiffs' selective quotations from the Green Guides do not change that a "recyclable" product is one that "*can be* collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." 16 C.F.R. § 260.12(a). That these programs are capable of recycling the plastic materials they collect does not, as Plaintiffs suggest, require that they will always recover every gram of plastic or even every bottle. This interpretation is not only obvious from a plain reading of the guidance—"*can be* collected"—but is also supported by the only authorities Plaintiffs cite in their Opposition that discuss reasonable interpretations of "recyclable" claims: *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837 (N.D. Cal. 2019), and *Hanscom v. Reynolds Consumer Products, Inc.*, No. 4:21-cv-03434 (N.D. Cal. 2021), Dkt. No. 41. Both decisions relied on the Green Guides' definition of "recyclable." *Smith*, 393 F. Supp. 3d at 845–46; *Hanscom*, No. 4:21-cv-03434, Dkt. No. 41 at 12–13. The claims in each survived only because the plaintiffs plausibly

---

[3] Defendants respectfully stand on all arguments included in their Motion, including those arguments not explicitly mentioned in this Reply.

alleged that the products *could not* be recycled—something Plaintiffs here have never alleged. *Smith*, 393 F. Supp. 3d at 842, 845–46 (even if the cups were comprised of recyclable types of plastic, they were allegedly of a shape and size that made them impossible to recycle);[4] *Hanscom*, No. 4:21-cv-03434, Dkt. No. 41 at 6–9 (defendant effectively conceded that its bags were not recyclable, arguing instead that calling them recycl*ing* bags did not promise recyclability).[5]

Contrary to Plaintiffs' mischaracterization, Defendants do not suggest that the Green Guides require only *theoretical* recyclability. Opp'n at 18. Instead, Defendants take the Green Guides to mean exactly what they say: that products are "recyclable" if consumers have access to local programs capable of processing them—not, as Plaintiffs suggest, if those programs will invariably process all of the materials they collect.

### 2. Plaintiffs' Definition of "100% Recyclable" Fails the Reasonable Consumer Test.

Plaintiffs argue that adding "100%" to "recyclable" somehow converts the meaning of that term from "*able* to be" recycled to *will be* recycled "*over and over*" as part of a "circular plastics economy." *Id.* at 20–21. This idiosyncratic understanding of "100% Recyclable," which finds no support in the Green Guides or any other authority, is not sufficient to plausibly allege the statement would mislead a reasonable consumer.

#### a. Courts Routinely Apply the Reasonable Consumer Test at the Pleadings Stage.

Plaintiffs fail to distinguish the many decisions dismissing claims under the reasonable consumer test on a motion to dismiss. It is well established that when "a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging,

---

[4] Moreover, unlike the CAC, the complaint in *Smith* made allegations about recycling capacities in California supporting the assertion that the coffee pods were never recyclable. *See, e.g.*, *Smith*, 4:18-cv-06690 (N.D. Cal. 2018), Dkt. No. 20 ¶¶ 22, 28–29 (listing guidance from numerous California localities or waste management companies indicating that single serve coffee pods could not be recycled at all).

[5] Plaintiffs' other cited authorities, *Bush v. Rust-Oleum Corp.*, 2021 WL 24842, at *4–5 (N.D. Cal. Jan. 4, 2021), and *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 345 F. Supp. 3d 1111, 1118 (N.D. Cal. 2018), are inapposite because they did not consider recycling claims at all and simply concluded that the plaintiffs had pleaded enough facts to support the reasonableness of their understanding of the labeling claims.

dismissal is appropriate" at the pleadings stage. *See, e.g.*, *Elbaz v. Vitals Int'l Grp.*, 2018 WL 5868739, at *3 (C.D. Cal. Apr. 10, 2018); Mot. at 21 (collecting cases).[6]

Plaintiffs attempt to distinguish *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225 (9th Cir. 2019), arguing that "diet," unlike "100% Recyclable," is a "well understood" "term of art." Opp'n at 16–17. But they point to no allegations in the CAC to establish that difference. Unlike the conclusory claims here, the plaintiff in *Becerra* actually pleaded facts to support her claims— including the results of a flawed survey showing that consumers agreed with her understanding of "diet"—and the court *still* dismissed those claims. 945 F.3d at 1230–31.

