1  LAFAYETTE & KUMAGAI LLP
   Gary T. Lafayette (SBN 88666)
2  glafayette@lkclaw.com
   Brian H. Chun (SBN 215417)
3  bchun@lkclaw.com
   1300 Clay Street, Suite 810
4  Oakland, California 94612
   (415) 357-4600
5  (415) 357-4605 (fax)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID SWARTZ, CRISTINA SALGADO, and MARCELO MUTO, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE COCA-COLA COMPANY, BLUETRITON BRANDS, INC., and NIAGARA BOTTLING, LLC,<br><br>Defendants. | Case No. 3:21-cv-04643-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF CONSOLIDATED MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: March 9, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato<br>Courtroom: 11, 19th Floor |
| SIERRA CLUB,<br>        Plaintiff,<br>v.<br><br>THE COCA-COLA COMPANY and BLUETRITON BRANDS, INC.,<br><br>Defendants. | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. Plaintiffs' Opposition Does Not Salvage Their Deceptive Practices Allegations ................................................................................................................ 2

    B. Plaintiffs' Manipulation of the Green Guides Does Not Save Their Claims ........... 4

    C. The Consumer Plaintiffs Lack Standing Without an Injury-in-Fact ....................... 6

    D. The Consumer Plaintiffs Do Not Have Standing to Obtain Injunctive Relief ........ 8

    E. Sierra Club's Use of Its Resources in Furtherance of Its Organizational Mission Does Not Confer Standing ........................................................................ 9

    F. Plaintiffs' National Class Claims Are Improper ................................................... 10

III. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) .................................................................................................. 6

*Cannara v. Nemeth*,
467 F. Supp. 3d 877 (N.D. Cal. 2020) ............................................................................. 4, 10

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ................................................................................................................ 8

*Davidson v. Kimberly Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .............................................................................................. 7, 8

*Duchimaza v. Niagara Bottling, LLC*,
No. 21 Civ. 6434 (PAE), 2022 WL 3139898 (S.D.N.Y. Aug. 5, 2022) ................................. 5

*Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*,
666 F.3d 1216 (9th Cir. 2012) ............................................................................................... 9

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ............................................................................................... 8

*Gilmore v. Union Pac. R. Co.*,
No. 09-cv-2180, 2010 U.S. Dist. LEXIS 50470 (E.D. Cal. May 21, 2010) ......................... 10

*In re Graphis Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................................... 10

*Hanscom v. Reynolds Consumer Prods. Inc.*,
No. 4:21-cv-3434 (N.D. Cal. Oct. 1, 2021) ........................................................................... 4

*Jackson v. General Mills, Inc.*,
No. 18-cv-2634, 2020 U.S. Dist. LEXIS 157898 (S.D. Cal. Aug. 28, 2020) ........................ 8

*Know Your IX v. DeVos*,
No. RDB-20-01224, 2020 WL 6150935 (D. Md. Oct. 20, 2020) .......................................... 9

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ................................................................................................. 7

*Smith v. Keurig Green Mtn., Inc.*,
393 F. Supp. 3d 837 (N.D. Cal. 2019) ................................................................................... 4

*Smith v. Pac. Props. & Dev. Corp.*,
358 F.3d 1097 (9th Cir. 2004) ............................................................................................... 9

*Topadzhikyan v. Glendale Police Dept.*,
No. Civ. 10-387, 2010 U.S. Dist. LEXIS 78717 (C.D. Cal. July 8, 2010) .......................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Other Authorities**

16 C.F.R. § 260.3(b) .................................................................................................... 2, 5, 6

16 C.F.R. § 260.12(c).................................................................................................... 2, 5, 6

21 C.F.R. § 133.146(d)(3)(i) ................................................................................................ 6

Fed. R. Civ. P. 15(a)(2) ...................................................................................................... 10

14144478

## I.    INTRODUCTION[1]

This Court has held that whether a product is recyclable "depends on whether it is comprised of materials that can be recycled by existing recycling programs." Dismissal Order (ECF 99) at 2. Accordingly, to allege plausibly that Defendants' recyclability labeling is false, Plaintiffs must provide "facts about the processing capabilities of MRFs in California" and must "allege[] that . . . MRFs reject defendants' products." *Id.* at 3. Plaintiffs have failed to do so.

