UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SWARTZ, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>THE COCA-COLA COMPANY, et al.,<br><br>    Defendants. | Case No. 21-cv-04643-JD<br><br>**ORDER RE MOTION TO DISMISS** |

Named plaintiffs David Swartz, Marcelo Muto, Cristina Salgado, and the Sierra Club, who are suing on behalf of themselves and putative consumer classes, allege in a first amended complaint (FAC) that defendants the Coca-Cola Company, Blue Triton Brands, and Niagara Bottling, misled consumers about the recyclability of their beverage bottles. The Court dismissed the prior complaint because it did not plausibly allege that bottles labeled "100% recyclable" would deceive a reasonable consumer into believing that each bottle would actually be recycled, or that a bottle would necessarily be converted into reusable material. *See* Dkt. No. 99. The complaint also did not plausibly allege consumer deception on the basis of California recycling regulations or the Green Guides, which is a publication of the Federal Trade Commission (FTC) addressing environmental marketing claims. *Id.*; *see also* 16 C.F.R. §§ 260, *et seq.*

Defendants have asked to dismiss the FAC on standing and plausibility grounds under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 106. The parties' familiarity with the record is assumed, and the FAC is dismissed with leave to amend.

## LEGAL STANDARDS

The legal standards that govern a motion to dismiss under Rules 12(b)(1) and 12(b)(6) are well-established. *See Cannara v. Nemeth*, 467 F. Supp. 3d 877, 882 (N.D. Cal. 2020) (describing

Rule 12(b)(1) and Rule 12(b)(6) standards), *aff'd*, 21 F.4th 1169 (9th Cir. 2021). In pertinent part, to meet the pleading requirements of Rule 8(a) and to survive a Rule 12(b)(6) motion to dismiss, a claim must provide "a short and plain statement … showing that the pleader is entitled to relief," Fed. R. Civ. P 8(a)(2), including "enough facts to state a claim … that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if, accepting all factual allegations as true and construing them in the light most favorable to the plaintiff, the Court can reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility analysis is "context-specific" and not only invites but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The heightened pleading requirements of Rule 9(b) apply here because plaintiffs allege false and misleading product representations that sound in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

## DISCUSSION

### I.   STANDING

Defendants have challenged the standing of the named plaintiffs to sue, albeit in a rather cursory manner. Because standing is a jurisdictional question, *see Equity Lifestyle Properties, Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008), the Court considers it first.

The Court has discussed in detail the standing requirements of Article III of the United States Constitution in other cases. *See, e.g., Patel v. Facebook, Inc.*, 290 F. Supp. 3d 948, 952 (N.D. Cal. 2018). In pertinent part, "a plaintiff must demonstrate standing to sue by alleging the 'irreducible constitutional minimum' of (1) an 'injury in fact' (2) that is 'fairly traceable to the challenged conduct of the defendants' and (3) 'likely to be redressed by a favorable judicial decision.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To demonstrate an injury in fact, the plaintiff must show that she has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Monetary injury is the quintessential injury that confers standing. Our Circuit has "consistently recognized that a

2

1  plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than
2  she otherwise would have due to a defendant's false representations about the product." *McGee v.*
3  *S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) (citing, *e.g.*, *Mazza v. Am. Honda Motor Co.*,
4  666 F.3d 581, 595 (9th Cir. 2012)).

5        The harm alleged by plaintiffs in the FAC is precisely such an injury. The FAC says that
6  each of the individual plaintiffs purchased bottles supplied by defendants, and that they paid a
7  premium based on the 100% recyclable representation. *See* Dkt. No. 101 ¶¶ 96-98. These
8  monetary injuries "readily qualify as concrete injuries under Article III." *TransUnion*, 141 S. Ct.
9  at 2204. Whether the bottles plaintiffs purchased were actually converted into reusable material
10 after they were placed in the recycling bin is immaterial. What matters is that plaintiffs say they
11 paid more for defendants' bottled products than they would have without defendants' allegedly
12 deceptive recycling claims. This is enough to establish standing to sue. *See Mazza*, 666 F.3d at
13 595.

