| | |
|---|---|
| 1 | DAWN SESTITO (S.B. #214011) |
| 2 | dsestito@omm.com |
|   | COLLINS KILGORE (S.B. #295084) |
| 3 | ckilgore@omm.com |
|   | O'MELVENY & MYERS LLP |
| 4 | 400 South Hope Street, 18th Floor |
|   | Los Angeles, California 90071-2899 |
| 5 | Telephone: +1 213 430 6000 |
| 6 | HANNAH Y. CHANOINE (pro hac vice) |
| 7 | hchanoine@omm.com |
|   | O'MELVENY & MYERS LLP |
| 8 | 7 Times Square |
|   | New York, New York 10036 |
| 9 | Telephone: +1 212 326 2128 |
| 10 | *Attorneys for Defendant BlueTriton Brands, Inc.* |
| 11 | (additional counsel on signature page) |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DAVID SWARTZ, CRISTINA SALGADO, and MARCELO MUTO, on behalf of themselves and those similarly situated, | Case No. 3:21-cv-04643-JD |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND CONSOLIDATED MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| THE COCA-COLA COMPANY, BLUETRITON BRANDS, INC., and NIAGARA BOTTLING, LLC, | Date: December 7, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. James Donato<br>Courtroom: 11, 19th Floor |
| Defendants. | |
| SIERRA CLUB, | |
| Plaintiff, | |
| v. | |
| THE COCA-COLA COMPANY and BLUETRITON BRANDS, INC., | |
| Defendants. | |

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE**

**THAT** on December 7, 2023 at 10:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 11 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, Defendants BlueTriton Brands, Inc. ("BTB"), the Coca-Cola Company ("Coca-Cola"), and Niagara Bottling, LLC ("Niagara") (collectively, "Defendants") hereby move pursuant to the Court's August 24, 2023 Minute Order (Dkt. No. 118) and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing these actions with prejudice on the grounds that Plaintiffs fail to state a claim.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... iIII
STATEMENT OF ISSUES TO BE DECIDED ........................................................................ IV
PRELIMINARY STATEMENT ................................................................................................. 1
RELEVANT FACTS ................................................................................................................... 2
ARGUMENT ................................................................................................................................ 3
    I.    Plaintiffs Have Provided No Additional Factual Support for Their Assertion That the Caps and Labels Are Not Recyclable ............................................................ 4
    II.    Plaintiffs Have Failed to Overcome the Green Guides Safe Harbor .......................... 9
    III.    The Court Should Not Permit Further Amendments ................................................. 11
CONCLUSION .......................................................................................................................... 11
ATTESTATION OF FILING .................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 3

*Becerra v. Dr Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ............................................................................................. 9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 4

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ............................................................................................................ 10

*Cleveland v. Campbell Soup Co.*,
  No. 21-CV-06002-JD, 2022 WL 17835514 (N.D. Cal. Dec. 21, 2022) .................................... 9

*Duchimaza v. Niagara Bottling, LLC*,
  619 F. Supp. 3d 395 (S.D.N.Y. 2022) ................................................................................ 4, 10

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .................................................................................................. 4

*McGinity v. Procter & Gamble Co.*,
  69 F.4th 1093 (9th Cir. 2023) ................................................................................................... 9

*Reflex Media, Inc. v. Luxy Ltd.*,
  No. 2:20-CV-00423-RGK-KS, 2021 WL 5936904 (C.D. Cal. Nov. 24, 2021) ........................ 9

**Statutes**

Cal. Bus. & Prof. Code § 17580.5 ................................................................................................ 4

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 3

**Regulations**

12 C.F.R. § 260.3(b) ..................................................................................................................... 9

16 C.F.R. § 260.12(a) ................................................................................................................ 4, 6

16 C.F.R. § 260.12(b) .................................................................................................................... 4

16 C.F.R. § 260.12(b)(1) ................................................................................................................ 5

# STATEMENT OF ISSUES TO BE DECIDED

1. Are Plaintiffs' factual allegations concerning the recyclability of Defendants' water bottles—which are identical to the factual allegations in their First Amended Complaint—sufficient to support their reasserted claims?

2. Are caps and labels "minor, incidental components" of the water bottles that do not affect whether the bottles are properly labeled as recyclable under California law?