Plaintiffs also mischaracterize *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), suggesting it applies only to disclaimers on labels. Opp'n at 17. In fact, *Moore* held that a consumer must consider all available information—whether on or off the label—before concluding that their own idiosyncratic understanding of the label is correct. 4 F.4th at 883. There, the plaintiffs could not assume "100% Manuka Honey" promised the honey would contain exclusively pollen from the Manuka flower because that assumption was unreasonable given other available information: the product's Manuka honey rating, its relatively low price compared to higher-purity products, and the fact that bees cannot be directed to avoid other types of flowers. *Id.* at 882–83. Plaintiffs' interpretation of "100% Recyclable" is similarly unreasonable given the established meaning of "recyclable" as "able to be recycled," and given Plaintiffs' own allegations that it is impossible to recycle every molecule of even the "most recyclable" plastic materials. CAC ¶ 42.

### b. Reasonable Consumers Would Not Understand "100% Recyclable" to Promise 100% of the Packaging *Will Be* Recycled.

Plaintiffs' understanding of "100% Recyclable" as a promise that the entirety of the packaging *will* be recycled and "can be recycled *again and again*" contradicts their own admissions and is so fanciful that it warrants dismissal. *Moore*, 4 F.4th at 884. Plaintiffs have conceded that the definition of "recyclable" under the Green Guides and California law considers the extent to

---

[6] *See also Prescott v. Nestlé USA, Inc.*, 2022 WL 1062050, at *5–6 (N.D. Cal. Apr. 8, 2022); *Thomas v. Costco Wholesale Corp.*, 2022 WL 636637, at *2 (9th Cir. Mar. 4, 2022); *Moreno v. Vi-Jon, LLC*, 2021 WL 5771229, at *8 (S.D. Cal. Dec. 6, 2021).

which materials are able to be recycled by local recycling programs and that these controlling authorities permit unqualified recyclable claims "even if less than 100% of the product is recyclable—i.e. minor or incidental portions." *See* Opp'n at 20. Plaintiffs assert that Defendants' use of "100%" places their products outside the bounds of these authorities because Defendants' caps and labels cannot be recycled. But "100% Recyclable" is an unqualified recycling claim, and, even if Plaintiffs had plausibly alleged that Defendants' caps and labels are not recyclable (which they have not), the Green Guides expressly permit such claims even when "minor incidental components" are not recyclable. 16 C.F.R. § 260.12(c).[7] Because "100% Recyclable" does not itself mean that the entirety of a product *will be* recycled—let alone "recycled again and again"—there is nothing in the label's text from which Plaintiffs can draw their alleged understanding.

### 3. Allegations About Third-Party Website Claims Do Not Support Plaintiffs' Interpretation of "100% Recyclable."

While Plaintiffs allege that the "'Every Bottle Back' initiative" and claims on the EBB and ABA websites support their fanciful understanding of "100% Recyclable," they fail to connect these claims to the named plaintiffs or to all of the Defendants. Opp'n at 11, 14. Plaintiffs do not allege that all Defendants took part in the EBB initiative, *see id.* at 11, 20; CAC ¶ 58, violating Rule 8 and 9(b)'s requirements of specificity as to the allegations against each defendant. Nor do they allege that any of the defendants controlled or determined the content of these websites. Plaintiffs likewise do not allege that the named plaintiffs ever saw or were even aware of this initiative or any of the website claims and so cannot allege that the named plaintiffs relied on those claims when interpreting "100% Recyclable." CAC ¶¶ 86–88. The named plaintiffs never allege that they actually believed "100% Recyclable" meant the bottles would be recycled "again and again." *Id.* Plaintiffs' failure to allege actual reliance on the claim is fatal. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011) (plaintiff must "demonstrate actual reliance on the allegedly deceptive or misleading statements").