In their opposition, Plaintiffs implicitly concede that Defendants' PET bottles are capable of being recycled by California MRFs, and shift their focus to the assertion that the caps and labels are not recyclable by that definition. But their FAC does not plausibly allege that caps and labels are not recyclable. The FAC does not contain ***even one*** "fact[] about the processing capabilities of MRFs in California" with respect to Defendants' caps and labels, and certainly does not "allege[] that any MRFs reject" those items—allegations this Court deemed necessary to state a claim. *Id.* at 3.

Plaintiffs do not dispute that these allegations are missing from their FAC, and urge the Court to accept vaguely similar-sounding—though in fact unrelated—allegations as a substitute. They emphasize their allegations that MRFs do not accept plastic bags—but plastic bags are not at issue in this case, and Plaintiffs do not plausibly allege that MRFs treat plastic bags the same as labels. They repeatedly cite a statement from the owner of a reclaiming company that caps and labels are "los[t]" during sorting—but the activities of a reclaiming company have nothing to do with the capabilities of California MRFs. And they continue to rely on allegations that the caps and labels purportedly may "end up in landfills or burned," Pltfs. Opposition Brief (ECF 107) ("Opp. Br.") at 2 (citing FAC ¶ 2)—but this Court has already held that where products "end up" is not the measure of recyclability. *See* Dismissal Order at 2-3. Nothing in the opposition cures these deficiencies, which the Court has already deemed fatal.

Plaintiffs' opposition also fails to address the several other fatal defects in their FAC. Plaintiffs' caps-and-labels-based theory is fundamentally at odds with the FTC Green Guides,

---

[1] Capitalized terms have the meanings given in Defendants' Consolidated Notice of Motion and Motion to Dismiss First Amended Complaint (ECF 106). Unless otherwise stated, all emphasis is added and citations and internal quotation marks are omitted.

1  which expressly authorize recyclability claims on products whose "minor, incidental components"
2  are not recyclable.  16 C.F.R. §§ 260.12(c), 260.3(b).  Plaintiffs respond by asking the Court to
3  effectively read that pronouncement out of the Green Guides.  Similarly, they ask the Court to
4  overlook their failure to allege either a past injury sufficient to confer standing, or a threat of future
5  injury sufficient to establish standing to pursue injunctive relief.

6  Plaintiffs' opposition only confirms that their FAC has all the same deficiencies as their
7  prior Complaint.  Enough is enough.  The Court should dismiss Plaintiffs' FAC with prejudice.

## II.  ARGUMENT

### A.  Plaintiffs' Opposition Does Not Salvage Their Deceptive Practices Allegations

Plaintiffs' opposition does not address the fundamental failure identified in Defendants' opening brief: They have not plausibly alleged that California MRFs or recycling facilities reject any part of Defendants' products.  Such allegations are crucial to Plaintiffs' claims, as the Court made clear in its Dismissal Order.  There, the Court concluded that Plaintiffs' failure to allege "*facts* about the processing capabilities of MRFs in California"—including "alleg[ations] that any MRFs reject defendants' products"—was fatal to their claims.  Dismissal Order at 3.  In their FAC, however, Plaintiffs still have not filled this void.

Instead, Plaintiffs' opposition asks the Court to accept a series of poor substitutes for those missing allegations.  Plaintiffs first point to their entirely conclusory allegation that "a substantial majority of recycling programs in California do not recycle the . . . bottle caps and . . . plastic labels on the bottles."  Opp. Br. at 2 (citing FAC ¶ 2).  But this allegation does not address whether those recycling programs "accept[]" Defendants' caps and labels when attached to the PET bottle, which the Court identified as the key question under the Green Guides.  Dismissal Order at 3.