14       Defendants' suggestion that the individual plaintiffs lack standing to seek injunctive relief
15 is misdirected. "[A] previously deceived consumer may have standing to seek an injunction
16 against false advertising or labeling, even though the consumer now knows or suspects that the
17 advertising was false at the time of the original purchase," because "[k]nowledge that the
18 advertisement or label was false in the past does not equate to knowledge that it will remain false
19 in the future." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018); *see also*
20 *Mueller v. Puritan's Pride, Inc.*, No. 16-cv-06717-JD, 2021 WL 5494254, at *8 (N.D. Cal. Nov.
21 23, 2021). The FAC plausibly alleges that the individual plaintiffs would purchase defendants'
22 bottled products in the future if the "100% recyclable" representation were accurate and
23 trustworthy because they believe that recyclable products are better for the environment. *See* Dkt.
24 No. 101 ¶ 100. That is enough for the individual plaintiffs to have standing to seek injunctive
25 relief. *See Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1007 (N.D. Cal. 2020); *see also Sinatro*
26 *v. Welch Foods Inc.*, No. 22-cv-07028-JD, 2023 WL 3590681, at *1 (N.D. Cal. May 22, 2023).

27       The Sierra Club also has standing to sue. An organization suffers an injury-in-fact
28 sufficient for standing if it "can demonstrate: (1) frustration of its organizational mission; and (2)

3

diversion of its resources to combat the particular [conduct] in question." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (internal quotation omitted, alteration in original). The FAC alleges that the Sierra Club's mission is "[t]o explore, enjoy and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out those objectives." Dkt. No. 101 ¶ 79. According to the FAC, the "100% recyclable" label misleads consumers to falsely believe that defendants' single-use plastic bottles are "green" when a significant portion of the bottles wind up in landfills or incinerators. *Id.* ¶ 82. This is said to be within the domain of the Sierra Club's mission to "protect the planet" and educate consumers about the environmental consequences of purchasing single-use plastic. *Id.* The FAC also states that the Sierra Club has expended resources and funds in response to defendants' recycling representations. *Id.* ¶¶ 83-94. Overall, these and similar allegations in the FAC establish organizational standing to sue under for Article III.

## II.   PLAUSIBILITY

Plaintiffs are entitled to sue, but the plausibility of the claims in the FAC is another matter. The claims are subject to the "reasonable consumer" test, which "requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228-29 (9th Cir. 2019) (citation omitted). A "mere possibility" that a statement on a bottle "might conceivably be understood by some few consumers viewing it in an unreasonable manner" is insufficient. *Id.* at 1228 (internal quotation omitted). "Whether a reasonable consumer would be misled is a context-specific inquiry." *Cleveland v. Campbell Soup Co.*, __ F. Supp. 3d ___, No. 21-cv-06002-JD, 2022 WL 17835514, at *3 (N.D. Cal. Dec. 21, 2022) (citing *Becerra*, 945 F.3d at 1228-29).

In the prior complaint, plaintiffs alleged that defendants' bottles were misleading because a reasonable consumer would understand "100% recyclable" to mean that the bottle will always be recycled or is "part of a circular plastics economy in which all bottles are recycled into new bottles

4

to be used again." Dkt. No. 74 ¶ 66. The Court dismissed the complaint because it did not plausibly allege that consumers would interpret "100% recyclable" in such a manner. Dkt. No. 99. This was because "recyclable" in everyday usage "is an adjective that means capable of being recycled (e.g., 'the plate is made of recyclable paper'), or a noun that denominates an object that can be recycled (e.g., 'the students raised funds by selling recyclables to disposal facilities'). It does not mean a promise that an object will actually be recycled." *Id.* at 2. The Court noted that under the FTC's Green Guides, which have been incorporated into California law, a product may be labeled "recyclable" if "it is comprised of materials that can be recycled by existing recycling programs." *Id.* (citing 16 C.F.R. §§ 260.12(a), 260.12(b)(1)).[1] The Court also concluded that the complaint did not "plausibly allege that defendantss representations deviate from the commonly understood meaning of recyclable or the Green Guides definition" because it did not include facts about the processing capabilities of Material Recovery Facilities (MRFs) in California "and never allege[d] that any MRFs reject defendants' products." *Id.* at 3.

The FAC has not surmounted these concerns. To be sure, plaintiffs have scaled back their rather extreme interpretation of "100% recyclable" to mean "that the entirety of the Product is comprised of material that can be recycled by existing recycling programs in California." Dkt. No. 101 ¶ 2. This is a more reasonable understanding of how "recyclable" is used in everyday speech, and more consistent with the concerns stated in the Green Guides and corresponding California regulations.