**PRELIMINARY STATEMENT**

This is the third time Plaintiffs have tried, and failed, to state a consumer-fraud claim based on Defendants' truthful representations that their bottled water products are "100% Recyclable." The Court gave Plaintiffs a final chance to provide support for their claim that Defendants' products cannot be collected, separated, or otherwise recovered from the waste stream by facilities serving a substantial majority of California consumers. Having been granted a third opportunity to state a claim, Plaintiffs merely repackage their previous arguments, which the Court found deficient, and fail again to include assertions of fact supporting their claims. The Court should dismiss this third attempt for the same reasons it dismissed Plaintiffs' prior two complaints.

Plaintiffs premised their initial Consolidated Complaint on the notion that "100% Recyclable" means that the entirety of the Product, including the label and cap, would necessarily be recycled. The Court rightly rejected that interpretation of the claim as implausible. As the Court explained, the Green Guides—which the California legislature has expressly incorporated in California law—define "recyclable" to mean that a product is "comprised of materials that ***can be*** recycled by existing recycling programs" that are available to a substantial majority—60% or more—of consumers. Order of Dismissal of Compl. (Dkt. No. 99) ("First Dismissal Order") at 2 (emphasis added). For this reason, among others, the Court dismissed the original Complaint, but permitted Plaintiffs to try again. *Id.*

In their First Amended Complaint ("FAC"), Plaintiffs nominally "scaled back" their definition of "recyclable" to mean "comprised of material that can be recycled by existing recycling programs in California." Order of Dismissal of FAC (Dkt. No. 115) ("Second Dismissal Order") at 5. However, Plaintiffs still failed to provide support for their allegation that Defendants' products were not "recyclable" under the Green Guides definition. *Id.* As the Court explained, Plaintiffs' FAC alleged in conclusory terms that "a substantial majority of recycling programs in California do not recycle" the bottle caps and plastic labels on Defendants' products. *Id.* But "the problem for plaintiffs was that the FAC d[id] not provide facts supporting these allegations." *Id.* at 6. Moreover, the Court held that the FAC's "heavy focus on bottle caps and labels" was misplaced, since the Green Guides and California law treat these as "minor, incidental components" of a product that do not defeat a claim of

recyclability. *Id.* Accordingly, the Court dismissed the FAC, but once again permitted Plaintiffs to try again. *Id.* at 7.

This time around, Plaintiffs simply reassert that the products are not "100% Recyclable" because, they claim, the caps and labels are not "recyclable." Second Amended Complaint ("SAC") ¶ 5. But once again, Plaintiffs have failed to "provide facts supporting these allegations." Second Dismissal Order at 6. Indeed, the SAC contains ***no additional facts at all*** on this critical question. Plaintiffs merely rely on the same set of facts that this Court already deemed inadequate.

Nor do Plaintiffs get around the fact that, under the Green Guides—and therefore California law—caps and labels are "minor, incidental components" that would not render a "recyclable" claim misleading even if Plaintiffs could show that the caps and labels were not recyclable. Thus, even if Plaintiffs had alleged that the caps and labels were not recyclable—which they have not—that would not defeat Defendants' claim of "100% Recyclable."

Plaintiffs have tried to solve this problem with a "survey" of leading questions and forced responses. Methodological flaws aside, no survey results can displace the standards for "recyclability" claims set forth in the Green Guides and codified by the California legislature. Second Dismissal Order at 5 n.1. Those standards clearly permit Defendants to label their products "100% Recyclable" irrespective of the recyclability of the caps and labels. As the Court has already held, this is another basis for dismissing Plaintiffs' SAC.

Plaintiffs have had three tries to state a claim under California law, and failed each time. If Plaintiffs had facts supporting their claim, the Court surely would have heard them by now. It is time to dismiss Plaintiffs' claims for good.