---

[7] The Green Guides explicitly identify bottle caps as "minor, incidental component[s]." 16 C.F.R. § 260.3(b). Labels similarly do not "significantly limit[] the ability to recycle the product." *See id.*

### 4. Plaintiffs Do Not Plausibly Allege that the Components of Defendants' Packaging Cannot Be Recycled by 60% of Californians Who Buy Them.

The pleading standard under the Green Guides and the EMCA is straightforward: Plaintiffs must plausibly allege that recycling facilities capable of processing Defendants' packaging are not available to 60% of the Californians who buy these products. Plaintiffs' CAC never makes this allegation, plausibly or otherwise. Plaintiffs admit that "PET recycling may be available to 60% of consumers where the Products are sold," Opp'n at 19, and they never allege that HDPE caps, PP caps, or BOPP labels ***cannot*** be recycled by 60% of *California* customers. (In any event, those are minor, incidental components that do not preclude unqualified recyclability claims.) Plaintiffs thus cannot plead a violation of the Green Guides or the EMCA.

Plaintiffs also fall short of the pleading standard by relying entirely on vague, general allegations about nationwide rates of recycling and challenges in the secondary market for the *types* of plastics in Defendants' products—allegations that say nothing about California consumers' access to recycling programs for Defendants' PET bottles, HDPE and PP caps, and BOPP labels. The CAC is silent as to the availability of recycling of Defendants' bottles to California consumers and actual recycling rates of PP or BOPP plastic labels *in California*. CAC ¶¶ 43–44. Plaintiffs identify only one California-specific allegation, buried within the 159-paragraph CAC: their unsupported conclusion that it is not cost-effective for MRFs in California to process PP caps and BOPP labels, from which they infer that California MRFs "do not have the capacity" to process such materials. *Id.* ¶ 50. Even this attenuated inference does not allege that less than 60% of Defendants' California customers lack access to recycling programs for PP caps or BOPP labels.

If Plaintiffs could allege that less than 60% of Defendants' California customers have access to recycling programs for PP and BOPP beverage caps and labels—or for any other component of Defendants' products—they would do so. But they cannot. Nor can they paper over this pleading deficiency merely by asserting that nationwide allegations "are also plausibly true in California." Opp'n at 15.

### B. The Consumer Plaintiffs Lack Standing Because They Fail To Allege an Injury-in-Fact.

Plaintiffs' allegations belie their sweeping argument that the products are not 100% recyclable and therefore they can allege with "certainty" that they bought a non-conforming product. Opp'n at 27. The CAC does not, and cannot, allege that any of the PET water bottles that the Consumer Plaintiffs allegedly placed in the recycling stream were not recycled. At most, Plaintiffs allege (1) that nationally, 28% of PET products of all types is supposedly not recycled due to contamination or is inexplicably "lost" and (2) that the United States currently lacks the recycling capacity to recycle 75% of all PET and HDPE products produced. CAC ¶¶ 4, 50. Plaintiffs carefully avoid any statistics concerning PET water bottles specifically and fail to include any plausible allegations about what would "contaminate" a water bottle. *Id.* Moreover, the fact that the country lacks the capacity to recycle all PET and HDPE products produced does not suggest that the United States—or, more specifically, California—lacks the capacity to recycle 100% of the PET water bottles that consumers seek to have recycled. Because Plaintiffs cannot show that their bottles were not recycled, they cannot plausibly allege that they received anything less than that for which they paid.[8] *Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 989 (9th Cir. 2015), and *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir 2012), say nothing to support Plaintiffs' flawed price-premium theory—only that an injury can exist when there *is* a demonstrable difference between the price and the value of what consumers received. That is not the case here, where Plaintiffs cannot show any difference between price paid and value received. Plaintiffs also attempt to distinguish *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014), with the conclusory argument that, unlike the plaintiff there, they "can allege and have alleged with certainty that they purchased one of the non-conforming Products." Opp'n at 27. But Plaintiffs fail to plead any facts showing this is the case. Mot. at 27–28.