Plaintiffs next point to their allegations that "28% of the total plastic material" in Defendants' products sent for recycling in California cannot be processed and ultimately "ends up in landfills or burned."  Opp. Br. at 2 (citing FAC ¶ 2); *see also* FAC ¶¶ 45, 53, 57.  But Plaintiffs do not explain what "plastic material" they are talking about, or how they arrived at the 28% figure. Most importantly, they do not plausibly allege facts specifying *why* this material purportedly "ends up" in landfills—whether due to contamination or some other factor unrelated to the *recyclability*

1  of bottles, caps, and labels. Without those crucial facts, Plaintiffs' contention about where the products "end[] up" merely advances the same "will-be-recycled" theory the Court already rejected.[2] As the Court held in its Dismissal Order, an object's "recyclability" does not turn on whether it "will actually be recycled" or landfilled in the end, Dismissal Order at 2, so Plaintiffs' allegations about where Defendants' products "end[] up" are irrelevant. What matters is whether the object is "capable of being recycled" by California MRFs. *Id.* at 3. Plaintiffs' FAC contains no factual allegations on that critical subject.

Finally, Plaintiffs highlight the FAC's allegations about other, vaguely related subjects, which they urge the Court to accept as close enough. They rely heavily on their allegation that "Leon Farahnik, the former CEO of [the reclaimer] CarbonLite Industries" was once quoted as saying "[f]rom the time it starts, till it ends, as a resin . . . you lose about 30% of it in caps, [in] label[s], in dirt." Opp. Br. at 2-3. But this statement has no bearing on the recyclability of Defendants' bottles, caps, or labels. By Plaintiffs' own admission, CarbonLite Industries is not a California MRF at all, but a "reclaimer," *i.e.,* a business that purchases plastics *from MRFs*, and processes them into "clean flake material [that] is then sold" by the reclaimer for a profit. FAC ¶¶ 2, 51-52 (quotation marks omitted). Mr. Farahnik's quote indicates, at most, that 30% of incoming bales are not PET—the material his business sought to recover.

This isolated comment by a single ex-reclaimer-CEO does not remotely establish that the caps and labels are "not capable" of being recycled. The FAC does not allege that Mr. Farahnik speaks for any other actors in the recycled plastics economy. And even if he did, this Court has already held that allegations of limited market "demand for the recycled [caps and labels] . . . do[] not establish" that the items are not "*capable of being recycled*" by California MRFs—the metric of "recyclability." Dismissal Order at 3 (emphasis added). The quote from Mr. Farahnik therefore does nothing to save Plaintiffs' FAC.

Plaintiffs' reliance on their allegation that "only 2 out of . . . 75 MRFs in California accept

---

[2] Plaintiffs incorrectly assert that Defendants "deliberately misquote[d]" their allegations when Defendants added "*sometimes*" and "*some*" before language that Defendants quoted from the FAC. Opp. Br. at 4 & n.1; Mot. at 4. Plaintiffs themselves acknowledge that neither "*sometimes*" nor "*some*" is in quotations, and so neither represents a "deliberate misquot[ation]." Defendants' quotations and arguments are accurate and fair.

plastic bags" is similarly misplaced. FAC ¶ 46. Plastic bags are not at issue in this case, so the extent to which MRFs accept them is irrelevant. Plaintiffs contend that this allegation about plastic bags "supports the plausibility of Plaintiffs' claims that there is no market for plastic films like the BOPP labels," Opp. Br. at 5, but neither the FAC nor the opposition explains a sufficient connection between the two. Plaintiffs do not, for example, allege that plastic bags are also made of BOPP. And though Plaintiffs vaguely describe both plastic bags and Defendants' labels as "films," they do not allege any facts suggesting that MRFs treat all "films" identically (or even similarly).

Indeed, the primary effect of Plaintiffs' plastic-bag allegation is to highlight the absence of any similar allegation about the materials that are actually at issue in this case. Tellingly, Plaintiffs' FAC does not say how many of California's 75 MRFs accept BOPP labels or PP caps—though the Court's Order urged them to do so, and their plastic-bag figure suggests that they easily could have.[3] This omission warrants dismissal of their FAC.[4]

When the Court dismissed Plaintiffs' prior Complaint and permitted them to amend, it made clear what additional allegations were necessary to state a plausible claim. But Plaintiffs have failed to supplement their FAC with plausible allegations of the sort the Court identified. Their FAC should be dismissed with prejudice.