Even so, the FAC again does not plausibly allege that defendants' recycling allegations are actionable. The FAC says the bottles are not 100% recyclable in their entirety because "a substantial majority of recycling programs in California do not recycle the polypropylene ('PP') and high-density polyethylene ('HDPE') bottle caps and the biaxially oriented polypropylene ('BOPP') plastic labels on the bottles," and "at least 28% of the total plastic materials in the

---

[1] The Green Guides are the FTC's interpretation of the FTC Act as it applies to environmental marketing claims and "do not operate to bind the FTC or the public." 16 C.F.R. § 260.1. The California Environmental Marketing Claims Act (EMCA) codified the Green Guides to make it "unlawful for a person to make an untruthful, deceptive, or misleading environmental claim, whether explicit or implied." Cal. Bus. & Prof. Code § 17580.5.

bottles sent for recycling in California cannot be processed and end up in landfills or burned." Dkt. No. 101 ¶ 2.

The problem for plaintiffs is that the FAC does not provide facts supporting these allegations. For example, the FAC alleges that at the two reclaiming facilities that have capacity to process approximately 40% of the plastic bottle recycling that occurs in California, about one third of the plastic bottle material received is not ultimately converted into reusable materials "[d]ue to contamination and processing losses." Dkt. No. 101 ¶¶ 53-55. Even spotting plaintiffs every benefit of the doubt, those figures do not establish that recycling facilities that accept the bottle caps and labels are not "available to a substantial majority (defined as 60%) of the consumers or communities where the item is sold," which plaintiffs acknowledge is the pertinent question under the Green Guides. *Id.* ¶ 60 (citing 16 C.F.R. § 260.12(b)(1)).

The FAC is further diluted by a heavy focus on bottle caps and labels that are said to be unrecyclable. *See, e.g.*, ¶¶ 2, 27, 47, 53-54, 56-57, 61. The Green Guides state that "[m]arketers can make unqualified recyclable claims for a product or a package if the entire product or package, excluding minor incidental components, is recyclable." 16 C.F.R. § 260.12(c). The FAC concedes this. *See* Dkt. No. 101 ¶ 60 ("A product does not need to be recyclable in its entirety to be labeled as 'recyclable.' In other words, it is acceptable to label a plastic bottle as 'recyclable' if it is less than '100% Recyclable.'"). The Green Guides also expressly identify bottle caps as examples of "minor, incidental components." *See* 12 C.F.R. § 260.3(b). The same point goes for the equally incidental component of a label, which are made of less material than bottle caps. Overall, caps and labels are minor aspects of the bottles, and do not materially improve the claims in the FAC. Other courts have reached the same conclusion in similar cases. *See, e.g.*, *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 415 (S.D.N.Y. 2022) (finding that "the label is a "minor, incidental component" under the Green Guides).

Plaintiffs say that even if defendants may be allowed to call the bottles "recyclable," the "100%" language is misleading because it "communicate[s] to consumers that the entirety of the Products, *including* minor incidental components, could be recycled." Dkt. No. 107 at 7 (emphasis in original). But nothing in the FAC demonstrates that it is impossible to recycle the

6

caps and labels, or that any component of defendants' bottles cannot be "collected, separated, or otherwise recovered from the waste stream" in California, which is the pertinent question under the Green Guides. 16 C.F.R. § 260.12(a). To the contrary, the FAC acknowledges that economic, processing, and contamination issues are the reasons the caps and labels are not ultimately converted into reusable material. *See, e.g.*, Dkt. No. 101 ¶¶ 45-46.

It also bears mention that the consumer deception alleged in the FAC is tied to forces and circumstances well beyond defendants' control. The FAC devotes substantial effort to explaining that the degree to which plastic bottles are recycled is heavily influenced by such unpredictable factors as changes in waste importation policy by the national government in China, and the economics of the recycling business. *See, e.g.*, *id.* ¶¶ 44-45, 56. In effect, the FAC makes a good case that the recycling of plastics is subject to an array of circumstances totally unrelated to defendants' conduct. The plausibility of holding defendants to account for statements made in such volatile circumstances is not at all clear in the FAC.

## CONCLUSION

Plaintiffs have already been permitted to amend once, Dkt. No. 99 at 3, and were afforded a substantial discussion of these issues on the record, Dkt. No. 114 (hearing transcript). Even so, plaintiffs may have another try at stating a plausible claim, and may file an amended complaint by August 17, 2023. The amended complaint must be consistent with this order and may not add any new claims or parties without the Court's prior approval. This will likely be the final opportunity to amend. Failure to amend by the deadline will result in dismissal under Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: July 27, 2023

JAMES DONATO
United States District Judge