**RELEVANT FACTS[1]**

Plaintiffs' original Complaint ("Consolidated Amended Complaint" or "CAC") alleged that Defendants' "100% Recyclable" claim led consumers to believe that Defendants' products are always

---

[1] The facts and background relevant to this motion are captured in Defendants' consolidated motion to dismiss the First Amended Complaint, Consol. Mot. to Dismiss FAC at 2-3, Dkt. No. 106, and the Court's July 27, 2023 Order granting that motion, Second Dismissal Order at 1, Dkt. No. 115. For the reasons set forth in prior motions to dismiss, Defendants further dispute that Sierra Club has Article III or statutory standing to bring the claims alleged in the SAC and that Plaintiffs have standing to seek injunctive relief. This Court's prior Order resolved these issues in Plaintiffs' favor, and

"recycled into new bottles to be used again." CAC ¶ 66. The Court rejected this "exaggerated" interpretation, ruling that Plaintiffs' interpretation did not comport with everyday usage of the term "recyclable," or with the definition set forth in the Green Guides and incorporated in California law. First Dismissal Order at 2.

Plaintiffs' FAC shifted focus to the recyclability of the incidental components of Defendants' products, the caps and labels, which Plaintiffs alleged were not "recyclable" by facilities available to a substantial majority of California consumers.  The Court, however, concluded that Plaintiffs had failed to "provide facts supporting these allegations." Second Dismissal Order at 6.  In addition, the Court held that Plaintiffs' new emphasis on the incidental components only "diluted" the FAC, as the Green Guides permit unqualified recyclability claims despite any potential recyclability limitations posed by the products' incidental components. *Id.*

Plaintiffs have not corrected these deficiencies in the FAC.  Plaintiffs rehash their allegations that Defendants' products are not "recyclable" because recycling facilities in California do not necessarily recycle bottle caps and labels.  However, they once again fail to establish that "recycling facilities that accept the bottle caps and labels are not 'available to a substantial majority (defined as 60%) of the consumers or communities where the item is sold.'" *Id.*  Indeed, they rely on the ***very same*** set of factual allegations that the Court already found inadequate to support that proposition.

The SAC also makes a halfhearted attempt to revive the "extreme" definition of "recyclable" that this Court has previously rejected by pointing to a methodologically infirm "survey" purporting to show that consumers' understanding of "100% Recyclable" differs from that set forth in California law.  This window dressing is unavailing.  Defendants' claims fall squarely within the scope of the Green Guides, and, accordingly, the Court should dismiss the SAC.

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6).  While the Court must accept well-pleaded

---

Defendants accordingly do not relitigate them here.  However, for purposes of preserving all potential arguments for appeal, Defendants note their respectful disagreement with the Court's resolution of those issues.

facts as true, it need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Instead, a complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court dismissed Plaintiffs' previous complaint for (1) failure to allege sufficient facts to establish that the caps and labels were not "recyclable"; and (2) "heav[il]y focus[ing]" on caps and labels to begin with, when those are "minor, incidental components" as a matter of law. Both deficiencies were independently fatal to the FAC, and Plaintiffs' SAC does not correct either one. Accordingly, the SAC, like its predecessors, should be dismissed.

### I. Plaintiffs Have Provided No Additional Factual Support for Their Assertion That the Caps and Labels Are Not Recyclable

Under the Federal Trade Commission's Green Guides, which have been incorporated in California law, *see* Second Dismissal Order at 5 n.1 (citing Cal. Bus. & Prof. Code § 17580.5), products can be marketed as "recyclable" so long as they "***can be*** collected, separated, or otherwise recovered from the waste stream through an established recycling program." 16 C.F.R. § 260.12(a) (emphasis added). Additionally, when recycling facilities are available to a "substantial majority of consumers"—defined as at least 60 percent—companies may make "unqualified recyclable claims." 16 C.F.R. § 260.12(b). Even if "minor or incidental" components of a product package are not recyclable, companies may still make unqualified recyclable claims. *See* Second Dismissal Order at 6; *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 415 (S.D.N.Y. 2022). Thus, to state a claim that Defendants' products are not properly labeled "100% recyclable," Plaintiffs must plausibly allege that Defendants' products cannot be collected, separated, or otherwise recovered through an established recycling program available to at least 60% percent of consumers. As with their previous complaints, Plaintiffs fail to do so.

Although Plaintiffs suggest that the caps and labels are not recyclable in California, the few allegations of fact in the SAC do not support this contention. Indeed, Plaintiffs merely rehash the allegations that the Court already deemed deficient in the FAC. For example, Plaintiffs allege once again that caps that are *separated from the bottles*—either because "the bottles are disposed of by the

consumer with the cap and bottle already separated" or because some unknown number of caps pop off while being compressed in a recycling truck—fall through disk screens at materials recovery facilities ("MRFs"), SAC ¶ 65, but say nothing about whether caps are capable of being recycled or are recycled when they remain attached to the bottle as directed on the bottle labels.