---

[8] A "price premium" is simply a means of measuring "the difference between what the plaintiff paid and the value of what the plaintiff received." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1113 (N.D. Cal. 2018) (citation omitted); *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020).

C. **The Consumer Plaintiffs Lack Standing To Pursue Injunctive Relief.**

Plaintiffs assert that *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) entitles them to pursue injunctive relief merely by claiming a future desire to purchase Defendants' products. Opp'n at 29–30. *Davidson* says no such thing. Indeed, *Davidson* holds that injunctive relief is only available where a consumer makes "*plausible* allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may *reasonably*, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at 970; Mot. at 29.

Plaintiffs first implausibly suggest that "Defendants could reengineer the Products so that they are made of a different type of plastic" and thus make them more recyclable. Opp'n at 29. But Plaintiffs have conceded that Defendants' bottles are already made of the "'most recyclable' forms of plastic"—PET and HDPE—so they cannot plausibly suggest that switching to different, less recyclable plastics would somehow make Defendants' bottles more recyclable. CAC ¶ 42. Plaintiffs next hypothesize that recycling technology could suddenly improve or that recycling economics could magically change. Opp'n at 29. It strains credulity that Plaintiffs, whose CAC contains detailed information regarding national recycling infrastructure and economics, would be unaware of changes making PET water bottles *more* recyclable. This contrasts with *Davidson*, where, acknowledging that it was a "close question," the Ninth Circuit held that the maker of flushable wipes might redesign its products to be flushable *without consumers' knowledge* and that consumers would have no way to know if the products' "flushable" claim was true. 889 F.3d at 971. By contrast, any changes in product or infrastructure would be known to Plaintiffs, making future "deception" implausible.

D. **Plaintiffs' Other Claims Fail for Additional Reasons.**

1. **Conclusory Allegations Cannot Sustain Plaintiffs' Fraud Claim.**

Plaintiffs merely repeat the conclusory scienter and intent allegations of their fraud claim. Opp'n at 23. Nothing has changed; that claim should be dismissed.

### 2. Plaintiffs' UCL Claims Fail To Plausibly Allege Any Underlying Violation.

The Court should dismiss Plaintiffs' UCL claims to the extent that they are predicated on violations of the EMCA, Green Guides, CLRA, and FAL because Plaintiffs have failed to allege that reasonable consumers would adopt Plaintiffs' understanding of "recyclable," and for the other reasons stated in Defendants' Motion. Mot. at 23–26.

Plaintiffs' UCL claims should also be dismissed to the extent that they rely on nonexistent "violations" of California recycling policy. The CAC quotes extensively from provisions of California recycling policy that were not in effect when Plaintiffs allegedly purchased Defendants' products. CAC ¶¶ 74–75. The other California recycling policy provisions that Plaintiffs cite set forth legislative findings and declarations, none of which can be—or are plausibly alleged to have been—violated and so cannot support a UCL claim. *Id.* ¶¶ 146.c, 147.c (citing Cal. Pub. Res. Code §§ 42355, 42355.5). Plaintiffs have ignored cases squarely holding that legislative findings and declarations that do not impose a duty cannot be "violated" under the UCL. Mot. at 24–25; *Aranda v. CitiMortgage Inc.*, 2013 WL 12182677, at *3–4 (C.D. Cal. May 13, 2013) (dismissing UCL claims predicated on legislative findings and declarations without duty). Plaintiffs' only cited case, *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326–27 (2012), merely espouses a general principle about the laws that can support UCL claims and does not even mention legislative findings or declarations. These policies cannot underpin Plaintiffs' UCL claims.

Finally, Plaintiffs' allegations that Defendants failed to comply with recordkeeping duties imposed by California's recycling policy are conclusory and insufficient, and Plaintiffs do not even allege that they ever requested such records from Defendants.