**B.  Plaintiffs' Manipulation of the Green Guides Does Not Save Their Claims**

Even if Plaintiffs had pleaded sufficient facts to support their "caps and labels" theory of deception, the FAC would still fail because that theory conflicts with the Green Guides' criteria for labeling products as "recyclable." The Green Guides expressly permit even unqualified recycling

---

[3] Plaintiffs accuse Defendants of engaging in improper "factual argumentation" by pointing out the FAC's defects. Opp. Br. at 5. But there is nothing improper about scrutinizing the sufficiency of Plaintiffs' allegations to support their claims. Even accepting the truth of Plaintiffs' allegations and resolving all "ambiguities" in Plaintiffs' favor, Opp. Br. at 5, the FAC simply does not include "factual content that allows the court to draw the reasonable inference" that Defendants' products are non-recyclable. *See* Dismissal Order at 1 (citing *Cannara v. Nemeth*, 467 F. Supp. 3d 877, 882 (N.D. Cal. 2020)).

[4] Plaintiffs' citations to *Smith v. Keurig Green Mtn., Inc.*, 393 F. Supp. 3d 837 (N.D. Cal. 2019), and *Hanscom v. Reynolds Consumer Prods. Inc.*, No. 4:21-cv-3434 (N.D. Cal. Oct. 1, 2021), are inapposite, as the plaintiffs in those cases alleged facts suggesting the products at issue *could not be recycled at all*. As described herein, there are no such allegations in Plaintiffs' FAC.

claims even when "minor, incidental components" of the product are not recyclable.[5] 16 C.F.R. §§ 260.12(c), 260.3(b). The Green Guides also identify bottle caps as a quintessential example of a "minor, incidental component." *Id.* § 260.3(b). Accordingly, a non-recyclable bottle cap—or other non-recyclable "minor, incidental component"—does not preclude a manufacturer from making an "unqualified" claim of recyclability.

This provision defeats Plaintiffs' contention that Defendants should have qualified their "100% Recyclable" claim to account for their purportedly non-recyclable caps and labels.[6] One court has already reached this conclusion in what Plaintiffs acknowledge was a virtually identical "copycat" case. *See Duchimaza v. Niagara Bottling, LLC*, No. 21 Civ. 6434 (PAE), 2022 WL 3139898, at *10–11 (S.D.N.Y. Aug. 5, 2022). There, as here, the plaintiffs claimed that bottled water products labeled "100% Recyclable" were "not '100% recyclable' based on their caps and labels." *Id.* at *10. Applying the Green Guides' standards for "unqualified" recyclability claims, the court held that the dispositive question was "whether these components qualify as 'minor incidental components' of the Products." *Id.* The court determined that the caps "clearly" did, since the Green Guides use bottle caps as an exemplar of the category, and found that accordingly, "even assuming that some [of the defendant's bottle caps] are not recyclable, this component is *outside the reach of the Green Guides*." *Id.* The court then concluded that the labels were also "minor, incidental components," and that "[l]ike the cap[s] . . . [they] *need not be recyclable for [the defendant] to market the Product as '100% Recyclable' without qualification*." *Id.* at *11. The result can be no different here. Caps and labels are "minor, incidental components" under the Green Guides, and do not count against Defendants' "unqualified" claim of "100%" recyclability.

Plaintiffs urge an entirely different interpretation of the Green Guides, which would effectively write the "minor, incidental components" exception out of existence. They emphasize

---

[5] As one court implicitly recognized, "100% Recyclable" is an unqualified recyclable claim under the Green Guides. *See Duchimaza v. Niagara Bottling, LLC*, No. 21 Civ. 6434 (PAE), 2022 WL 3139898, at *9-11 (S.D.N.Y. Aug. 5, 2022) (treating "100% Recyclable" as an unqualified recyclable claim under the Green Guides); *see also Unqualified,* Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/unqualified (last visited Feb. 10, 2023) (defining "unqualified" as "not limited in any way; to the largest degree possible").

[6] Plaintiffs' FAC contains no allegations about what percentage of the total plastic in the products is accounted for by their caps and labels.

a separate provision stating that for "items that are partially made of recyclable components, marketers should clearly and prominently qualify the recyclable claim." Opp. Br. at 6 (citing 16 C.F.R. § 260.12(c)). Plaintiffs assert that this "qualification" is required *even if* the only non-recyclable aspects are "minor, incidental components." *Id.* Such a reading would vitiate the Guides' separate provision specifically providing that "minor, incidental components" ***do not*** count against an "unqualified" claim of recyclability. *See* 16 C.F.R. § 260.3(b).[7] The Court should reject Plaintiffs' nonsensical interpretation, recognize the Green Guides' exception for "minor, incidental components," and hold that that exception controls here.

*Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020) (cited at Opp. Br. 6-7), does not suggest a different result. There, the court held that a claim of "100% Grated Parmesan Cheese" could be deceptive on a product that contained some non-parmesan-cheese elements, even though the product as a whole satisfied the FDA definition of "parmesan cheese." But the FDA regulation at issue in *Bell, see id.* at 483 (citing 21 C.F.R. § 133.146(d)(3)(i)), had no analogue to the Green Guides' carve-out for "minor, incidental components" on products labeled as recyclable. The FDA regulation did not say, for example, that products could make a claim to be parmesan cheese despite the "minor, incidental" presence of other ingredients. Because that proviso does exist for "recyclability" claims—and governs the claim at issue here—*Bell* is inapposite.

Even if Plaintiffs' claims were adequately pleaded—and they are not—they are foreclosed by the Green Guides. The FAC should be dismissed for this separate and independent reason.

### C. The Consumer Plaintiffs Lack Standing Without an Injury-in-Fact

Even if the Consumer Plaintiffs could allege facts supporting their claim that Defendants' products are sometimes rejected by MRFs, their claims would fail because they cannot allege that the products ***they*** purchased were so rejected. They do not allege, for example, that "the caps and labels are not capable of being recycled" by Plaintiffs' local MRF, or that the products "are not

---

[7] Plaintiffs also argue that statements on the American Beverage Association ("ABA") and Every Bottle Back ("EBB") websites lend credence to their wild interpretation by stating that plastics can be recycled and remade into new bottles. Plaintiffs, however, do not allege that all Defendants participated in, let alone directed, the EBB initiative, making them insufficient under Rules 8 and 9(b). *See* FAC ¶¶ 70–74. Nor do the named plaintiffs even allege they read or relied on any these statements. *Id.* ¶¶ 70–74, 96–98.

1  accepted by" those MRFs, as this Court's Order demanded. Dismissal Order at 3. In fact, they do
2  not say anything at all about the MRFs that collected their products or those MRFs' capabilities.
3  Accordingly, even assuming that they paid a price premium for a "100% Recyclable" product, they
4  have not alleged any facts suggesting that their products failed to live up to that representation.

5  In their opposition, Plaintiffs insist that they "have no burden to plead anything with respect
6  to whether the Products they purchased were recycled" or recyclable. Opp. Br. at 8. They rest
7  instead on their conclusory claim to have suffered "injury . . . at the moment of purchase in the
8  form of an overpayment" for a 100% Recyclable product, "*regardless of whether their products
9  were recycled*" after that. *Id.* (emphasis in original). In other words, they ask the Court to credit
10 their assertion that they "overpaid" for products labeled "100% Recyclable," in the absence of any
11 allegations about how recyclable those products turned out to be.

12 That is not how it works. Plaintiffs' allegation that the "100% Recyclable" claim induced
13 them to pay "more for the products than they otherwise would have," *id.*, constitutes an injury only
14 if the products were not actually 100% recyclable. There is no injury if Plaintiffs got exactly what
15 they were promised and paid for. None of Plaintiffs' cited cases says otherwise. In *Davidson v.
16 Kimberly Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) (cited at Opp. Br. at 8), for example, the
17 plaintiff alleged that she had paid a price premium for "flushable" wipes, only to learn later that,
18 "[i]n contrast to truly flushable or dispersible products," the purportedly flushable wipes "take
19 hours to begin to break down." *Id.* at 965-66. In other words, the *Davidson* plaintiff established
20 standing by alleging that she paid extra for supposedly "flushable" wipes that turned out not to be
21 "flushable." *See also*, *e.g.*, *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir.
22 2015) (cited at Opp. Br. at 8) (plaintiffs had standing because they paid for their advertisements to
23 be placed on higher-quality webpages but received placement on lower-quality ones). Here, by
24 contrast, the Consumer Plaintiffs have alleged no facts suggesting that the products they bought
25 turned out not to be recyclable. That defeats their claim to "injury" in the form of overpayment.