Plaintiffs' other allegations are likewise identical to those in the FAC, and are just as deficient as they were the first time around. Once again, Plaintiffs allege that only two MRFs in California accept plastic bags and that none accept plastic wrap, SAC ¶ 62, *but are silent as to the number of MRFs that process labels on PET bottles*. Once again, Plaintiffs trot out the canard that "28%" of all PET products processed at MRFs is not converted to "clean flake" due to contamination," SAC ¶ 69, but again fail to provide any facts with respect to PET *water bottles*, which, since they contain only water, are not contaminated. And once again, they acknowledge that "cans and bottles" recycling is often accomplished through redemption centers under the state's California Refund Value ("CRV") program, SAC ¶ 55, but then say nothing about how bottles, caps, and labels collected through redemption centers are processed. Although the SAC asserts that the majority of "PET recycling" in California involves curbside recycling, SAC ¶ 56, it conveniently conflates "PET recycling"—that is, recycling of *all* PET products—with recycling of PET water bottles. The SAC is devoid of any facts indicating that existing recycling facilities in California are not capable of recycling the PET plastic bottles, including their caps and labels.

These allegations were deficient the first time the Court considered them, and they are deficient now. As the Court held when dismissing Plaintiffs' FAC:

> The problem for plaintiffs is that the FAC does not provide facts supporting these allegations [that the caps and labels are not recyclable]. For example, the FAC alleges that at the two reclaiming facilities that have capacity to process approximately 40% of the plastic bottle recycling that occurs in California, about one third of the plastic bottle material received is not ultimately converted into reusable materials "[d]ue to contamination and processing losses." Dkt. No. 101 ¶¶ 53-55. Even spotting plaintiffs every benefit of the doubt, those figures do not establish that recycling facilities that accept the bottle caps and labels are not "available to a substantial majority (defined as 60%) of the consumers or communities where the item is sold," which plaintiffs acknowledge is the pertinent question under the Green Guides. *Id.* ¶ 60 (citing 16 C.F.R. § 260.12(b)(1)).

Second Dismissal Order at 6.  The Court further noted that "nothing in the FAC demonstrates that it is impossible to recycle the caps and labels, or that any component of defendants' bottles cannot be 'collected, separated, or otherwise recovered from the waste stream' in California," which the Court described as the "pertinent question under the Green Guides." *Id.* at 6–7 (citing 16 C.F.R. § 260.12(a)). In other words, the Court held that the FAC had alleged only that caps and labels were not ultimately repurposed by reclaiming facilities, but had failed to allege that these components were not ***capable*** of being recycled or not ***accepted*** for recycling by facilities available to a substantial majority of California consumers.  Because the latter reflects the standard for "recyclability" as defined by California law, Plaintiffs had not plausibly alleged that the caps and labels were not "recyclable."

Not only have Plaintiffs failed to solve this problem in the SAC, they have not even tried to do so.  Indeed, as shown in the side-by-side comparison below, Plaintiffs' SAC repeats the ***identical*** allegations about the caps and labels that this Court previously found inadequate.  Plaintiffs have not added even one new allegation on this subject.

| **First Amended Complaint** | **Second Amended Complaint** |
|---|---|
| ¶ 45: "Since the implementation of the National Sword policy, PP and BOPP plastics, which are the material used to make the Products' bottle caps and film labels, respectively, are widely considered to be the least recyclable plastics. These plastics are collected by MRFs in California for #3- 7 mixed bales that require further processing. However, "the economics [of processing those bales] have proven insurmountable." Thus, mixed plastic #3-7 bales that were "previously exported to China now have negligible to negative value across the country and 'cannot be effectively or efficiently recycled in the US.'" As a result, though PP is frequently collected in California, Reclaimers do not process it in significant quantities. It therefore must be landfilled or incinerated, which releases large quantities of greenhouse gases and toxic air emissions." | ¶ 61: "Since the implementation of the National Sword policy, PP and BOPP plastics, which are the material used to make the Products' bottle caps and film labels, respectively, are widely considered to be the least recyclable plastics. These plastics are collected by MRFs in California for #3-7 mixed bales that require further processing. However, "the economics [of processing those bales] have proven insurmountable." Thus, mixed plastic #3-7 bales that were "previously exported to China now have negligible to negative value across the country and 'cannot be effectively or efficiently recycled in the US.'" As a result, though PP is frequently collected in California, reclaimers do not process it in significant quantities. It therefore must be landfilled or incinerated, which releases large quantities of greenhouse gases and toxic air emissions." |