### E. Sierra Club's Use of Its Resources in Furtherance of Its Organizational Mission Does Not Provide Standing.

In the Opposition, Sierra Club does not suggest it has suffered the requisite concrete injury under Article III; instead, it argues that "[w]hile Sierra Club seeks to *increase* awareness of the problems single-use plastics present and educate consumers as to how to *mitigate* those problems,

Defendants seek to *decrease* consumer awareness . . . and to misinform and confuse consumers in ways that *exacerbate* those problems." Opp'n at 31; Cullum Decl. ¶ 8. Sierra Club's say-so is not enough. It has not sufficiently alleged what an organization must: that the defendant's conduct caused both "frustration of its organizational mission" ***and*** "diversion of its resources to combat" the alleged harms. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004).

Sierra Club's bare assertion that Defendants' labeling is "contrary to Sierra Club's missions," Opp'n at 31, does not suffice. Unlike the plaintiffs in *Fair Housing Council v. Roommate.com*, 666 F.3d 1216, 1219 (9th Cir. 2012), Sierra Club does not allege that it initiated "new education and outreach campaigns" for the *sole purpose* of counteracting Defendants' labeling. And Sierra Club's contention that the "100% Recyclable" claim on a few products has "reduce[d] the number of people motivated to seek Sierra Club's services and to heed Sierra Club's calls to action," Opp'n at 32, is pure speculation. *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 413 (2013) ("We have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."). Sierra Club's allegations suggest, at most, that "100% Recyclable" offends "the priorities and principles of the organization"—too abstract for standing. *Jimenez v. Tsai*, 2017 WL 2423186, at *11 (N.D. Cal. June 5, 2017). Sierra Club's vague contention that it "diverted resources" from other projects to address Defendants' labeling is equally unpersuasive. Opp'n at 35; *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021) (diversion of resources must entail altering "resource allocation to combat the challenged practices"). Beyond a single tweet referencing Arrowhead bottled water, Ip Decl. ¶ 12, Sierra Club identifies no action to combat supposed effects of Defendants' labeling, as opposed to single-use plastics in general. CAC ¶¶ 80–83. Similarly, Sierra Club's lobbying does not establish it "diverted [resources] ***as a result of Defendants' practices***," *Jimenez*, 2017 WL 2423186, at *12, because it *acknowledges* that such efforts to "pressure and advocate for change through legislation" are central to its everyday activities. CAC ¶ 70.

III. **CONCLUSION**

For the foregoing reasons, the Court should dismiss the CAC with prejudice.

Dated: May 27, 2022　　　　By: /s/ *Dawn Sestito*

　　　　Dawn Sestito
　　　　Collins Kilgore
　　　　Hannah Y. Chanoine (*pro hac vice*)
　　　　O'MELVENY & MYERS LLP

　　　　*Attorneys for Defendant BlueTriton Brands, Inc.*

Dated: May 27, 2022　　　　By: **/s/ *Gary T. Lafayette*

　　　　Steven A. Zalesin (*pro hac vice*)
　　　　PATTERSON BELKNAP WEBB & TYLER LLP

　　　　Gary T. Lafayette
　　　　LAFAYETTE & KUMAGAI LLP

　　　　*Attorneys for Defendant The Coca-Cola Company*

Dated: May 27, 2022　　　　By: **/s/ *Kent J. Schmidt*

　　　　Kent J. Schmidt
　　　　Creighton R. Magid (*pro hac vice*)
　　　　DORSEY & WHITNEY LLP

　　　　*Attorneys for Defendant Niagara Bottling LLC*

　　　　**Pursuant to Civ. L.R. 5-1(i)(3), the electronic signatory has obtained approval from this signatory.*

# ATTESTATION OF FILING

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all other signatories listed, and on behalf of whom this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: May 27, 2022  By: /s/ *Dawn Sestito*

Dawn Sestito
Collins Kilgore
Hannah Y. Chanoine (*pro hac vice*)
O'MELVENY & MYERS LLP

*Attorneys for Defendant BlueTriton Brands, Inc.*