26 In the alternative, Plaintiffs premise standing on their conclusory claim that the disputed
27 products "*all* include components that are completely unrecyclable, including the caps and labels,"
28 so the water bottles they purchased must not have been recycled. Opp. Br. at 9. But as set forth

1  above, Plaintiffs offer no factual basis for this assertion. This Court need not accept "allegations
2  that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re
3  Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Plaintiffs' failure to allege facts that
4  Defendants' allegedly misleading labeling caused them any injury is fatal to their FAC.

### D. The Consumer Plaintiffs Do Not Have Standing to Obtain Injunctive Relief

Plaintiffs have also failed to establish their standing to seek injunctive relief, because they do not and cannot allege any future need to "rely on" Defendants' labels. To claim standing to seek injunctive relief, Plaintiffs must plausibly allege a "real and immediate threat of repeated injury" in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). In *Davidson*, the Ninth Circuit held that consumer plaintiffs may, in some circumstances, establish standing through "plausible allegations" that they are interested in purchasing a product with the advertised feature, but that, absent an injunction, "will be unable to rely on the product's advertising or labeling in the future" to determine whether that feature is present. *Davidson*, 889 F.3d at 969-70. The *Davidson* plaintiff satisfied this requirement by alleging that she wished to purchase "flushable" wipes in the future, but had "no way of determining whether the representation 'flushable' [was] in fact true." *Id.* at 970-71.

Unlike the *Davidson* plaintiff, who had no independent way of gauging the wipes' "flushability" at the time of purchase, Plaintiffs here claim to have determined, through their independent research into recycling infrastructure, that Defendants' products are not actually "100% Recyclable" because caps and labels are not capable of being recycled. Having reached that conclusion, Plaintiffs can readily determine whether they think a PET bottle is 100% Recyclable by simply checking to see if it has a cap and a label. *See, e.g., Jackson v. General Mills, Inc.*, No. 18-cv-2634, 2020 U.S. Dist. LEXIS 157898, at *16 (S.D. Cal. Aug. 28, 2020) (finding no standing to seek injunctive relief where plaintiff "is on notice of facts in her own complaint," such that "[i]f she chooses to ignore them . . . her reliance would not be reasonable"). And should recyclability infrastructure evolve to permit the recycling of these elements, they can obtain that information from the same publicly available sources about recycling that they rely on in their FAC. As a result, Plaintiffs cannot claim any need to "rely on" Defendants' product labels for accurate information

about the products' recyclability. Accordingly, they are at no risk of future injury in the absence of an injunction.

### E. Sierra Club's Use of Its Resources in Furtherance of Its Organizational Mission Does Not Confer Standing

Neither the FAC nor the opposition suggests that Sierra Club has suffered the "frustration of its organizational mission" or "diversion of resources" that organizational standing requires. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). Sierra Club argues that Defendants' labeling frustrates its purpose of educating consumers about the harm of single-use plastic, *see* Opp. Br. at 11-12, but generalized opposition to single-use plastic is not enough to establish standing. If a court "were to allow a party whose organizational mission is to engage in policy advocacy to claim injury on the basis of a need to engage in that exact activity, *any* advocacy group could find standing" to challenge practices it considered objectionable. *Know Your IX v. DeVos*, No. RDB-20-01224, 2020 WL 6150935, at *6 (D. Md. Oct. 20, 2020).

Further, Sierra Club did not divert any additional resources to counteract the messages on Defendants' labels. Sierra Club argues that it spent "significant money, staff time, and other organization resources . . . to counter" Defendants' representations on their labels. FAC ¶ 17. But Sierra Club's cited evidence of those "significant" expenditures is: (1) a single article written by one unpaid volunteer, who did not view her article as directed specifically at Defendants' representations; (2) a single tweet referencing Arrowhead bottled water; and (3) "strategiz[ing]" at monthly meetings about how to respond to Defendants' claims related to single-use plastic.[8] These efforts are all squarely in line with Sierra Club's organizational mission. Unlike the plaintiffs in *Fair Housing Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012), Sierra Club does not allege that it interrupted its usual work and initiated "new education and outreach campaigns" to counteract Defendants' labeling. Opposing single-use plastic *is* Sierra Club's usual work, and engagement in that work is insufficient to confer standing.