| **First Amended Complaint** | **Second Amended Complaint** |
|---|---|
| ¶ 47: "The BOPP labels that Defendants use are made of similar materials as plastic bags and plastic film wrap that is unrecyclable and not accepted by MRFs in California. Although MRFs accept PET plastic bottles because they are partially recyclable, the labels and caps are removed or lost during processing and the byproduct is treated refuse." | ¶ 63: "The BOPP labels that Defendants use are made of similar materials as plastic bags and plastic film wrap that is unrecyclable and not accepted by MRFs in California. Although MRFs accept PET plastic bottles because they are partially recyclable, the labels and caps are removed or lost during processing and the byproduct is treated refuse." |
| ¶ 53: "Due to contamination and processing losses, not all PET and HDPE material that is processed by Reclaimers and MRFs is actually converted into "clean flake" for reuse. About a third of the plastic bottle material processed by recycling facilities in California is not converted into "clean flake," and is instead, landfilled or incinerated." | ¶ 69: "Due to contamination and processing losses, not all PET and HDPE material that is processed by reclaimers and MRFs is actually converted into "clean flake" for reuse. About a third of the plastic bottle material processed by recycling facilities in California is not converted into "clean flake," and is instead, landfilled or incinerated." |
| ¶¶ 54-55: "Leon Farhnik, the former CEO of CarbonLite Industries, the former owner and operator of the Riverside Plant, describes the process: '[f]rom the time it starts till it ends, as a resin—as a material—you lose about 30% of it in caps, in labels, in dirt. And we end up with only 70% of what we get in.'<br><br>Peninsula Plastics Recycling, another major Reclaimer in California operates out of Turlock, California. Like the Riverside Facility, Peninsula employs a pre-wash system that removes labels prior to flaking the plastic. It has an annual output of 60 Million pounds of PET flake per year, which means that is approximately 80% the size of the Riverside Plant. Together the Riverside Plant and Peninsula Plastics have capacity for more than 40% of the PET bottle recycling that occurs in California." | ¶¶ 70-71: "Leon Farhnik, the former CEO of CarbonLite Industries, the former owner and operator of the Riverside Plant, describes the process: '[f]rom the time it starts till it ends, as a resin—as a material—you lose about 30% of it in caps, in labels, in dirt. And we end up with only 70% of what we get in.'<br><br>Peninsula Plastics Recycling, another major reclaimer in California operates out of Turlock, California. Like the Riverside Facility, Peninsula employs a pre-wash system that removes and disposes labels prior to flaking the plastic. It has an annual output of 60 Million pounds of PET flake per year, which means that is approximately 80% the size of the Riverside Plant. Together the Riverside Plant and Peninsula Plastics have capacity for more than 40% of the PET bottle recycling that occurs in California." |