---

[8] Plaintiffs repeatedly cite the Ip Declaration to support Sierra Club's standing. Opp. Br. at 13. The Court should disregard those citations because Plaintiffs failed to re-file the Ip Declaration with their most recent opposition brief (ECF No. 107).

### F. Plaintiffs' National Class Claims Are Improper

As noted in Defendants' Motion to Dismiss, Plaintiffs have improperly sought to assert claims against Niagara on behalf of a national class without seeking leave to amend as required by Fed. R. Civ. P. 15(a)(2) and without any briefing on the subject. In their opposition, Plaintiffs do not deny their sleight of hand, but merely argue that the assertion of a national class is unchanged from the CAC to the FAC. That, however, is beside the point. When the Court authorized Plaintiffs to *consolidate* their claims between the *Sierra Club* and *Swartz* matters, Plaintiffs took it upon themselves not only to consolidate, but also to *amend* their claims to add claims against Niagara on behalf of a putative national class. This amendment was improper, because Plaintiffs did not seek leave to amend and because Niagara was denied the opportunity to oppose the amendment.

*Gilmore v. Union Pac. R. Co.*, No. 09-cv-2180, 2010 U.S. Dist. LEXIS 50470 (E.D. Cal. May 21, 2010), and *Topadzhikyan v. Glendale Police Dept.*, No. Civ. 10-387, 2010 U.S. Dist. LEXIS 78717 (C.D. Cal. July 8, 2010), do nothing to support Plaintiffs' circumvention of Rule 15(a)(2). Both cases address situations in which courts *granted* leave to amend, without limitation. The Court granted no such leave here.

Tellingly, Plaintiffs have no response to the argument that the claims on behalf of a putative national class must be dismissed in any event, because the FAC contains no allegations that California law applies to all putative class members. Plaintiffs do not deny that, because no such allegations exist in the FAC, the assertion of a nationwide class must be dismissed or stricken. *See, e.g., In re Graphis Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007).

### III. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' consolidated motion to dismiss Plaintiffs' FAC with prejudice.[9]

---

[9] After multiple, squandered attempts to amend their complaint, Plaintiffs make no attempt to explain the facts they would add if given further leave to amend—and there are none. Amendment would be futile, and, in keeping with its warning that this "will likely be the last opportunity to amend" (Dismissal Order at 3), the Court should dismiss the FAC without leave to amend. *See Cannara v. Nemeth*, 467 F. Supp. 3d 877, 884 (N.D. Cal. 2020), *aff'd*, 21 F.4th 1169 (9th Cir. 2021).

Dated: February 13, 2023          By: /s/ *Steven A. Zalesin*
                                  Steven A. Zalesin (*pro hac vice*)
                                  Jane Metcalf (*pro hac vice*)
                                  PATTERSON BELKNAP WEBB &
                                  TYLER LLP

                                  Gary T. Lafayette
                                  LAFAYETTE & KUMAGAI LLP

                                  *Attorneys for Defendant The Coca-Cola Company*


Dated: February 13, 2023          By: ** /s/ *Hannah Y. Chanoine*

                                  Dawn Sestito
                                  Collins Kilgore
                                  Hannah Y. Chanoine (*pro hac vice*)
                                  O'MELVENY & MYERS LLP

                                  *Attorneys for Defendant BlueTriton Brands, Inc.*


Dated: February 13, 2023          By: **/s/ *Creighton R. Magid*

                                  Kent J. Schmidt
                                  Creighton R. Magid (*pro hac vice*)
                                  DORSEY & WHITNEY LLP

                                  *Attorneys for Defendant Niagara Bottling LLC*

                                  **Pursuant to Civ. L.R. 5-1(i)(3), the electronic signatory has obtained approval from this signatory.*

**ATTESTATION OF FILING**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all other signatories listed, and on behalf of whom this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: February 13, 2023            By: /s/ *Steven A. Zalesin*

Steven A. Zalesin

PATTERSON BELKNAP WEBB & TYLER LLP

*Attorneys for Defendant The Coca-Cola Company*