| **First Amended Complaint** | **Second Amended Complaint** |
|---|---|
| ¶ 56: "Further, due to the availability of cheap raw materials to make 'virgin plastic,' there is very little market demand for recycled PP and BOPP plastic. Using virgin plastic to package and make products is cheaper than other materials because virgin plastic is derived from oil and natural gas. Indeed, recognizing the market potential from plastic production, major oil and natural gas companies are increasingly integrating their operations to include production of plastic resins and products, which further drives down the price of 'virgin plastic.' As a result, recycling facilities cannot afford the cost of breaking down and reconstituting recycled PP and BOPP plastic because there are almost no buyers of the resulting plastic, pellets, or scrap materials. Thus, the Products' PP bottle caps and BOPP labels are not "100% Recyclable" because those materials are not processed into reusable material, and are instead, sent to incinerators or landfills. | ¶ 73: "Further, due to the availability of cheap raw materials to make 'virgin plastic,' there is very little market demand for recycled PP and BOPP plastic. Using virgin plastic to package and make products is cheaper than other materials because virgin plastic is derived from oil and natural gas. Indeed, recognizing the market potential from plastic production, major oil and natural gas companies are increasingly integrating their operations to include production of plastic resins and products, which further drives down the price of 'virgin plastic.' As a result, recycling facilities cannot afford the cost of breaking down and reconstituting recycled PP and BOPP plastic because there are almost no buyers of the resulting plastic, pellets, or scrap materials. Thus, the Products' PP bottle caps and BOPP labels are not "100% Recyclable" because those materials are not processed into reusable material, and are instead, sent to incinerators or landfills |
| ¶ 64: "Although the Products are accepted for recycling by most curbside programs: (1) existing recycling programs in California do not recycle the polypropylene ("PP") and high-density polyethylene ("HDPE") bottle caps and the biaxially oriented polypropylene ("BOPP") plastic labels on the bottles; and (ii) at least 28% of the total plastic material in the bottles sent for recycling in California cannot be processed and end up in landfills or burned." | ¶ 81: "Although the Products are accepted for recycling by most curbside programs: (1) recycling facilities in California do not recycle Defendants' PP and HDPE bottle caps, (2) recycling facilities in California cannot recycle the BOPP plastic labels on the bottles, and (3) on average, 28% of each bottle sent to recycling facilities in California cannot be processed due primarily to contamination in the waste stream and ends up in landfills or burned." |

Once again, Plaintiffs have failed to allege facts supporting their theory that the caps and labels are not "recyclable." In fact, they have not supplemented or modified their factual allegations in any way since their last deficient pleading. The Court should dismiss the SAC on this basis alone.

**II.      Plaintiffs Have Failed to Overcome the Green Guides Safe Harbor**

As the Court explained when dismissing the FAC, even if Plaintiffs had plausibly alleged that the caps and labels were not recyclable, such allegations do not "materially improve the[ir] claims." *See* Second Dismissal Order at 6. That is because "[t]he Green Guides . . . identify [these elements] as examples of 'minor, incidental components'" that do not defeat an unqualified claim of recyclability. *See id.* (citing 12 C.F.R. § 260.3(b)). Accordingly, as a matter of law, even truly non-recyclable caps and labels would not preclude Defendants from lawfully labeling their products "100% Recyclable." *Id.*

Plaintiffs, in their SAC, urge the Court to set aside these precepts of law, and instead to define "100% Recyclable" using the results of a consumer "survey" purportedly conducted by Plaintiffs. According to Plaintiffs, this "survey" showed that consumers interpret "100% Recyclable" to mean that the "entire product (including the bottle, label and cap) will actually be recycled by facilities in the state of California if it is properly disposed of in a recycling bin." SAC ¶ 49. Plaintiffs appear to contend that these survey results should displace the Green Guides standards, which (1) define "recyclable" only by reference to the availability of recycling facilities that accept the product; and (2) treat labels and caps as "minor, incidental components" that do not defeat an unqualified claim of recyclability.

Plaintiffs' gambit is unavailing. As an initial matter, Plaintiffs cannot avail themselves an entirely new definition of "recyclability" just by alluding to a consumer survey. *See Cleveland v. Campbell Soup Co.*, No. 21-CV-06002-JD, 2022 WL 17835514, at *2 (N.D. Cal. Dec. 21, 2022) (Donato, J.) (a "'survey cannot, on its own, salvage' plaintiffs' claims" (citing *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230–31 (9th Cir. 2019)); *Reflex Media, Inc. v. Luxy Ltd.*, No. 2:20-CV-00423-RGK-KS, 2021 WL 5936904, at *2 (C.D. Cal. Nov. 24, 2021) ("[A] consumer survey alone [cannot] transform Defendant's deficient claims into claims that would survive a motion to dismiss."). Further, because the "survey" appears to have forced respondents to consider questions that they would not have otherwise contemplated and employed leading questions, it offers nothing of value. *See, e.g., McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023) (holding that

surveys that omit information necessary to inform and contextualize consumer understanding of product claims cannot be fairly relied upon).

Even assuming that "some consumers may unreasonably interpret the term ['recyclable']," that does not render Defendants' use of the claim false or misleading to the reasonable consumer. *Becerra*, 945 F.3d at 1230. Plaintiffs rely upon their purported consumer survey to resurrect their argument, previously rejected by the Court, Second Dismissal Order at 5, that the word "recyclable" communicates a guarantee that the product ***will*** be recycled. *Id.*; *see*, *e.g.*, SAC ¶¶ 7, 93, 116. This Court, however, has already rejected that definition as too "extreme" to satisfy the objective "reasonable consumer" standard that governs California consumer fraud claims. No consumer survey can transform an unreasonable interpretation of a claim into a reasonable one.

Similarly, no consumer survey can displace the standardized definition of "100% Recyclable" that the California legislature has adopted as a matter of law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) ("If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor."). No matter how any consumer interprets the claim, the California legislature has determined that unqualified recyclability claims exclude "minor, incidental components" such as caps and labels. As this Court noted in its prior dismissal order, other courts have relied upon this definition to dismiss claims virtually identical to those in the SAC. *See Duchimaza*, 619 F. Supp. 3d at 415 (finding that "the label is a minor, incidental component" under the Green Guides); Second Dismissal Order at 6 ("Overall, caps and labels are minor aspects of the bottles, and do not materially improve the claims in the FAC"). The Court should do the same here.[2]

---

[2] Without citation, Plaintiffs refer to comments submitted by various state attorneys general to the FTC urging a *revision* to the Green Gouides. SAC ¶ 7. That some individuals disagree with the current state of the law does not change the current state of the law. The California legislature has adopted the Green Guides as currently drafted, and it is the current Green Guides that serve as the substantive rules of decision.

### III. The Court Should Not Permit Further Amendments

The Court should grant Defendants' motion to dismiss and should not grant Plaintiffs leave to amend. Plaintiffs have had several opportunities to amend, and, despite the Court's initial warning in its First Dismissal Order that it would likely be the last opportunity to amend, the Court provided Plaintiffs two more opportunities to rectify the deficiencies in the initial Consolidated Complaint. Plaintiffs have tried and failed three times. There is no reason to provide further opportunities to resuscitate Plaintiffs' claims.

### CONCLUSION

This Court properly dismissed Plaintiffs' two prior complaints for, among other things, failure to allege facts supporting their theory that the caps and labels are not "recyclable" in California. In their SAC, Plaintiffs advance the same theory and the same deficient facts. What is more, even if Plaintiffs' factual allegations could support their caps-and-labels-based theory, that theory is deficient as a matter of law. It is clear that Plaintiffs have neither facts nor law to support their claims against Defendants. Plaintiffs' claims should be dismissed with prejudice.

Dated: September 22, 2023

By: /s/ *Dawn Sestito*

Dawn Sestito
Collins Kilgore
Hannah Y. Chanoine (*pro hac vice*)
O'MELVENY & MYERS LLP

*Attorneys for Defendant BlueTriton Brands, Inc.*

|   |   |   |
|---|---|---|
| 1 | Dated: September 22, 2023 | By: **/s/ *Steven Zalesin* |
| 2 |  | Steven A. Zalesin (*pro hac vice*) |
| 3 |  | Jane Metcalf (*pro hac vice*) PATTERSON BELKNAP WEBB & TYLER LLP |
| 4 |  |  |
| 5 |  | Gary T. Lafayette LAFAYETTE & KUMAGAI LLP |
| 6 |  | *Attorneys for Defendant The Coca-Cola Company* |
| 7 |  |  |
| 8 | Dated: September 22, 2023 | By: **/s/ *Creighton Magid* |
| 9 |  |  |
| 10 |  | Creighton R. Magid (*pro hac vice*) DORSEY & WHITNEY LLP |
| 11 |  | *Attorneys for Defendant Niagara Bottling LLC* |
| 12 |  | **Pursuant to Civ. L.R. 5-1(i)(3), the electronic signatory has obtained approval from this signatory.* |
| 13 |  |  |

## ATTESTATION OF FILING

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all other signatories listed, and on behalf of whom this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: September 22, 2023      By: /s/ *Dawn Sestito*

          Dawn Sestito

          O'MELVENY & MYERS LLP

          *Attorneys for Defendant BlueTriton Brands, Inc.*